**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **Tech Pharmacy Services, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| **Alixa Rx LLC and** | § | JURY TRIAL |
| **Golden Gate National Senior Care LLC** | § | |
| **d/b/a Golden LivingCenters,** | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Tech Pharmacy Services, LLC ("Tech Pharmacy" or "Plaintiff") files this Original Complaint and Jury Demand against Defendants Alixa Rx LLC ("Alixa") and Golden Gate National Senior Care LLC d/b/a Golden LivingCenters ("GLC") (collectively "Defendants") and alleges as follows:

## I. NATURE OF ACTION

This is an action for patent infringement.

## II. PARTIES

1.  Plaintiff is a Texas limited liability company with a principal place of business at 900 South Loop West, Suite 100, Houston, Texas 77054. Tech Pharmacy is a pioneer in the automated pharmacy field focused on developing and delivering advanced systems, machines, and methods related to automated pharmaceutical storage and electronic dispensing machines, many of which are used in long-term care facilities throughout the United States.

2. Upon information and belief, Defendant Alixa is a Delaware limited liability company with a principal place of business at 6400 Pinecrest, Suite 200, Plano, Texas 75024. Alixa may be served process by serving its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701.

3. Upon information and belief, Defendant GLC is a Delaware limited liability company named "Golden Gate National Senior Care LLC" doing business as "Golden Living" and "Golden LivingCenters." Upon information and belief, GLC's principal place of business is at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024. GLC may be served process by serving its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, Texas 78701.

## III. JURISDICTION AND VENUE

4. Tech Pharmacy repeats and re-alleges the allegations in Paragraphs 1 through 3 as though fully set forth in their entirety.

5. Because this is an action for patent infringement arising under the laws of the United States, including 35 U.S.C. §§ 271 and 281-85, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Defendants are subject to both general and specific personal jurisdiction in Texas. Defendants are subject to general jurisdiction because each Defendant's principal place of business is in Plano, which is in the Eastern District of Texas. Defendants are subject to specific jurisdiction because each has committed and contributed to acts of patent infringement, and continues to do so, in the Eastern District of Texas, as alleged in this Complaint.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (i) Defendants reside in this District per 28 U.S.C. § 1391(c)(2), and (ii) a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this District.

8.      All conditions precedent to the filing of this cause of action have been satisfied.

## IV.    BACKGROUND

9.      Tech Pharmacy develops, installs, and uses unique advanced systems and methods for automated pharmaceutical dispensing in long-term care facilities. Tech Pharmacy created these unique systems and methods through extensive investment in research and development, time, and lobbying to effect positive changes to state law. As a result of Tech Pharmacy's efforts, the quality and accuracy of dispensing and administering pharmaceuticals at these long-term care facilities has improved greatly, and the costs associated with providing such care have decreased significantly.

10.     Before Tech Pharmacy entered the scene, long-term care facility staff individually punched out pills from their packaging, then counted and sorted them by hand for each patient. These previous methods and techniques were time-consuming, expensive, and error-prone, and in general had a tendency to increase the cost of providing long-term care at such facilities.

11.     Early attempts made by others in the industry to create machines to dispense pills in a long-term care facility were hardly better, and sometimes worse. Indeed, these early machines rarely operated properly, and they were not efficient when they did. Most critically, each of these machines generally required direct operation and oversight by a pharmacist. The one-to-one requirement between these machines and pharmacists provided solutions not much different from the problem: if a machine needed a pharmacist operator, it would have been better simply to place the pharmacist in the long-term care facility and get rid of the machine.

12. Tech Pharmacy recognized these problems and began development of advanced systems and methods of remotely implementing pharmaceutical storage and electronic dispensing machines in long-term care facilities that contained a network of computers designed for the specific purpose of dispensing pills to reduce these types of costs associated with long-term care, reduce the risk of errors when dispensing and administering pills for patient consumption, and enhance the quality of care provided to long-term care patients. Tech Pharmacy overcame technical problems that plagued prior dispensing machines and designs proposed by others in the industry and provided solutions that did not require a pharmacist to personally operate each machine. Thus, Tech Pharmacy developed initial embodiments of systems and methods that allow dispensing machines to be controlled remotely, as well as report inventory and other data to, and be controlled by, a remote server. Additional challenges arose in developing methods and software to fully exploit these new machines. As a result, Tech Pharmacy further developed advanced systems to integrate its proprietary machines, software, and other components in innovative ways to serve scores of long-term care facilities simultaneously.

13. These efforts, extensive though they were, would not have been enough to ensure success. During Tech Pharmacy's early development, only licensed pharmacies could store pharmaceutical inventory under Texas state law. Thus, pharmaceutical storage and electronic dispensing machines could not be located away from a licensed pharmacy in a long-term care facility. In efforts to overcome some of these barriers, Tech Pharmacy and a collaborating entity, KVM Technologies, Inc., lobbied to change this with an eye toward reducing the costs and improving the quality of long-term care. This lobbying campaign culminated in Texas Occupations Code Section 562.109, which authorized for the first time the use of pharmaceutical

storage and electronic dispensing machines in long-term care facilities without the requirement of a pharmacist's being present at the facility.

14. Even this positive change in legislation, however, did not remove all barriers. Once Section 562.109 became effective, Tech Pharmacy still had to wait for the Texas Board of Pharmacy to adopt implementing rules. In the intervening time, Tech Pharmacy made efforts to test and simulate long-term care facility operations by placing pharmaceutical storage and electronic dispensing machines in pharmacies, remotely controlling the machines to dispense pharmaceutical inventory, and physically delivering the dispensed pharmaceutical packages from the pharmacy to long-term care facilities. This process was onerous. Tech Pharmacy persisted, however, because there was no other way to develop its now-patented technology.

15. For the named inventors, long days researching, developing, testing, and lobbying blended into long nights monitoring operations by sleeping in long-term care facilities near their pharmaceutical storage and electronic dispensing machines. No effort was spared to get everything right. As a result of these persistent efforts, extensive investment, and Tech Pharmacy's unique developments, Tech Pharmacy became a leader in the field of automated pharmaceutical dispensing in long-term care facilities. Tech Pharmacy has not only made significant investments in research, development, time, and expense in its unique advanced systems and methods, but Tech Pharmacy also has made significant investments in time and expense in the protection of these systems and methods with patent and other intellectual property rights.

16. United States Patent No. 7,698,019 ("the '019 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Care Facilities," was duly and legally issued by the United States Patent and Trademark Office on April 13, 2010, after full and

5

fair examination.  Tech Pharmacy owns all right, title, and interest in the '019 Patent, including the right to recover damages for past infringement.  A copy of the '019 Patent is attached as Exhibit A to this Complaint.

17.     United States Patent No. 8,204,761 ("the '761 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Facilities and Related Methods," was duly and legally issued by the United States Patent and Trademark Office on June 19, 2012, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '761 Patent, including the right to recover damages for past infringement.  A copy of the '761 Patent is attached as Exhibit B to this Complaint.

18.     United States Patent No. 8,209,193 ("the '193 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Care Facilities and Related Methods," was duly and legally issued by the United States Patent and Trademark Office on June 26, 2012, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '193 Patent, including the right to recover damages for past infringement.  A copy of the '193 Patent is attached as Exhibit C to this Complaint.

19.     United States Patent No. 8,489,425 ("the '425 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Care Facilities and Related Methods," was duly and legally issued by the United States Patent and Trademark Office on July 16, 2013, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '425 Patent, including the right to recover damages for past infringement.  A copy of the '425 Patent is attached as Exhibit D to this Complaint.

20.     United States Patent No. 8,554,574 ("the '574 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Care Facilities and Related

Methods," was duly and legally issued by the United States Patent and Trademark Office on October 8, 2013, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '574 Patent, including the right to recover damages for past infringement.  A copy of the '574 Patent is attached as Exhibit E to this Complaint.

21.     United States Patent No. 8,612,256 ("the '256 Patent"), titled "System and Software of Enhanced Pharmaceutical Operations in Long-Term Care Facilities and Related Methods," was duly and legally issued by the United States Patent and Trademark Office on December 17, 2013, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '256 Patent, including the right to recover damages for past infringement.  A copy of the '256 Patent is attached as Exhibit F to this Complaint.

22.     United States Patent No. 8,954,338 ("the '338 Patent"), titled "System and Method of Enhanced Distribution of Pharmaceuticals in Long-Term Care Facilities," was duly and legally issued by the United States Patent and Trademark Office on February 10, 2015, after full and fair examination.  Tech Pharmacy owns all right, title, and interest in the '338 Patent, including the right to recover damages for past infringement.  A copy of the '338 Patent is attached as Exhibit G to this Complaint.

23.     The '019 Patent, '761 Patent, '193 Patent, '425 Patent, '574 Patent, '256 Patent, and '338 Patent  (collectively, the "Patents in Suit") claim systems, methods, and computer-readable media related to the installation and use of pharmaceutical storage and electronic dispensing machines (the "Machines") in a plurality of long-term care facilities.  In various claimed embodiments of such systems, methods, and computer-readable media, one, two, or more Machines located in long term-care facilities communicate over a communications network with one or more long-term care facility pharmacy management servers (the "Servers")

associated with a long-term care facility remote pharmacy. In embodiments, the Machines are remote from, and in communication with, the Servers. The Servers can include memory to store computer programs that, when executed, cause the systems to perform operations as recited in the claims of the Patents in Suit.

24. The Patents in Suit are valid and enforceable.

25. Tech Pharmacy previously notified a third-party pharmacy, Wellfount, of potential infringement of the '019 Patent by Wellfount. Because of the relationship between Wellfount and GLC, GLC became aware of the '019 Patent. GLC acknowledged in writing that GLC understood Tech Pharmacy's allegations regarding infringement of the '019 Patent. This written acknowledgement followed conversations between Tech Pharmacy and GLC in which Tech Pharmacy told GLC about one or more of the issued and other then-pending Patents in Suit.

26. Upon information and belief, Alixa makes, sells, offers to sell, and uses systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities in the United States and this District. Specifically, such systems, methods, and computer-readable media include those using the Automated Dispensing Unit ("ADU") and the Electronic Medicine Cabinet ("EMC"), individually and in combination. For example, Alixa advertises the ADU and EMC as part of "a completely automated medication dispensing and delivery system." This positioning of such "automated medication dispensing and delivery system[s]" in long-term care facilities is covered by the claims of the Patents in Suit.

27. Upon information and belief, GLC is a customer of its sister entity Alixa with respect to the above-mentioned systems, methods, and computer-readable media, and GLC uses

8

systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities in the United States. Specifically, GLC's systems, methods, and computer-readable media include those using the ADU and the EMC, individually and in combination.

28. Upon information and belief, Defendants Alixa and GLC are both subsidiaries of holding company Drumm Corp. ("Drumm"), a Delaware corporation. Upon information and belief, Drumm facilitates interactions between its daughter entities Alixa and GLC with respect to making, selling, offering to sell, and using systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities in the United States and this District. Specifically, these interactions involve the ADU and the EMC, individually and in combination. Drumm is the holding company for a family of health care companies established by Filmore Capital Partners, a private investment company.

29. Upon information and belief, Defendants make, sell, offer to sell, and use systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities under the federally registered trademark "AlixaRx." Upon information and belief, Defendants make, sell, offer to sell, and use systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities under the applied-for but currently unregistered trademarks "AlixaRx Access," "AlixaRx Connect," and "AlixaRx Engage."

30. Tech Pharmacy has provided Defendants and other competitors with constructive notice of the Patents in Suit by marking its systems and associated materials pursuant to 35 U.S.C. § 287. Tech Pharmacy's systems and associated materials have affixed thereon the U.S. Patent number of the Patents in Suit and other patents in Tech Pharmacy's patent portfolio.

31. Upon information and belief, GLC made its sister entity and supplier Alixa aware of Tech Pharmacy's patented technology, including one or more of the Patents in Suit. Defendants were aware or should have been aware of each of the Patents in Suit because the Patents in Suit are related to each other and part of a family of patents.

32. Upon information and belief, Alixa knew based on this knowledge that its systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the Patents in Suit and have no substantial non-infringing uses.

33. Upon information and belief, GLC used its knowledge of Tech Pharmacy's Patents in Suit that GLC obtained through its previous interactions with Tech Pharmacy to encourage Alixa to supply GLC with infringing systems, methods, and computer-readable media related to pharmaceutical storage and electronic dispensing machines in long-term care facilities.

## V. CLAIMS FOR DIRECT AND INDIRECT INFRINGEMENT AGAINST ALL DEFENDANTS

34. Tech Pharmacy hereby incorporates paragraphs 1 through 33 as though fully set forth herein.

### A. COUNT 1 – INFRINGEMENT OF THE '019 PATENT

35. Tech Pharmacy owns all right, title, and interest in and to the '019 Patent.

36. Defendants' making, selling, offering to sell, and use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe have directly infringed the claims of the '019 Patent literally or under the doctrine of equivalents.

37. Defendant Alixa's contribution to Defendant GLC's use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing

10

machines in long-term care facilities has indirectly infringed the claims of the '019 Patent. Alixa contributed to its customer GLC's infringement because Alixa knew that its systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the '019 Patent and have no substantial non-infringing uses.

38. Defendant GLC's inducement of Defendant Alixa to make, sell, offer to sell, and use systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '019 Patent. GLC induced Alixa's infringement by encouraging Alixa to supply it with and use such infringing systems, methods, and computer-readable media.

39. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '019 Patent, and Defendants are aware that Defendants infringe claims of the '019 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '019 Patent.

40. Defendants' infringement of claims of the '019 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

**B. COUNT 2 – INFRINGEMENT OF THE '761 PATENT**

41. Tech Pharmacy owns all right, title, and interest in and to the '761 Patent.

42. Defendants' making, selling, offering to sell, and use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities have directly infringed the claims of the '761 Patent literally or under the doctrine of equivalents.

43. Defendant Alixa's contribution to Defendant GLC's use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '761 Patent. Alixa contributed to its customer GLC's infringement because Alixa knew that its systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the '761 Patent and have no substantial non-infringing uses.

44. Defendant GLC's inducement of Defendant Alixa to make, sell, offer to sell, and use systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '761 Patent. GLC induced Alixa's infringement by encouraging Alixa to supply it with and use such infringing systems, methods, and computer-readable media.

45. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '761 Patent, and Defendants are aware that Defendants infringe claims of the '761 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '761 Patent.

46. Defendants' infringement of claims of the '761 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

**C. COUNT 3 – INFRINGEMENT OF THE '193 PATENT**

47. Tech Pharmacy owns all right, title, and interest in and to the '193 Patent.

48. Defendants' making, selling, offering to sell, and use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing

machines in long-term care facilities have directly infringed the claims of the '193 Patent literally or under the doctrine of equivalents.

49. Defendant Alixa's contribution to Defendant GLC's use of systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '193 Patent. Alixa contributed to its customer GLC's infringement because Alixa knew that its systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the '193 Patent and have no substantial non-infringing uses.

50. Defendant GLC's inducement of Defendant Alixa to make, sell, offer to sell, and use systems, methods, and computer-readable media related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '193 Patent. GLC induced Alixa's infringement by encouraging Alixa to supply it with and use such infringing systems, methods, and computer-readable media.

51. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '193 Patent, and Defendants are aware that Defendants infringe claims of the '193 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '193 Patent.

52. Defendants' infringement of claims of the '193 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

D. COUNT 4 – INFRINGEMENT OF THE '256 PATENT

53. Tech Pharmacy owns all right, title, and interest in and to the '256 Patent.

54. Defendants' making, selling, offering to sell, and use of systems and methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities have directly infringed the claims of the '256 Patent literally or under the doctrine of equivalents.

55. Defendant Alixa's contribution to Defendant GLC's use of systems and methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '256 Patent. Alixa contributed to its customer GLC's infringement because Alixa knew that its systems and methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the '256 Patent and have no substantial non-infringing uses.

56. Defendant GLC's inducement of Defendant Alixa to make, sell, offer to sell, and use systems and methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '256 Patent. GLC induced Alixa's infringement by encouraging Alixa to supply it with and use such infringing systems and methods.

57. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '256 Patent, and Defendants are aware that Defendants infringe claims of the '256 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '256 Patent.

58. Defendants' infringement of claims of the '256 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

**E.     COUNT 5 – INFRINGEMENT OF THE '338 PATENT**

59.     Tech Pharmacy owns all right, title, and interest in and to the '338 Patent.

60.     Defendants' making, selling, offering to sell, and use of systems related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities have directly infringed the claims of the '338 Patent literally or under the doctrine of equivalents.

61.     Defendant Alixa's contribution to Defendant GLC's use of systems related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '338 Patent.  Alixa contributed to its customer GLC's infringement because Alixa knew that its systems related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities infringe the '338 Patent and have no substantial non-infringing uses.

62.     Defendant GLC's inducement of Defendant Alixa to make, sell, offer to sell, and use systems related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '338 Patent.  GLC induced Alixa's infringement by encouraging Alixa to supply it with and use such infringing systems.

63.     Tech Pharmacy has provided constructive notice to Defendants of the existence of the '338 Patent, and Defendants are aware that Defendants infringe claims of the '338 Patent.  Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '338 Patent.

64.     Defendants' infringement of claims of the '338 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

## VI. CLAIMS FOR DIRECT INFRINGEMENT AGAINST ALIXA AND INDIRECT INFRINGEMENT AGAINST GLC

65. Tech Pharmacy hereby incorporates paragraphs 1 through 64 as though fully set forth herein.

### A. COUNT 6 – INFRINGEMENT OF THE '425 PATENT

66. Tech Pharmacy owns all right, title, and interest in and to the '425 Patent.

67. Defendant Alixa's use of methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has directly infringed the claims of the '425 Patent literally or under the doctrine of equivalents.

68. Defendant GLC's inducement of Defendant Alixa to use methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '425 Patent. GLC induced Alixa's infringement by encouraging Alixa to use such infringing methods as its supplier and provider.

69. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '425 Patent, and Defendants are aware that Defendants infringe claims of the '425 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '425 Patent.

70. Defendants' infringement of claims of the '425 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

### B. COUNT 7 – INFRINGEMENT OF THE '574 PATENT

71. Tech Pharmacy owns all right, title, and interest in and to the '574 Patent.

72. Defendant Alixa's use of methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has directly infringed the claims of the '574 Patent literally or under the doctrine of equivalents.

73. Defendant GLC's inducement of Defendant Alixa to use methods related to automated pharmaceutical storage and electronic dispensing machines in long-term care facilities has indirectly infringed the claims of the '574 Patent. GLC induced Alixa's infringement by encouraging Alixa to use such infringing methods as its supplier and provider.

74. Tech Pharmacy has provided constructive notice to Defendants of the existence of the '574 Patent, and Defendants are aware that Defendants infringe claims of the '574 Patent. Despite such knowledge, Defendants have infringed and continue to willfully, deliberately, and intentionally infringe claims of the '574 Patent.

75. Defendants' infringement of claims of the '574 Patent has injured Tech Pharmacy, has caused financial damage to Tech Pharmacy, and will continue to injure and cause financial damage to Tech Pharmacy unless enjoined by this Court.

## VII. JURY

Plaintiff hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VIII. PRAYER

For the above reasons, Plaintiff Tech Pharmacy asks that Defendants be cited and made to appear herein and answer the above allegations. Because Defendants have infringed and continue to infringe the Patents in Suit, and have and continue to do so willfully, deliberately, and intentionally, Tech Pharmacy submits that significant monetary damages and injunctive

relief, including the issuance of permanent injunctions, are appropriate. In particular, Tech Pharmacy asks that judgment be rendered that:

    a) Each Defendant has infringed one or more claims of the '019 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    b) Each Defendant has infringed one or more claims of the '761 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    c) Each Defendant has infringed one or more claims of the '193 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    d) Each Defendant has infringed one or more claims of the '256 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    e) Each Defendant has infringed one or more claims of the '338 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    f) Each Defendant has infringed one or more claims of the '425 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    g) Each Defendant has infringed one or more claims of the '574 Patent directly or indirectly, either literally or under the doctrine of equivalents;

    h) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '019 Patent;

    i) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are

permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '761 Patent;

j) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '193 Patent;

k) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '256 Patent;

l) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '338 Patent;

m) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '425 Patent;

n) Defendants and their agents, servants, officers, directors, employees, and all persons acting in concert with any of the above, directly or indirectly, are permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the '574 Patent;

o) Each                                                                                                 De

p) fendant is ordered to account and pay to Tech Pharmacy the damages to which Tech Pharmacy is entitled as a consequence of the infringement of each of the Patents in Suit, including lost profits or no less than a reasonable royalty, in accordance with 35 U.S.C. § 284;

q) Damages are trebled for the willful, deliberate, and intentional infringement of claims of each of the Patents in Suit by Defendants as alleged herein, in accordance with 35 U.S.C. § 284;

r) This case is declared exceptional and Tech Pharmacy is awarded prejudgment interest, costs, disbursements, and attorneys' fees in accordance with 35 U.S.C. § 285; and

s) Tech Pharmacy is awarded such other and further relief as this court may deem just and equitable.

Respectfully submitted,

By:_____

Maria Wyckoff Boyce, Lead Attorney
Texas SBN 22095050
maria.boyce@hoganlovells.com
Jeffrey S. Whittle
Texas SBN 24037813
jeffrey.whittle@hoganlovells.com
**HOGAN LOVELLS US, L.L.P.**
700 Louisiana, Suite 4300
Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

Michael E. Jones
Texas SBN 10929400
mikejones@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Ste. 500
Tyler, Texas 75702
T (903) 597-8311
F (903) 593-0846

**Counsel for Plaintiff Tech Pharmacy Services, LLC**