**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **Tech Pharmacy Services, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **E.D. Tex. Civil Action No. 4:15-cv-** |
| **Alixa Rx LLC and** | § | **00766-ALM** |
| **Golden Gate National Senior Care LLC** | § | |
| **d/b/a Golden LivingCenters,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

---

### PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

---

# Table of Contents

**Page**

TABLE OF CONTENTS................................................................................................i

INDEX OF AUTHORITIES.................................................................................iii-iv

I.      INTRODUCTION AND SUMMARY ...................................................... 1

II.     BACKGROUND................................................................................... 1

    A.      Governing claim construction standards ...............................................1

        1.   Intrinsic evidence relied upon by Tech Pharmacy governs claim construction.............1

        2.   Tech Pharmacy's presumption of the plain and ordinary meaning is appropriate ..................................................................................................3

        3.   Tech Pharmacy's claims are understood by one skilled in the art and, therefore, are definite ...............................................................................3

        4.   Claim preamble terms are generally non-limiting and need no construction ...............4

    B.      The Patents-in-Suit .................................................................................4

        1.   The state of the art prior to Tech Pharmacy's inventions was inefficient, costly, and prone to error ........................................................................4

        2.   Tech Pharmacy's inventions revolutionized pharmaceutical operations in long-term care facilities .........................................................................5

    C.      Agreed Constructions .............................................................................7

III.    DISPUTED TERMS ............................................................................. 8

    A.      "pharmaceutical storage and electronic dispensing cart(s)" / "dispensing cart(s)" / "the cart"/ "pharmaceutical dispensing and storing apparatus" / "pharmaceutical storage and dispensing apparatus" / "pharmaceutical storage and electronic dispensing apparatuses"/ "pharmaceutical storage and electronic dispensing machines" .................................................................8

    B.      "positioned remote therefrom"/ "remote from" / "remotely positioned"......................10

    C.      "on-location pharmacy" ........................................................................11

    D.      "(to be) in communication with" and "communication(s) network" ...........................12

    E.      "memory"/ "non-transitory memory" / "computer readable medium" / "non-transitory computer readable medium" / "non-transitory, tangible memory" / "non-transitory computer readable storage media having tangibly embodied thereon" .................................................................................................13

i

F.    "long-term care facility pharmacy group management server" ....................................14

G.    "preselected dispensing time periods" / "next preselected time periods" / "preselected time intervals for dispensing" ..................................................................15

H.    "to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions" / "performing a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions" ..................................................17

I.    "a plurality of disposable individual patient dosing packages / "one or more disposable patient dosing packages" / "one or more disposable individual patient dosing package" ..................................................................18

J.    "a separate and removable container associated with the cart" / "a separate and removable container associated with the pharmaceutical storage and dispensing apparatus" / "a container separable from the cart" / "a container" ..............................19

K.    "automated inventory replenishment of dispensing carts" ............................................20

L.    "establishing an automated therapeutic exchange protocol" ........................................22

M.    "medication dispensing apparatus administrator" ........................................................23

N.    "near-real time" ............................................................................................................24

O.    "substantially stationary" ............................................................................................25

P.    "to thereby enhance reduction of medication order errors and reduce miscommunication" ......................................................................................................26

Q.    "selectively remote control" / "selectively remotely controlling one or more functions" ..................................................................................................................27

R.    "[a] method of increasing sales to and generating revenue from a plurality of long-term care facilities devoid of an on-location pharmacy"/ "[a] method of generating revenue" / "[a] method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members" ................................................................................................................28

IV.    CONCLUSION .................................................................................................... 30

CERTIFICATE OF SERVICE .................................................................................... 32

\\DE - 818680/000002 - 1275883 v1

# INDEX OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003)................................................................................8

*Astute Tech., LLC v. Learners Digest Int'l LLC*,
    No. 2:12-cv-689-JRG, 2014 WL 1385191 (E.D. Tex. Apr. 2, 2014)....................15, 16, 18, 19

*Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*,
    401 F. Supp. 2d 692 (E.D. Tex. 2005).........................................................3, 11, 16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)................................................................................4

*Cell & Network Selection LLC v. AT&T Inc.*,
    No. 6:13-cv-403, 2014 WL 3671029 (E.D. Tex. Jul. 23, 2014)....................................4, 11, 28

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988)..........................................................................2, 8, 12

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001)..............................................................................25

*Endo Pharma., Inc. v. Watson Labs., Inc.*,
    Case No. 2:13-CV-192-JRG, 2014 WL 2859349 (E.D. Tex. Jun. 23, 2014).........................26

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)................................................................................3

*Foundry Networks v. Lucent Techs., Inc.*,
    No. 2:04-cv-40 (TJW), 2005 WL 6217420 (E.D. Tex. May 24, 2005)...............................12

*Freeny v. Apple Inc.*,
    No. 2:13-CV-00361-WCB, 2014 WL 4294505 (E.D. Tex. Aug. 28, 2014)............................4

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1997)................................................................................17

*Globetrotter Software, Inc. v. Elam Computer Grp. Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004)........................................................................2, 9, 15, 17

*Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs. Co.*,
    No. 4:14-CV-371, 2015 WL3761904 (E.D. Tex. Jun. 16, 2015) .......................................3

\\DE - 818680/000002 - 1275883 v1

*JVW Enters., Inc. v. Interact Accessories, Inc.,*
   424 F.3d 1324 (Fed. Cir. 2005)........................................................................... *passim*

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995)...................................................................................1, 2

*Microsoft Corp. v. Multi-Tech Sys., Inc.,*
   357 F.3d 1340 (Fed. Cir. 2004)...................................................................................24

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.,*
   336 F.3d 1373 (Fed. Cir. 2003)...............................................................................26, 27

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
   134 S. Ct. 2120 (2014).................................................................................... *passim*

*NTP, Inc. v. Research in Motion, Ltd.,*
   418 F.3d 1282 (Fed. Cir. 2005)...................................................................................24

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
   521 F.3d 1351 (Fed. Cir. 2008)....................................................................................3

*Omega Eng'g Inc. v. Raytek Corp.,*
   334 F.3d 1314 (Fed. Cir. 2003)....................................................................................9

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................................. *passim*

*Profectus Tech. LLC v. Huawei Techs. Co.*, Ltd., No. 6:11-cv-474, 2014 WL
   1575719, at *8 (E.D. Tex. Apr. 17, 2014) ...............................................9, 17, 21, 22

*Round Rock Research, LLC v. Dell, Inc.,*
   No. 4:11-cv-332 (E.D. Tex. Sept. 6, 2012)..............................................................14

*Straight Path IP Grp. v. SIPNET EU SRO,*
   806 F.3d 1356 (Fed. Cir. 2015)................................................................................2, 8

*Tex. Digital Sys., Inc. v. Telegenix, Inc.,*
   308 F.3d 1193 (Fed.Cir.2002)....................................................................................3

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997)...................................................................................3

*Ultimatepointer, LLC v. Nintendo Co.,*
   816 F.3d 816 ..........................................................................................................14, 18

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996).................................................................................2, 9

iv

**Statutes**

35 U.S.C. § 112, ¶ 2 .................................................................................................................3

v

## I.    INTRODUCTION AND SUMMARY

The eight Patents-in-Suit claim various embodiments—namely, systems, methods and computer-readable media related to the operation of pharmaceutical storage and electronic dispensing machines in a plurality of long-term care facilities.[1] In the P.R. 4-1 exchanges, Plaintiff requested to construe 5 terms while Defendants requested to construe 25 terms; the Parties agreed on 3 terms. Plaintiff requests that the Court construe the disputed terms as follows.

## II.    BACKGROUND

### A.    Governing claim construction standards

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). Courts gives disputed claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Id.* at 1312-13.

#### 1.    Intrinsic evidence relied upon by Tech Pharmacy governs claim construction

Disputed claim terms are to be interpreted in light of the intrinsic evidence: the claims themselves, the patent specification, and the prosecution history. *See id.* at 1314-17. The claim language itself provides "substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. For example, "the context in which a term is used in the asserted claim can be highly instructive." *Id.* If claim language is plain on its face, other evidence plays a more limited role, because "the proper construction of any claim language must, among other things, 'stay [] true to

---

[1] Ex. A, U.S. Pat. 7,698,019; Ex. B, U.S. Pat. 8,204,761; Ex. C, U.S. Pat. 8,209,193; Ex. D, U.S. Pat. RE44,127; Ex. E, U.S. Pat. 8,489,425; Ex. F, U.S. Pat. 8,554,574; Ex. G, U.S. Pat. 8,612,256; and Ex. H, U.S. Pat. 8,954,338 (collectively, the "Patents-in-Suit") all share a common specification. For convenience, all references to the specification will be to U.S. Pat. 7,698,019.

1

the claim language.'" *Straight Path IP Grp. v. SIPNET EU SRO*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) (quoting *Phillips*, 415 F. 3d at 1316). The Federal Circuit has repeatedly stated that, if claim language is plain, a different meaning is only supported by a redefinition, disclaimer, or disavowal of claim scope in the specification. *Id.*; *Phillips*, 415 F.3d at 1315-16.

The claims "'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 978). "[T]he specification 'is always highly relevant to the claim analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). For example, the specification may be reviewed to ensure that a proposed claim construction does not exclude a preferred embodiment from the claim scope. *Globetrotter Software, Inc. v. Elam Computer Grp. Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) ("A claim interpretation that excludes a preferred embodiment from the scope of the claims 'is rarely, if ever, correct.'" (quoting *Vitronics*, 90 F.3d. at 1583)). However, while "the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples in the specification will not be generally read into the claims." *Constant v. Advanced Micro-Devices, Inc*., 848 F.2d 1560, 1571 (Fed. Cir. 1988); *accord Phillips*, 415 F.3d at 1323. Further, the Federal Circuit has cautioned against limiting the claims "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee … intends for the claims and the embodiments to be strictly coextensive.'" *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1323).

The prosecution history also plays an important role in claim interpretation, and "[l]ike the specification, the prosecution history provides evidence of how the [United States Patent and

Trademark Office] and the inventor understood the patent." *Phillips*, 415 F.3d at 1317.

Finally, extrinsic evidence is generally "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1317-18.

### 2.    Tech Pharmacy's presumption of the plain and ordinary meaning is appropriate

"[A]bsent a 'clear indication' from the patent specification or a 'clear disavowal' in the prosecution history; there is a 'heavy presumption' that a claim term is given its plain and ordinary meaning." *Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*, 401 F. Supp. 2d 692, 696 (E.D. Tex. 2005) (quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed.Cir.2002)). Indeed, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314. Further, if no apparent disputes remain after the Court makes such determination, then no construction is necessary and the plain and ordinary meaning should be adopted. *See Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2015 WL3761904, at *6 (E.D. Tex. Jun. 16, 2015) (Mazzant, J.) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010). Undeniably, "claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims…. It is not an obligatory exercise in redundancy." *Ethicon*, 103 F.3d at 1568.

### 3.    Tech Pharmacy's claims are understood by one skilled in the art and, therefore, are definite

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter" of the claimed invention. 35 U.S.C. § 112, ¶ 2. A patent's claims are

3

indefinite if the "claims, viewed in light of the specification and prosecution history," fail to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). A decision as to "[i]ndefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite." *Freeny v. Apple Inc.*, No. 2:13-CV-00361-WCB, 2014 WL 4294505, at *4 (E.D. Tex. Aug. 28, 2014) (Bryson J., sitting by designation).

> ### 4.    Claim preamble terms are generally non-limiting and need no construction

The claim preamble is the opening portion of the claim, which generally sets the context for the main features of the claimed invention. "[A] preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citations and internal quotation marks omitted). This Court has recognized that "the preamble is of no significance to claim construction" when "the body of the claim describes the complete invention, and the preamble does not affect the claim language[.]" *Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-cv-403, 2014 WL 3671029, at *12 (E.D. Tex. Jul. 23, 2014) (adopting Rep. & Recommendation of Mitchell, M.J.).

> ## B.    The Patents-in-Suit

> ### 1.    The state of the art prior to Tech Pharmacy's inventions was inefficient, costly, and prone to error

Before inventors Jim Moncrief and James Martin developed Tech Pharmacy's proprietary pharmaceutical storage, packaging, and dispensing system, long-term care facility staff individually punched out pills from their packaging, then counted and sorted them by hand for each patient. Ex. I, Prosecution History Excerpt for U.S. Pat. 7,698,019, Decl. of James J.

Martin, dated August 21, 2009, at TP-GLC0003337-3339, 3341-3342. These previous techniques were time-consuming, expensive, and error-prone. *Id*. Moreover, early attempts in the industry to create machines to dispense pills in a long-term care facility required direct operation and oversight by an on-site pharmacist. This one-to-one requirement between these early machines and supervising pharmacists provided solutions that exacerbated the problem: if a machine needed a pharmacist operator, it would have been better simply to place the pharmacist in the long-term care facility and get rid of the machine. *Id*. at TP-GLC0003335-3336.

### 2. Tech Pharmacy's inventions revolutionized pharmaceutical operations in long-term care facilities

Tech Pharmacy recognized these problems and developed advanced systems and methods of remotely implementing pharmaceutical storage and electronic dispensing machines in long-term care facilities, overcoming technical problems that plagued prior machines and designs. Initially, in order to provide individual packaging and dispensing of bulk stored pharmaceuticals, Tech Pharmacy's dispensing machines were configured to report inventory and other data to, and be controlled by, a remote server. *Id*. at TP-GLC0003338-3339. As additional challenges arose, Tech Pharmacy further developed solutions and improvements to enhance pharmaceutical operations in long-term care facilities. *Id*. at TP-GLC0003337-3339, 3346-3353.

To manage pharmaceutical operations in long-term care facilities, Tech Pharmacy developed a long-term care facility pharmacy group management server and long-term care facility pharmacy management software (Ex. A at Fig. 10, item **20**), which include, among other features: (a) a patient prescription receiver **51** for receiving a digital image of a patient medication prescription order; (b) a drug conflict analyzer **59** to determine if an adverse interaction or drug conflict exists and to perform drug utilization reviews; (c) a dispensing initiator **61** to transmit dispensing instructions; (d) an inventory tracker **67** and inventory

5

replenisher **69** to communicate inventory level to the remote pharmacy, relieving staff from the burden of reordering; and (e) a patient billing tracker **63** and claims processor **65** for providing separate or consolidated billing. These features, among others of the long-term care facility pharmacy management software, reduced the costs associated with long-term care; reduced the risk of error when dispensing and administering pills for patient consumption; and enhanced the quality of care for long-term care patients. *See id.* at TP-GLC0003359-3360.



Tech Pharmacy also developed a second server, a remote pharmacy server (Ex. A at Fig. 1B, item **40**), to manage and control a plurality of pharmaceutical storage and electronic dispensing machines. Both the long-term care facility pharmacy group management server and the remote pharmacy server (when claimed) communicate with the dispensing machines through a communication network **18**. Tech Pharmacy further integrated video-input devices for use in training facility healthcare personnel and for troubleshooting the pharmaceutical storage and electronic dispensing machines.



6

In addition, Tech Pharmacy developed methods for remote pharmacy management, including, *e.g.*, methods of using one or more pharmaceutical storage and electronic dispensing machines in a long-term care facility and methods of restructuring long-term care facility staff procedures. Tech Pharmacy's innovations included restructuring medication administration intervals by implementing a preselected number of time blocks. Rather than have numerous medication administration times (such as 6:30 a.m., 7:00 a.m., 7:15 a.m., 10 a.m., 10:15 a.m, 11:30 a.m., noon, 4 p.m., 5:30 p.m., 6:00 p.m., 7:15 p.m., 7:30 p.m., and 8:45 p.m.) for various prescriptions, Tech Pharmacy's machines dispense pharmaceuticals for distribution during preselected dispensing time periods, thereby reducing waste, personnel costs, and risk of errors. *Id*. at TP-GLC0003351-3352.

From these inventions, the eight Patents-in-Suit claim various embodiments, systems, methods, and computer-readable media related to the operation of pharmaceutical storage and electronic dispensing machines in a plurality of long-term care facilities.

### C.     Agreed Constructions

The Parties have reached agreed constructions of the following terms, phrases, or clauses:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "long term care facility" / "long term care facilities" / "long-term care facility" / "long-term care facilities" | "nursing homes, retirement homes, Alzheimer's living facilities, senior communities, assisted living facilities or other types of long-term stay facilities" |
| "a plurality of video input devices each separately positioned adjacent a respective one of the plurality of pharmaceutical storage and electronic dispensing carts" | Plain and ordinary meaning |
| "establishes regular delivery routes for the at least one vehicle to thereby result in efficient use of the at least one vehicle" | Plain and ordinary meaning |

7

## III.    DISPUTED TERMS

A.    **"pharmaceutical storage and electronic dispensing cart(s)" / "dispensing cart(s)" / "the cart"/ "pharmaceutical dispensing and storing apparatus" / "pharmaceutical storage and dispensing apparatus" / "pharmaceutical storage and electronic dispensing apparatuses"/ "pharmaceutical storage and electronic dispensing machines"[2]**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "machines that package and dispense stored pharmaceuticals in response to electronically received instructions" | "a machine developed to store and dispense medication without human interaction based upon remote commands received" |

The proper construction of the "pharmaceutical storage and electronic dispensing machines" is "machines that package and dispense stored pharmaceuticals in response to electronically received instructions." *Phillips* directs that "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). Here, each of the asserted, independent claims expressly recite that the machines "package" pharmaceuticals.[3] Only Plaintiff's construction stays true to the claim language. *See Straight Path*, 806 F.3d at 1361.

Defendants' construction should also be rejected because it impermissibly seeks to add limitations from the specification. *Constant*, 848 F.2d at 1571 (stating, "[a]lthough the

---

[2] The specifications of the Patents-in-Suit use "cart," "apparatus," and "machine" interchangeably. *See* Ex. A, U.S. Pat. 7,698,019, at 8:25-27, 10:57-59. Further, the Parties have each proposed a single construction for all of these terms.

[3] Ex. A, U.S. Pat. 7,698,019, at Claim 1 (the "pharmaceutical storage and dispensing carts … in communication … through the communication network … store a plurality of pharmaceuticals therein … package the at least one pharmaceutical, and dispense…."); *see also* Ex. A at Claims 7, 12, 17; Ex. B, U.S. Pat. 8,204,761, at Claims 1, 7, 12, 17; Ex. C, U.S. Pat. 8,209,193, at Claims 1, 5, 9, 13; Ex. D, U.S. Pat. RE44,127, at Claims 1, 8, 15, 22;  Ex. E, U.S. Pat. 8,489,425, at Claim 1; Ex. F, U.S. Pat. 8,554,574, at Claim 1; Ex. G, U.S. Pat. 8,612,256, at Claims 1, 4; and Ex. H, U.S. Pat. 8,954,338, at Claim 1.

specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims"); *accord Phillips*, 415 F.3d at 1323. Defendants' proposed construction includes the phrase "without human interaction," which is nowhere in the specification or prosecution history.

In describing one of the preferred embodiments, the specification of U.S. Patent 7,698,019 unequivocally states:

> The pharmacist further enters (block **141**) details of dosage, route of administration, frequency and duration of the prescription. The pharmacist further enters (block **143**) the quantity to be dispensed and prescribing physician information. … The software **20** can then perform (block **145**) a drug utilization review (see also FIG. 7). … If the software **20** determines that the medication is stocked in the dispensing carts **30**, then it can send the prescription information to the dispensing cart **30** (block **151**) instead of printing a traditional prescription label. The cart **30** can then dispense the medication during the scheduled administration time.

Ex. A at 17:12-28. The above passage describes the machine's dispensing operation, which is based in part upon prior human interaction. Thus, Defendants' proposed construction is inconsistent with both the claim language and the specification and should be rejected because it excludes a preferred embodiment. *Globetrotter Software*, 362 F.3d at 1381 ("A claim interpretation that excludes a preferred embodiment from the scope of the claims 'is rarely, if ever, correct.'" (quoting *Vitronics*, 90 F.3d. at 1583)). Finally, Defendants' construction imports a negative limitation into the claim, which is generally disfavored. *Profectus Tech. LLC v. Huawei Techs. Co.*, Ltd., No. 6:11-cv-474, 2014 WL 1575719, at *8 (E.D. Tex. Apr. 17, 2014) (citing *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)), *aff'd*, 823 F.3d 1375 (Fed. Cir. 2016). Accordingly, the Court should adopt Plaintiff's construction.

### B.    "positioned remote therefrom"/ "remote from" / "remotely positioned"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "distant" or "at a distance" | "positioned in a separate facility" |

No construction of these three phrases is needed because, at the time of invention, their plain and ordinary meanings were clear to one of ordinary skill in the art based on the claim language. *Phillips*, 415 F.3d at 1314. *Phillips* teaches that "the ordinary meaning of claim language … may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words…. In such circumstances, general purpose dictionaries may be helpful." *Id*. Consistent with the claims and bolstering Plaintiff's proposed construction, the extrinsic evidence defines "remote" as "located far away; distant in space." Ex. J, *Am. Heritage Dictionary of the Eng. Language*, 2011, at TP-GLC0037429.

Here, the claims use "remote" in some instances to delineate distance from a computer; in other instances, the claims use "remote" to delineate distance from a facility. Plaintiff agrees that a "computer positioned … remote from the long-term care facility" implies that the computer is positioned in a separate facility. Ex. A at 21:46-49. However, a "computer positioned remote from the … server" is not required to be positioned in a separate facility—just positioned remotely, *i.e.*, at a distance. *Id*. at 21:46-48. Similarly, Fig. 9 of Ex. A illustrates an embodiment where computers **40'** are remote from long-term care facility **12'**, but computers **40'** and server **15'** are not necessarily in separate facilities. *Id*. at Fig. 9, 13:47-14:16.

Defendants improperly attempt to set limits upon the meaning of "remote" in these three phrases to require a "separate facility" for every instance of this term. This "one-size-fits" all construction is improper because it is inconsistent with the claim language and specification.

10

Accordingly, Plaintiff urges the Court to adopt the plain and ordinary meaning or in the alternative construe "remote" as "at a distance" or "distant" in keeping with the widely accepted meaning of these commonly understood words.

### C. "on-location pharmacy"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning | "a pharmacy located at the long term care facility" |

The term "on-location pharmacy" does not need to be construed for three reasons. First, this phrase appears only in the claim preamble. This Court has recognized that "the preamble is of no significance to claim construction" when "the body of the claim describes the complete invention, and the preamble does not affect the claim language." *Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-cv-403, 2014 WL 3671029, at *12 (E.D. Tex. Jul. 23, 2014) (adopting Rep. & Recommendation of Mitchell, M.J.). Second, it is well established that courts give claim terms their plain and ordinary meaning as understood by one of ordinary skill in the art at the time of the invention when the claim terms are viewed in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13. Third, a heavy presumption exists that claim terms should be given that plain and ordinary meaning absent a clear disavowal of that plain and ordinary meaning in the intrinsic evidence. *Masonite*, 401 F. Supp. 2d at 696. Here, the specification and prosecution history do not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. For these reasons, no construction of the term "on-location pharmacy" is required.

### D.    "(to be) in communication with" and "communication(s) network"

| Term/Phrase | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "(to be) in communication with" | Plain and ordinary meaning | "Connected to and able to communicate via a communication network" |
| "communication(s) network" | Plain and ordinary meaning | "A Wide Area Network (WAN), such as the Internet" |

No construction of either of these two phrases is needed because, at the time of the invention, one of ordinary skill in the art readily understood their plain and ordinary meaning. *Phillips*, 415 F.3d at 1314; *see also Foundry Networks v. Lucent Techs., Inc.*, No. 2:04-cv-40 (TJW), 2005 WL 6217420, at *2 (E.D. Tex. May 24, 2005) (construing the term "network" consistent with its ordinary meaning of "a series of points interconnected by communication channels").

Defendants' proposed construction impermissibly adds narrowing limitations. *Constant*, 848 F.2d at 1571; *accord Phillips*, 415 F.3d at 1323. Defendants allege that "communications network" can only be "a Wide Area Network (WAN), such as the Internet." However, no intrinsic support for this construction exists. Ex. A at Figs. 1A-1B, 7; 14:33-39 (describing virtual private network or VPN). Rather, the specification suggests that the communications network may include telephone lines, *e.g.*, to communicate with a fax machine, and dial-up modems, etc. *Id.* at 14:33-45. The specification also recites that "remote pharmacy personnel, through the long-term care facility pharmacy group management server **15** or a remote pharmacy group server **40**, can dial-up or otherwise remotely access the dispensing cart **30** through the communication network **18**." *Id.* at 15:30-34. Further, "the pharmacy management software **20** can be networked to communicate with both the long-term care facility document processor **14**, e.g., fax machine, scanner, or image capture device, and the pharmaceutical storage and

12

dispensing machines or cart **30**, and the optional video input device **31**, at the long-term care facility **12** (block **105**)." *Id.* at 15:59-65. These passages establish that various types of communication networks would be clear to one of skill in the art and should not be limited as Defendants propose.

Defendants' proposed construction should also be rejected because, rather than construing "communication" in the phrase "to be in communication with," Defendants substitute a plethora of additional narrowing limitations in place of the simple terms "in" and "with." Accordingly, Defendants tout the phrase "to be in" to mean "connected to and able to" and the phrase "with" to be "via a communication network." Thus, Defendants allege any communication must be "connected" and via a WAN. Rather than shed light on the phrase, Defendants further muddy the water by nesting another phrase to be construed, *i.e.*, "communication network." Plaintiffs therefore urge the Court to reject Defendants' impermissibly narrow constructions in favor of the plain and ordinary meanings.

   **E.    "memory"/ "non-transitory memory" / "computer readable medium" / "non-transitory computer readable medium" / "non-transitory, tangible memory" / "non-transitory computer readable storage media having tangibly embodied thereon"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "physical memory located on a computer or server" |

No construction of this term is needed because, at the time of the invention, its plain and ordinary meaning was readily apparent to one of ordinary skill the art. *Phillips*, 415 F.3d at 1314. This Court has previously held that the term "memory" needs no construction:

> Defendant goes beyond defining what a "memory" structure is and adds limitations as to where it is located and how it is used. Therefore, the Court expressly rejects Defendant's proposal to construe the term "memory" to mean "memory, which is located outside of the microcontroller network and is accessible by the CPU." The Court finds that the term "memory" is readily understandable, and no construction is necessary.

13

*Round Rock Research, LLC v. Dell, Inc.*, No. 4:11-cv-332, at *26 (E.D. Tex. Sept. 6, 2012) (Mazzant, M.J.) (paragraph break omitted). The same logic applies here.

By reusing the term "memory" in their proposed construction, along with additional limitations, Defendants' proposed construction is counter to this Court's prior opinion. *Id.; see also Ultimatepointer, LLC v. Nintendo Co.*, 816 F.3d 816, 822 ("We have cautioned against importing limitations from the specification into the claims when performing claim construction[.]"). Because Defendants' proposed construction improperly imports limitations from the specification, the Court should simply adopt the plain and ordinary meaning.

**F.**    **"long-term care facility pharmacy group management server"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning; in the alternative, "one or more data processing and management computer(s) having a memory to store data and computer programs for pharmacy management" | "a computer remote from both the pharmacy and long-term care facility, which stores server data" |

Once again, no construction of this term is needed because, at the time of invention, its plain and ordinary meaning was clear to one of ordinary skill in the art based on the claim language. *Phillips*, 415 F.3d at 1314 ("[T]he context in which a term is used in the asserted claim can be highly instructive."). All of the asserted independent claims in which this term appears expressly define the term within the claims.[4] Claim 1 of the U.S. Patent 7,698,019 is illustrative: "a first data processing and management computer including a first memory to store data therein to manage and control a plurality of pharmaceutical storage and electronic dispensing carts, each positioned remote therefrom and ***to thereby define*** a long term care facility pharmacy group management server." Ex. A at Claim 1 (emphasis added). This definition is also consistent with the specification. *See*, *e.g.*, Ex. A at 8:4-10 ("includes a data processing and management

---

[4] Ex. A, U.S. Pat. 7,698,019, at Claims 1, 7; Ex. B, U.S. Pat. 8,204,761, at Claims 1, 7; Ex. C, U.S. Pat. 8,209,193, at Claims 1, 5.

computer including a memory 21 to store data therein thereby *to define a long-term care facility pharmacy group management server 15*") (emphasis added).

The dispute between the Parties centers on whether the long-term care facility pharmacy group management server must be remote from both the pharmacy and the long-term care facility. Plaintiff agrees that the long-term care facility pharmacy group management server is remote from the pharmaceutical storage and electronic dispensing machines. However, in one or more claimed embodiments and as further illustrated in Fig. 7 of Ex. A, the long-term care facility pharmacy group management server is <u>not</u> required to be remote from the pharmacy.[5] Thus, Defendants' proposed claim construction should be rejected because it excludes one of the preferred embodiments of the invention. *Globetrotter Software*, 362 F.3d at 1381.

Accordingly, Plaintiff requests that the Court adopt the plain and ordinary meaning. Alternatively, the term should properly be construed as "one or more data processing and management computer(s) having a memory to store data and computer programs for pharmacy management." Such construction is supported by the specification and omits any overreaching limitations. *See, e.g.*, Ex. A at 8:4-10.

### G.    "preselected dispensing time periods" / "next preselected time periods" / "preselected time intervals for dispensing"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "preselected" means "selected beforehand" and "time periods" means "time blocks" | "time periods/the next time period for dispensing of the pharmaceuticals that are preselected by the software located on the remote server, not on demand" |

The Court need not construe what, at the time of the invention, one of ordinary skill in the art readily understood. *Phillips*, 415 F.3d at 1314; *see also Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-cv-689-JRG, 2014 WL 1385191, at *17 (E.D. Tex. Apr. 2, 2014)

---

[5] *See, e.g.*, Ex. A, U.S. Pat. 7,698,019, at Claim 7; Ex. B, U.S. Pat. 8,204,761, at Claim 7; Ex. C, U.S. Pat. 8,209,193, at Claim 5; *see also* Ex. A at Fig. 7.

15

(refusing to construe "capture" beyond its plain and ordinary meaning because construing the term "will only tend to confuse rather than clarify"). Absent a clear disavowal—which is not present here—a heavy presumption exists that claim terms should be given their plain and ordinary meaning. *Masonite*, 401 F. Supp. 2d at 696. If the claim terms making up this phrase are deemed to require construction, then the proper construction of "preselected" is "selected beforehand" and the proper construction of "time periods" is "time blocks." These constructions are consistent with the specification. *See* Ex. A at 16:14-18, 24-26.

The specification recites: "the transition team can aid in restructuring the medication administration intervals (block **109**) to accommodate more of a just-in-time medication procurement system to significantly reduce waste and risk of errors." *Id.* at 16:14-18. Further, "[o]nce time blocks are established, these time blocks are programmed (blocks **113** and **115**) into the pharmaceutical storage and dispensing machines or carts **30**." *Id.* at 16:24-26. These passages demonstrate that, in one of the preferred embodiments, a transition team preselects the time periods and that these time periods are programmed into the pharmaceutical storage and electronic dispensing machines. Thus, no time periods are preselected "by the software" and certainly not "by the software located on the remote server." Accordingly, Defendants' proposed construction should be rejected because the time periods are not required to be preselected "by the software located on the remote server."

Defendants also attempt to add the negative limitation "not on demand" to the construction and allege that the addition of this negative limitation is a "slight variation" and is "not substantive."[6] Plaintiff strongly disagrees. Here, the negative limitation is substantive because it is counter to the open-ended transitional phrase "comprising" that is present in all

---

[6] Ex. K, Notice Regarding the Joint Claim Construction and Prehearing Statement, filed Aug. 31, 2016 (Dkt. 77)

\\DE - 818680/000002 - 1275883 v1

asserted claims, which does not exclude unrecited elements and/or limitations. *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Further, the importation of a negative limitation into the claim is generally disfavored. *Profectus*, 2014 WL 1575719, at *8. Defendants' proposed construction is inconsistent with the claims and the specification and, accordingly, should be rejected. *Globetrotter Software*, 362 F.3d at 1381.

Finally, in Defendants' proposed construction, none of the original claim terms—preselected, dispensing, or time periods—are construed. Defendants simply rearrange the terms. Clearly, Defendants do not believe that any of those claim terms in the original phrase need construction. Therefore, no construction of any of the related phrases is necessary.

**H.    "to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions" / "performing a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | this is a term of art, which should be given its plain and ordinary meaning of "to examine an individual patient's drug usage at a long term care facility to determine physician prescribing habits and patient usage patterns to manage costs and improve patient safety in response to an added prescription for the individual patient" |

Plaintiff and Defendants agree that this phrase should be given its plain and ordinary meaning. The specification describes the pharmaceutical utilization review, shown in Fig. 8C, as including a dose check review **396**, a drug allergy review **397** and a drug interaction review **399**. Ex. A at Figs. 7, 8C, 13:35-43. No construction is therefore needed because, at the time of the invention, one of ordinary skill in the art readily understood what a pharmaceutical utilization review is and what steps are required for such review. *See Phillips*, 415 F.3d at 1314.

17

Nevertheless, Defendants propose that the plain and ordinary meaning is a word-for-word textbook definition found in a specialized dictionary definition of the extrinsic evidence. Ex. L, DEFS-00011672 to DEFS-00011679 (excerpt from *Pharmacy Simplified: A Glossary of Terms* defining "drug utilization review"). In so doing, Defendants improperly add limitations, such as "physician prescribing habits" and "patient usage patterns," not specifically stated in the specification or the other intrinsic evidence. *See Ultimatepointer, 816 F.3d at 822* ("We have cautioned against importing limitations from the specification into the claims when performing claim construction[.]"). Defendants' proposed construction is incorrect because it improperly limits the claims to a particular embodiment—one that is based solely on extrinsic evidence. *See JVW Enters.*, 424 F.3d at 1335 (noting that the Federal Circuit has cautioned against limiting the claims "even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee…intends for the claims and the embodiments to be strictly coextensive.'") (quoting *Phillips*, 415 F.3d at 1323). Thus, the Court should reject Defendants' specialized dictionary definition, which is not, in fact, the plain and ordinary meaning.

I.    **"a plurality of disposable individual patient dosing packages / "one or more disposable patient dosing packages" / "one or more disposable individual patient dosing package"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | "a plurality of patient specific medication envelopes sorted in a preselected order" |

The Court need not construe this phrase because, at the time of the invention, the plain and ordinary meaning was readily understood by one of ordinary skill in the art. Phillips, 415 F.3d at 1314; *see also Astute Tech.*, 2014 WL 1385191, at *17.

Here, the dispute between the Parties focuses on whether "packages" should be construed as "envelopes" that are "sorted in a preselected order." Defendants improperly attempt to restrict "packages" to require "envelopes" by importing features of an embodiment described in the specification. *See, e.g.,* Ex. A at 8:36-46. Further, Defendants would require such "envelopes" to be in "a preselected order." No person of ordinary skill in the art would understand "packages" to require "envelopes sorted in a preselected order." Although "the specification often describes very specific embodiments of the invention," the Federal Circuit has "repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323; *see also JVW Enters.*, 424 F.3d at 1335. Plaintiff requests that the Court exercise the same restraint, because "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Phillips*, 415 F.3d at 1323. Accordingly, Defendants' proposed construction should be rejected.

### J.    "a separate and removable container associated with the cart" / "a separate and removable container associated with the pharmaceutical storage and dispensing apparatus" / "a container separable from the cart" / "a container"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "container" means "holder" | "a device, into which the dosing packages are placed, attached to the dispensing [cart / apparatus] and capable of being removed from the dispensing [cart / apparatus]" |

No construction of these phrases is needed because, at the time of invention, their plain and ordinary meanings were clear to one of ordinary skill in the art based on the claim language. *Phillips*, 415 F.3d at 1314. If construction of the phrase is deemed necessary, the Court is urged to adopt the construction of "container" as a "holder," which is consistent with the specification as well as general dictionary definitions. Ex. A at Fig. 4A; *id.* at 16:24-30 ("caddies or trays"

19

analogous to "holders"); Ex. M, TP-GLC0037420-424 (general dictionary definition of "contain" to mean "hold").

Here, the dispute between the Parties involves the Defendants' proposed limitations "into which the dosing packages are placed" and "attached." Defendants improperly attempt to restrict "container" to require "a device, into which the dosing packages are placed" by importing features of an embodiment described in the specification. Ex. A at 8:33-46, 16:24-33. Despite the fact that the claim language notably uses the less restrictive "associated," Defendants would require such device to be "attached" to the pharmaceutical storage and electronic dispensing machine. Further, the term "attached" does not appear in the specification. *See generally* Ex. A. Thus, with respect to "a device, into which the dosing packages are placed," Defendants impermissibly attempt to limit the phrase to a specific embodiment described in the specification. *Phillips*, 415 F.3d at 1323; *JVW Enters.*, 424 F.3d at 1335. Worse, with respect to "attached," Defendants attempt to limit the phrase to a construction that is not even described in the specification. On such basis, Defendants' proposed construction should be rejected.

### K.    "automated inventory replenishment of dispensing carts"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "computer program to receive medication inventory level and responsively notify of a replenishment requirement for at least one of the machines" | "the process of refilling the inventory of pharmaceuticals within a pharmaceutical storage and dispensing [cart / apparatus / machine] without human labor" |

No construction of this term is needed because its plain and ordinary meaning is clear to one of ordinary skill in the art. *See Phillips*, 415 F.3d at 1314. However, if the Court decides that the phrase requires construction, Plaintiff's proposed construction is consistent with both the claim language and the specification. Ex. A at Claims 6, 11, 10:16-23, 11:48-55. Indeed, the language of the asserted claims is particularly instructive: "wherein the long-term care facility

pharmacy management software includes automated inventory replenishment of the dispensing carts." *See* Ex. A, U.S. Pat. 7,698,019, at Claims 6, 11; Ex. B, U.S. Pat. 8,204,761, at Claims 6, 11; Ex. C, U.S. Pat. 8,209,193, at Claim 3; *see also Phillips*, 415 F.3d at 1314. Plaintiff's proposed construction for the plain and ordinary meaning of this phrase is also consistent with the specification, which shows that pharmacy personnel are notified of the replenishment requirement:

> An inventory replenisher **69** is positioned to receive the medication inventory from the inventory tracker **67**, and responsive to the medication inventory decreasing below a minimum threshold level, to notify pharmacy personnel associated with the remote pharmaceutical dispensing and storage facility **40** of a replenishment requirement for at least one of the pharmaceutical storage and electronic dispensing carts **30**.

Ex. A at 11:48-55.

Plaintiff objects to the added limitations in Defendants' proposed construction, namely, "the process of" and "without human labor." Rather than construing this phrase as a "computer program" as identified in the claims, Defendants' proposed construction is inexplicably a "process." Moreover, Defendants' proposed construction of "automatic" as "without human labor" relies on a definition from the extrinsic evidence. *See* Ex. N, DEFS-00011684-00011690. Extrinsic evidence is less reliable than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317-18 ("extrinsic evidence in general is less reliable than the patent and its prosecution history in determining how to read claim terms"). Further, Defendants' proposed construction imports a negative limitation into the claim, which is generally disfavored. *Profectus*, 2014 WL 1575719, at *8. Accordingly, the Court should reject Defendants' proposed construction because Plaintiff's intrinsic evidence trumps Defendants' extrinsic evidence and negative limitation.

L.    **"establishing an automated therapeutic exchange protocol"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | this is a term of art, which should be given its plain and ordinary meaning of "establishing a process of substituting one chemically different drug for another, the substitution occurring without human labor" |

Plaintiff and Defendants agree that this phrase should be given its plain and ordinary meaning. Indeed, the specification describes that "the transition team can meet with facility physicians to establish a type of automated therapeutic exchange protocol (block **119**). This protocol can be managed by the remote pharmacy management software **20**…." Ex. A at 16:42-48. Thus, the specification is clear that the protocol, rather than the substitution, is automated.

Nevertheless, Defendants propose that the plain and ordinary meaning is provided by extrinsic evidence, namely, a word-for-word definition of a "therapeutic substitution" found in a specialized dictionary. Ex. L, DEFS-00011672 to DEFS-00011679 (excerpt from *Pharmacy Simplified: A Glossary of Terms* defining "therapeutic substitution"). In so doing, Defendants improperly add limitations, such as "substituting one chemically different drug for another" and "the substitution occurring without human labor." Defendants' proposed construction is incorrect because it improperly limits the claims to a particular embodiment—one that is based solely on extrinsic evidence. *See JVW Enters.*, 424 F.3d at 1335. In addition, Defendants' proposed construction of "without human labor" improperly imports a definition of "automatic" from the extrinsic evidence. *See* Ex. N, DEFS-00011684-00011690. Extrinsic evidence is less reliable than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317). Further, Defendants' proposed construction improperly imports a negative limitation into the claim, which is generally disfavored. *Profectus*, 2014 WL 1575719, at *8.

Accordingly, the Court should reject Defendants' inconsistent specialized dictionary definition disguised as the plain and ordinary meaning.

**M.      "medication dispensing apparatus administrator"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "pharmaceutical storing, packaging and dispensing machine management computer program" | Indefinite |

Plaintiff urges the Court to construe the term as a "pharmaceutical storing, packaging and dispensing machine management computer program." This construction is consistent with and defined by the language of the claims, which state:

> The long-term care facility pharmacy management server including non-transitory, tangible memory medium to store *long-term care facility management computer programs including* a patient prescription receiver to receive a digital image of a patient medication prescription order and *a medication dispensing administrator* to selectively remote control one or more pharmaceutical storage and electronic dispensing cart functions.

Ex. F, U.S. Pat. 8,554,574, at Claim 1 (emphases added); *see* Ex. E, U.S. Pat. 8,489,425, at Claim 1; Ex. G, U.S. Pat. 8,612,256, at Claims 1,4; Ex. H, U.S. Pat. 8,954,338 at Claim 1. *Phillips* instructs: "The context in which a term is used in the asserted claim can be highly instructive." 415 F.3d at 1314.

Defendants' assertion that the term is indefinite does not pass muster in view of the express language of the claims themselves. *Nautilus*, 134 S. Ct. at 2124 ("A patent is invalid for indefiniteness if its claims, read in light of the  specification delineating, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). Here, the claim language itself helps to define the term as a "management computer program … to selectively remote control one or more pharmaceutical storage and electronic dispensing cart functions," which is consistent with the claim language and the specification. Ex. F, U.S. Pat. 8,554,574, at Fig. 10, 11:56-62, Claim 1; Ex. G, U.S. Pat. 8,612,256, at Claims 1, 4;

23

Ex. H, U.S. Pat. 8,954,338, at Claim 1; Ex. E, U.S. Pat. 8,489,425, at Claim 1. Accordingly, a "pharmaceutical storing, packaging and dispensing machine management computer program" is the correct and proper construction.

### N.      "near-real time"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "without significant delay" | Indefinite |

The term "near-real time" does not need to be construed because, at the time of the invention, its meaning was clear to one of ordinary skill in the art, and the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase. *Phillips*, 415 F.3d at 1312-13. If the Court, however, believes that construction of the term is required, then "near-real time" should be construed as "without significant delay," consistent with the prosecution history. In the prosecution history of related cases, the Examiner *sua sponte* construed the phrase, "near-real time," to be "without significant delay." Ex. O, TP-GLC0013928-13935 (showing the prosecution history, namely, the Notice of Allowance for U.S. Pat. 8,489,425). The Federal Circuit has held that, if multiple patents "derive from the same patent application and share many common terms, we must interpret the claims consistently across all patents." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005), *abrogated on other grounds in Zoltek Corp. v. U.S.*, 672 F.3d 1309, 1319 (Fed. Cir. 2012) (en banc); *see also Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349-50 (Fed. Cir. 2004) (finding that statements by the patentee in prosecution of sibling patent were a "representation of its own understanding of the inventions disclosed" in all sibling patent, despite the statement being made after the issuance of the patent in which the term being analyzed was used).

\\DE - 818680/000002 - 1275883 v1

Plaintiff's construction "without significant delay" is further supported by extrinsic evidence. The phrase "real time" is defined by a general purpose dictionary as "[t]he actual time in which a process takes place or an event occurs." Ex. P, TP-GLC0037427. "Near-real time" would thus mean "near the actual time in which a process takes place or an event occurs," which bolsters Plaintiff's construction. *See Phillips*, 415 F.3d at 1314 (general purpose dictionaries may be helpful in determining the ordinary meaning of commonly understood words).

In view of the intrinsic and extrinsic evidence, Defendants' assertion that the term is indefinite should be rejected. *See Nautilus*, 134 S. Ct. at 2124.

**O.    "substantially stationary"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

No construction of this term is needed because, at the time of the invention, one of ordinary skill in the art would understand the machine to be "largely but not wholly" stationary. Indeed, the Federal Circuit has determined that "substantially" means "largely, but not wholly" based upon a general reference dictionary. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1370 (Fed. Cir. 2001).

Defendants' assertion that the phrase is indefinite is inconsistent with the specification and prosecution history. In the prosecution history, Plaintiff's "substantially stationary" pharmaceutical storage and electronic dispensing machine is cited as one distinction over the "*mobile* charting computer" of U.S. Patent No. 5,842,976 ("Williamson"). Ex. Q, Prosecution History Excerpt for U.S. Pat. 7,698,019, Response and Amendment to Office Action Dated August 9, 2007, at TP-GLC0002737. Williamson's mobile charting computer "accompanies the nurse … on medication or treatment rounds in the extended care facility." Ex. R, U.S. Pat. 5,842,976 to Williamson. Plaintiff's "substantially stationary" pharmaceutical storage and

electronic dispensing machine (when so claimed) does not have that mobility. Plaintiff's specification at Fig. 2 and column 9, lines 1-42, was cited to support the feature that the pharmaceutical storage and electronic dispensing machine remains substantially stationary. Ex. Q at TP-GLC0002737. As shown in Fig. 2, the machine would have to be moved into the room and thereafter could remain. Ex. A at Fig. 2, 9:1-42. In view of the intrinsic evidence and Federal Circuit precedent, Defendants' assertion that the term is indefinite should be rejected. *See Nautilus*, 134 S. Ct. at 2124.

P.    **"to thereby enhance reduction of medication order errors and reduce miscommunication"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| plain and ordinary meaning | Indefinite |

No construction of this phrase is needed because, at the time of invention, the plain and ordinary meaning was clear to one of ordinary skill in the art based on the claim language. *Phillips*, 415 F.3d at 1314. When read in the context of the asserted claims, such plain and ordinary meaning of the phrase is clear: "verifying… one or more digital images of one or more patient medication prescription orders… *to thereby enhance reduction of medication order errors and reduce miscommunication* between one or more long-term care facility staff members and the long-term care remote pharmacy." Ex. F, U.S. Pat. 8,554,574, at Claim 1; *see* Ex. G, U.S. Pat. 8,612,256, at Claim 1.

Moreover, the phase is a "thereby" clause, which characterizes the result of practicing the claimed method steps. *Id*. "[L]anguage in … a 'thereby' clause[] in a method claim is given no weight when it merely states the intended result of a method step or steps." *Endo Pharma., Inc. v. Watson Labs., Inc.*, Case No. 2:13-CV-192-JRG, 2014 WL 2859349, at *4 (E.D. Tex. Jun. 23, 2014) (citing *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003)).

\\DE - 818680/000002 - 1275883 v1

The prosecution history supports that this phrase conveys a desired result: "one skilled in the art would understand that reduction of medication order errors and reduction of drug conflicts are desirable." Ex. S, Prosecution History Excerpt for U.S. Pat. 8,954,338, Response to Non-Final Office Action Mailed April 10, 2014, at TP-GLC0016902. Because no patentable weight is provided by the phrase, no construction is necessary. *Minton*, 336 F.3d at 1381 ("A whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited.").

In view of the intrinsic evidence and the claim language itself, Defendants' assertion that the phrase is indefinite should be rejected. *Nautilus*, 134 S. Ct. at 2124.

**Q.    "selectively remote control" / "selectively remotely controlling one or more functions"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | Indefinite |

No construction of this term is needed because its plain and ordinary meaning is clear to, and understood by, one of ordinary skill in the art to mean both selectively and remotely controlling. This understanding is supported by the specification:

> A medication dispensing apparatus administrator **71**, responsive to an input from pharmacy personnel, *can selectively remotely control functions* available to facility medical personnel from the terminal of the pharmaceutical storage and electronic dispensing cart **30**, over the communications network, *to thereby remotely provide training* to the facility medical personnel.

Ex. A at 11:56-62 (emphasis added). The understanding is further supported by the prosecution history in the statement that the cited prior art "does not disclose, teach, or suggest a software component positioned to selectively *remotely* control functions available to long-term care facility (staff) medical personnel, over a virtual private network **18**, responsive to an input from (remote) pharmacy personnel to provide training to such facility medical personnel." Ex. T,

27

Prosecution History Excerpt for U.S. Pat. 7,698,019, Response and Amendment to Office Action Dated August 1, 2006, at TP-GLC0002620-2621 (emphasis in original).

In view of the intrinsic evidence and the claim language itself, Defendants' assertion that the phrase is indefinite is without merit and should be rejected. *Nautilus*, 134 S. Ct. at 2124.

**R.    "[a] method of increasing sales to and generating revenue from a plurality of long-term care facilities devoid of an on-location pharmacy"/ "[a] method of generating revenue" / "[a] method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| These are separate phrases. Plain and ordinary meaning for each phrase. | Indefinite |

All three of these phrases are found only in the preambles of the respective claims. Ex. A, U.S. Pat. 7,698,019, at Claim 17; Ex. B, U.S. Pat. 8,204,761, at Claim 17; Ex. C, U.S. Pat. 8,209,193, at Claim 13; Ex. E, U.S. Pat. 8,489,425, at Claim 1; Ex. F, U.S Pat. 8,554,574, at Claim 1. This Court has recognized that "the preamble is of no significance to claim construction" when "the body of the claim describes the complete invention, and the preamble does not affect the claim language." *Cell & Network Selection LLC*, 2014 WL 3671029, at *12.

The phrase "a method of increasing sales to and generating revenue from a plurality of long-term care facilities devoid of an on-location pharmacy" is defined by the respective claims and are further well-described in the specification:

> [A]s perhaps best shown in FIGS. 12A-C, a method of generating revenue from a plurality of long-term care facilities each devoid of an on-location pharmacy generally includes the steps of reducing management overhead costs (block **200**), reducing pharmaceutical delivery costs (block **220**), reducing pharmaceutical error costs and liabilities due to miscommunication and misinterpretation of a pharmaceutical prescription order (block **230**), maintaining automated pharmaceutical storage and dispensing cart operational status (block **240**), streamlining long-term care facility medication dispensing procedures (block **250**), and preventing prescription backlogs (block **260**).

Ex. A, U.S. Pat. 7,698,019, at Figs. 12A-C, 18:8-19, Claim 1; Ex. B, U.S. Pat. 8,204,761, at

Claim 1. Similarly, the phrase "a method of generating revenue" is defined by the respective

claims and are further well-described in the specification:

> Advantageously, embodiments of the present invention also include methods of increasing or generating revenue from a plurality of long-term care facilities **12** being devoid of an on-location pharmacy. For example, as perhaps best shown in FIG. 11, a method includes the steps of providing a pharmacy remote from a plurality of long-term care facilities (block **161**) to define a long-term care facility remote pharmacy **41**, positioning at least one pharmaceutical storage and dispensing apparatus **30** in each of the plurality of long-term care facilities **12** (block **163**) to store and dispense pharmaceuticals to a patient living therein, each apparatus **30** preferably having at least one removable medicine cartridge.

Ex. A, U.S. Pat. 7,698,019, at Fig. 11, 17:37-18:7; Ex. C, U.S. Pat. 8,209,193, at Claim 13.

Further, "a method of restructuring long-term care facility staff procedures for

communication between one or more long-term care facility staff members" is readily

understood in the context of the full preamble and as defined by the respective asserted claims:

> A method of restructuring long-term care facility staff procedures for communication between one or more long term care facility staff members, each located at one of a plurality of long-term care facilities, and a long-term care facility remote pharmacy positioned remote from the plurality of long-term care facilities.

Ex. E, U.S. Pat. 8,489,425, at Claim 1, Ex. F, U.S. Pat. 8,554,574, at Claim 1.

Moreover, the specification provides an ample description of the phrase:

> Restructuring communication methods and intervals, for example, can include installing (block **101**) facsimile, scanning, or other document processing equipment **14** (FIG. 3) to scan physician prescription orders and to transmit them to the remote pharmacy group server **40** or the pharmacy group management server **15** via a virtual private network ("VPN") **18** (see FIG. 7). Medication errors can be reduced when the pharmacy staff at the remote pharmacy view exact images of orders (see also FIGS. 8A-8B). Voice communication over telephone lines can be error prone due to language barriers and transcription errors. Direct imaging allows the pharmacist to interpret the medication orders in the same way as the facility staff. Should an error be made, then one of the healthcare professionals is more likely to discover the error if direct imaging is in place. For example, allowing the pharmacist to read a copy of the original document insures

29

that at least two healthcare professionals have reviewed the order, namely the nurse and the pharmacist. These separate order reviews lead to separate documentation by the nurse and the pharmacist. If these two document sources do not match, then the nurse and pharmacist can discuss the order and clarify with the prescriber, if necessary.

Ex. A, U.S. Pat. 7,698,019 at Fig. 6, 14:33-54.

In view of the intrinsic evidence and the claim language itself, Defendants' assertion that the phrase is indefinite should be rejected. *Nautilus*, 134 S. Ct. at 2124.

## IV.    <u>CONCLUSION</u>

Plaintiff respectfully requests that this Court apply the significant intrinsic evidence of the specification common to the Patents-in-Suit, as bolstered by the extrinsic evidence, to provide claim constructions consistent with the facts and the law of the Federal Circuit and this Court.

Date:  September 9, 2016

Respectfully submitted,

By:  */s/ Maria Wyckoff Boyce*

Maria Wyckoff Boyce, Lead Attorney
Texas SBN 22095050
maria.boyce@hoganlovells.com
Jeffrey S. Whittle
Texas SBN 24037813
jeffrey.whittle@hoganlovells.com
Cristina Rodriguez
Texas SBN 00793701
cristina.rodriguez@hoganlovells.com
John A. Yates
Texas SBN 24056569
jay.yates@hoganlovells.com
**HOGAN LOVELLS US LLP**
700 Louisiana Street, Suite 4300
Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

Michael E. Jones
Texas SBN 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 North College, Ste. 500
Tyler, Texas 75702
T (903) 597-8311
F (903) 593-0846

**Counsel for Plaintiff**
**Tech Pharmacy Services, LLC**

\\DE - 818680/000002 - 1275883 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on counsel of record via electronic mail on September 9, 2016.

*/s/ Maria Wyckoff Boyce*
Maria Wyckoff Boyce

\\DE - 818680/000002 - 1275883 v1