# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TECH PHARMACY SERVICES, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-766 |
| | § | Judge Mazzant |
| ALIXA RX LLC and GOLDEN GATE | § | |
| NATIONAL SENIOR CARE LLC d/b/a | § | |
| GOLDEN LIVINGCENTERS | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Tech Pharmacy Services, LLC's Opening Claim Construction Brief (Dkt. #86), Defendants Alixa Rx LLC and Golden Gate National Senior Care LLC d/b/a Golden LivingCenters's Responsive Claim Construction Brief (Dkt. #94), and Plaintiff's Claim Construction Reply Brief (Dkt. #99). Also before the Court are the parties' July 26, 2016 Joint Claim Construction and Prehearing Statement (Dkt. #66) and the parties' October 4, 2016 Joint Claim Construction Chart (Dkt. #101). The Court held a claim construction hearing on October 14, 2016, to determine the proper construction of the disputed claim terms in United States Patent Nos. 7,698,019 ("the '019 Patent"), 8,204,761 ("the '761 Patent"), 8,209,193 ("the '193 Patent"), RE44,127 ("the '127 Patent"), 8,489,425 ("the '425 Patent"), 8,554,574 ("the '574 Patent"), 8,612,256 ("the '256 Patent"), and 8,954,338 ("the '338 Patent").

The Court issues this Claim Construction Memorandum Opinion and Order and hereby incorporates-by-reference the claim construction hearing and transcript as well as the demonstrative slides presented by the parties during the hearing. For the following reasons, the Court provides the constructions set forth below.

## BACKGROUND

Plaintiff brings suit alleging infringement of United States Patents Nos. 7,698,019, 8,204,761, 8,209,193, RE44,127, 8,489,425, 8,554,574, 8,612,256, and 8,954,338 (collectively, the "patents-in-suit"). Plaintiff submits that the patents-in-suit "all share a common specification" (Dkt. #86 at p. 1 n.1). In general, the patents-in-suit relate to dispensing medication.

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention.

*Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000) ("Claims are not correctly construed to cover what was expressly disclaimed."). This presumption does not arise when the patentee acts as his own lexicographer. *Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. For example, "[a]

claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Comput. Grp. Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *See, e.g.*, *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("[A] patent applicant may define a term in prosecuting a patent . . ."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). When a patentee distinguishes a claimed invention over the prior art, he is "indicating what the claims do not cover" and "by implication surrendering such protection." *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g*, 334 F.3d at 1324. However, the prosecution history must show that the patentee "clearly and unambiguously 'disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance.'" *Middleton Inc. v. Minn. Mining and Mfg. Co.* (*3M Co.*), 311 F.3d 1384, 1388 (Fed. Cir. 2002) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). Statements will constitute disclaimer of

scope only if they are "clear and unmistakable statements of disavowal." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). "An ambiguous disavowal will not suffice." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (internal quotation marks and citation omitted).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotation marks and citation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## ANALYSIS

### *Agreed Claim Terms*

The parties have agreed upon the following constructions as set forth in their July 26, 2016 Joint Claim Construction and Prehearing Statement:

| Term | Agreed Construction |
|---|---|
| "long term care facility" / "long term care facilities" / "long-term care facility" / "long term care facilities"<br><br>'019 Patent, Claims 1–12, 14, 16–19<br>'761 Patent, Claims 1–12, 14, 16–19<br>'193 Patent, Claims 1–10, 12–13<br>'127 Patent, Claims 1–2, 4, 6, 8, 13, 15, 22, 23, 27<br>'425 Patent, Claims 1–3<br>'574 Patent, Claim 1<br>'256 Patent, Claims 1, 4<br>'338 Patent, Claims 1, 4 | "nursing homes, retirement homes, Alzheimer's living facilities, senior communities, assisted living facilities or other types of long-term stay facilities" |
| "a plurality of video input devices each separately positioned adjacent a respective one of the plurality of pharmaceutical storage and electronic dispensing carts"<br><br>'019 Patent, Claim 2<br>'761 Patent, Claim 2 | Plain and ordinary meaning |
| "establishes regular delivery routes for the at least one vehicle to thereby result in efficient use of the at least one vehicle"<br><br>'019 Patent, Claims 3, 8<br>'761 Patent, Claims 3, 8<br>'193 Patent, Claims 2, 6 | Plain and ordinary meaning |

(Dkt. #66 at p. 2).

*Disputed Claim Terms*

**A. "pharmaceutical storage and electronic dispensing cart(s)" / "dispensing cart(s)" / "the cart"/ "pharmaceutical dispensing and storing apparatus" / "pharmaceutical storage and dispensing apparatus" / "pharmaceutical storage and electronic dispensing apparatuses"/ "pharmaceutical storage and electronic dispensing machines"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "machines that package and dispense stored pharmaceuticals in response to electronically received instructions" | "a machine developed to store and dispense medication without human interaction based upon remote commands received" |

(Dkt. #66, Exhibit A at pp. 1–3; Dkt. #66, Exhibit B at pp. 2–3). The parties submit that these terms appear in Claims 1–12, 15–17, and 20 of the '019 Patent, Claims 1–12, 15–17, and 20 of the '761 Patent, Claims 1–9 and 11–13 of the '193 Patent, Claims 1–3, 8, 10, 12, 15, 17, 22, 24, and 27 of the '127 Patent, Claims 1–3 of the '425 Patent, Claim 1 of the '574 Patent, Claims 1 and 4 of the '256 Patent, and Claim 1 of the '338 Patent (Dkt. #66, Exhibit A at pp. 1–3; Dkt. #66, Exhibit B at pp. 2–3).

### 1. The Parties' Positions

Plaintiff argues its proposal is consistent with the context provided by surrounding claim language because "each of the asserted, independent claims expressly recite that the machines 'package' pharmaceuticals" (Dkt. #86 at p. 8). Plaintiff also argues that Defendants' proposal is inconsistent with disclosure that the machine's dispensing operation is "based in part upon prior human interaction" (Dkt. #86 at p. 9 (citing '019 Patent at 17:12–28)).

Defendants contend their "construction is proper because it comports with what the applicants described as an important advance that allegedly distinguished their claimed inventive system over what was already known in the art" (Dkt. #94 at p. 7). Defendants urge that Plaintiff intends to "encompass carts that dispense medication in response to manual, human intervention, such as a nurse or other staff member pressing a button on the cart to initiate the process, then Plaintiff is seeking to cover the very activity specifically disclaimed during prosecution, and its construction is therefore improper" (Dkt. #94 at p. 8).

Plaintiff replies that "Defendants cannot point to any statement by Plaintiff providing a clear disclaimer for the machine packaging medications on-demand" (Dkt. #99 at p. 3 (citation omitted)).

**2. Analysis**

Defendants' reliance upon prosecution history regarding "preselected dispensing time periods" is unavailing. This prosecution history contrasts using preselected dispensing time periods with using specific dispensing times. *See* Dkt. #94, Exhibit 12 at DEFS-00006097. No relevant definitive statements are apparent. *See Omega Eng'g*, 334 F.3d at 1324 (emphasis added) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive statements* made during prosecution.").

The specification discloses "automatic" medication packaging and dispensing:

> [O]nce preselected block times are established, the pharmaceutical storage and electronic dispensing machines or carts **30** can *automatically, i.e. responsive to predetermined commands in memory*, package all scheduled medications and perform a regularly scheduled catch-up run to process new or changed medication orders.

'019 Patent at 8:58–67 (emphasis added); *see id.* at 8:33–38 (offering an example of "automated patient-specific dispensing"); *see also id.* at 16:24–30 & Fig. 6 (step 115). Defendants' proposal of "without human interaction" might be interpreted as precluding the type of programming activity disclosed in these portions of the specification. Further, the automation limitation proposed by Defendants is addressed by other claim language where applicable and should not be imported into the "dispensing cart" terms. *See, e.g.*, '019 Patent at 21:5–60 (Claim 1).

Finally, at the claim construction hearing, Plaintiff explained that its proposal of the phrase "in response to electronically received instructions" means that a computer program sends

the instructions.  Defendants responded that there may not, in fact, be a substantive dispute because Defendants are arguing that dispensing is initiated automatically rather than manually.

The Court therefore construes **"pharmaceutical storage and electronic dispensing cart(s)" / "dispensing cart(s)" / "the cart"/ "pharmaceutical dispensing and storing apparatus" / "pharmaceutical storage and dispensing apparatus" / "pharmaceutical storage and electronic dispensing apparatuses"/ "pharmaceutical storage and electronic dispensing machines"** to mean **"machines that package and dispense stored pharmaceuticals in response to electronically received instructions."**

## B. "positioned remote therefrom" / "remote from" / "remotely positioned"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "distant" or "at a distance" | "positioned in a separate facility" |

(Dkt. #66, Exhibit A at p. 4; Dkt. #66, Exhibit B at p. 4).  The parties submit that these terms appear in Claims 1, 2, 7, 12, 16, and 17 of the '019 Patent, Claims 1, 2, 7, 12, 16, and 17 of the '761 Patent, Claims 1 and 4 of the '256 Patent, Claims 1 and 4 of the '574 Patent, Claim 1 of the '127 Patent, Claim 1 of the '425 Patent, and Claims 1, 5, 9, 12, and 13 of the '193 Patent (Dkt. #66, Exhibit A at p. 4; Dkt. #66, Exhibit B at p. 4).

### 1. The Parties' Positions

Plaintiff argues that the plain meanings of these disputed terms are readily apparent and submits a dictionary definition in support of its alternative proposal (Dkt. #86 at p. 10).  Plaintiff urges that whereas in some instances "the claims use 'remote' to delineate distance from a facility," in other instances "the claims use 'remote' . . . to delineate distance from a computer" (Dkt. #86 at p. 10).  Plaintiff concludes that Defendants' proposed "separate facility" requirement "is inconsistent with the claim language and specification" (Dkt. #86 at p. 10).

Defendants respond that "[t]hroughout the intrinsic record, the applicants uniformly used the term 'remote from' (or similar phrases) to refer to items located in physically separate facilities, in contrast to items co-located within the same facility, which the applicants referred to using terms such as 'in-office,' 'on-site,' or 'on-location'" (Dkt. #94 at p. 9). Further, Defendants argue, "Adopting Plaintiff's construction renders the term 'remote from' indefinite, because there would be no degree of certainty in the claim language." (Dkt. #94 at p. 12).

Plaintiff replies that although the term "remote" sometimes refers to embodiments in which elements are located in separate facilities, Defendants have not demonstrated that "remote" always means "in a separate facility" (Dkt. #99 at pp. 3–4).

### 2. Analysis

In several instances, the specification uses the term "remote" to refer to physically separate facilities. *See* '019 Patent at 8:18–20 ("[E]ach positioned in a separate long-term care facility **12** remote from the long-term care facility pharmacy group management server **15** . . . ."); *id.* at 9:31–33 ("The remote pharmacy group server **40** is preferably located in a remote pharmaceutical dispensing and storage facility defining a remote pharmacy **41**."); *id.* at 14:6–9 ("The remote pharmacy group computers **40′** are preferably located in a remote pharmaceutical dispensing and storage facility at a location remote from both the long-term care facility 12′ and the pharmacy group management server **15′**."). Indeed, these disclosures contrast with disclosure of an "on-location" pharmacy. *Id.* at 18:8–10 ("[A] plurality of long-term care facilities each devoid of an on-location pharmacy . . . .").

The prosecution history is likewise consistent with this distinction, which contrasts "remote" with "on-site." As to Claim 1 of the '019 Patent, the patentee argued:

> [T]he central site computer and the mobile charting computer are located *on site* at the long-term care facility, and the supplier computer is located at the source of

medication, that is, the pharmaceutical storage facility or warehouse. In contrast, a long-term care facility pharmacy group management server of the embodiments of the present claimed invention is *remote* from the long-term care facilities and also *remote* from the remote pharmacy server, as disclosed in Claim 1 and as illustrated in Figures 1, 1A, and 1B.

(Dkt. #94, Exhibit 13 at DEFS-00006184–85 (emphasis added)). Likewise, as to application claim 54 (which Defendants submit issued as Claim 17 of the '019 Patent), the patentee argued the

Williamson [reference] does not disclose, suggest, or teach the steps of *remotely* programming at least one medication type and amount to be dispensed into each pharmaceutical storage and dispensing apparatus and *remotely* programming a medication dispensing time into each pharmaceutical storage and dispensing apparatus in the sense. With respect to location as disclosed by Williamson, the central site computer and the mobile charting computer are located on site at the long-term care facilities . . . . Hence, neither the central site computer nor the mobile charting computer are *remote*.

(Dkt. #94, Exhibit 13 at DEFS-00006188–89 (emphasis in original)).

The requirement of spatial separation is not merely a feature of particular embodiments but a way in which the patentee has used the term "remote." *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144–45 (Fed. Cir. 2005) (construing the term "board" to mean "wood cut from a log" in light of the patentee's consistent usage of the term and noting the patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history"); *see also EON Corp. IP Holdings LLC v. Silver Springs Networks, Inc.*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (quoting *Nystrom*).

Indeed, Plaintiff's own cited dictionary defines "remote" as meaning "located far away; distant in space" (Dkt. #86 at p. 10 (citing Dkt. #86, Exhibit J at TP-GLC0037429)).

As to the required degree of separation, this is implementation specific and is a factual question regarding infringement rather than a legal question for claim construction. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) (citing *PPG Indus. v. Guardian Indus.*

*Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.")); *see also EON*, 815 F.3d at 1318–19 (citing *PPG Indus.*).

At the claim construction hearing, Defendants presented an alternative proposal for construing "remote" to mean "off-site." This proposal is clearer than Defendants' original proposal and better comports with the distinction between on-site and off-site that is apparent in the above-discussed intrinsic evidence.

The Court therefore construes **"positioned remote therefrom," "remote from,"** and **"remotely positioned"** to mean **"positioned off-site."**

### C. "on-location pharmacy"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a pharmacy located at the long term care facility" |

(Dkt. #66, Exhibit A at p. 10; Dkt. #66, Exhibit B at p. 11). The parties submit that this term appears in Claim 17 of the '019 Patent, Claim 17 of the '761 Patent, and Claim 13 of the '193 Patent (Dkt. #66, Exhibit A at p. 10; Dkt. #66, Exhibit B at p. 11).

"Defendants agree to stipulate that [this term] should be construed to have the plain and ordinary meaning." (Dkt. #94 at p. 6).

The Court hereby construes **"on-location pharmacy"** to have its **plain meaning**.

**D. "(to be) in communication with" / "communication(s) network"**

| **"(to be) in communication with"**<br>Found in '019 Patent, Claims 1, 2, 7, 12; '761 Patent, Claims 1, 2, 7, 12; '193 Patent, Claims 1, 5, 9; '256 Patent, Claims 1, 3, 4, 6; '574 Patent, Claims 1, 3, 4; '338 Patent, Claims 1, 3; '425 Patent, Claim 1 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "connected to and able to communicate via a communication network" |

| **"communication network"**<br>Found in '019 Patent, Claim 1; '761 Patent, Claim 1; '193 Patent, Claim 1; '256 Patent, Claims 1, 4; '574 Patent, Claims 1, 3, 4; '338 Patent, Claims 1, 2, 3; '425 Patent, Claims 1, 2 | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "a Wide Area Network (WAN), such as the internet" |

(Dkt. #66, Exhibit A at pp. 9–10; Dkt. #66, Exhibit B at p. 10).

**1. The Parties' Positions**

Plaintiff argues that there is no support in the intrinsic record for Defendants' proposed "Wide Area Network" limitation, and "the specification suggests that the communications network may include telephone lines, *e.g.*, to communicate with a fax machine, and dial-up modems, etc" (Dkt. #86 at p. 12 (citing '019 Patent at 14:33–45)).  Plaintiff also argues that "Defendants substitute a plethora of additional narrowing limitations in place of the simple terms 'in' and 'with'" (Dkt. #86 at p. 13).

Defendants respond, "The claimed invention covers communications via the Internet or other WAN, either through dial-up or high speed access and with or without using a VPN. No other communications mediums are described or even suggested."  (Dkt. #94 at p. 14).

Plaintiff replies by reiterating its opening arguments (Dkt. #99 at p. 5).

## 2. Analysis

The specification discloses, for example, that "remote pharmacy personnel, through the long-term care facility pharmacy group management server **15** or a remote pharmacy group server **40** can dial-up or otherwise remotely access the dispensing cart **30** through the communication network **18**." '019 Patent at 15:30–34; *see id.* at 14:33–45 ("[V]ia a virtual private network ('VPN') . . . ."); *see also id.* at Figs. 1A & 1B (mentioning a "Communication Network (Virtual Private Network)"). Also, during prosecution the patentee submitted a declaration stating that the named inventors "conceived of using a virtual private network ('VPN') over the Internet . . . , but our communication network initially used dial-up modems to communicate" (Dkt. #94, Exhibit 9 at ¶ 22 (DEFS-00005625)).

Defendants are not proposing any "VPN" limitation, but Defendants have submitted a definition of "Virtual Private Network" as meaning: "a network that is connected by using public wires to connect nodes. For example, there are a number of systems that enable you to create networks using the Internet as the medium for transporting data." (Dkt. #94, Exhibit 18 at p. 60).

Nonetheless, Defendants have not adequately justified limiting "communications network" to a "Wide Area Network," which Defendants have submitted is defined as "[a] computer network that spans a relatively large geographical area" (Dkt. #94, Exhibit 18, *Random House Webster's Computer & Internet Dictionary* 607 (3d ed. 1999)). To whatever extent remoteness or a large geographical area is required, such limitations are set forth by other claim language. The disputed terms here at issue merely require communication.

The Court rejects Defendants' proposed constructions and finds no further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the

patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (determining "the district court did not err by declining to construe" a claim term").

The Court hereby construes **"(to be) in communication with"** and **"communication(s) network"** to have their **plain meaning**.

E. **"memory" / "non-transitory memory" / "computer readable medium" / "non-transitory computer readable medium" / "non-transitory, tangible memory" / "non-transitory computer readable storage media having tangibly embodied thereon"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "physical memory located on a computer or server" |

(Dkt. #66, Exhibit A at p. 10; Dkt. #66, Exhibit B at p. 11).  The parties submit that these terms appear in Claims 1, 7, 12, 13, 14, 15, 16, and 17 of the '019 Patent, Claims 1, 7, 12, 13, 14, 15, 16, and 17 of the '761 Patent, Claims 1, 5, 9, 10, 11, 12, and 13 of the '193 Patent, Claims 1 and 4 of the '256 Patent, Claims 1 and 4 of the '574 Patent, Claim 1 of the '338 Patent, Claim 1 of the '425 Patent, and Claims 15-25 and 27-28 of the '127 Patent (Dkt. #66, Exhibit A at p. 10; Dkt. #66, Exhibit B at p. 11).

"Defendants agree to stipulate that [these terms] should be construed to have [their] plain and ordinary meaning" (Dkt. #94 at p. 6).

The Court therefore construes **"memory," "non-transitory memory," "computer readable medium," "non-transitory computer readable medium," "non-transitory, tangible memory," "non-transitory computer readable storage media having tangibly embodied thereon"** to have their **plain meaning**.

### F. "long-term care facility pharmacy group management server"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning; in the alternative, "one or more data processing and management computer(s) having a memory to store data and computer programs for pharmacy management" | "a computer remote from both the pharmacy and long-term care facility, which stores server data" |

(Dkt. #66, Exhibit A at p. 11; Dkt. #66, Exhibit B at pp. 11–12). The parties submit that this term appears in Claims 1–3, 7, and 8 of the '019 Patent, Claims 1–3, 7, and 8 of the '761 Patent, and Claims 1, 2, 5, and 6 of the '193 Patent (Dkt. #66, Exhibit A at p. 11; Dkt. #66, Exhibit B at pp. 11-12).

"Defendants agree to stipulate that [this term] should be construed to have [its] plain and ordinary meaning" (Dkt. #94 at p. 6).

The Court therefore construes **"long-term care facility pharmacy group management server"** to have its **plain meaning**.

### G. "preselected dispensing time periods" / "next preselected time periods" / "preselected time intervals for dispensing"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning; in the alternative, "preselected" means "selected beforehand" and "time periods" means "time blocks" | "time periods/the next time period for dispensing of the pharmaceuticals that are preselected by the software located on the remote server [or alternatively, that are "remotely programmed into the dispensing carts"—see discussion below], not on demand"[1] |

---

[1] Defendants previously proposed: "time periods for dispensing of the pharmaceuticals that are preselected by the software located on the remote server" / "the next time period for dispensing of the pharmaceuticals that is preselected by the software located on the remote server" (Dkt. #66, Exhibit B at pp. 4–5).

(Dkt. #66, Exhibit A at p. 5; Dkt. #94 at p. 14). The parties submit that these terms appear in Claims 1, 4, 7, 9, 12, and 17 of the '019 Patent, Claims 1, 4, 7, 9, 12, and 17 of the '761 Patent, Claims 1, 2, 8, 12, 15, 16, and 22 of the '127 Patent, and Claims 7 and 9 of the '193 Patent (Dkt. #66, Exhibit A at p. 5; Dkt. #66, Exhibit B at pp. 4–5).

### 1. The Parties' Positions

Plaintiff argues that Defendants' proposal is not supported by any disavowal and submits that its alternative proposals are supported by the specification (Dkt. #86 at p. 16 (citing '019 Patent at 16:14–18, 24–26)). Further, Plaintiff submits that "in Defendants' proposed construction, none of the original claim terms—preselected, dispensing, or time periods—are construed. Defendants simply rearrange the terms." (Dkt. #86 at p. 17).

Defendants respond, "These claim phrases each embrace the underlying concept of the alleged invention—that is, the use of programmed times when a particular run of medications is to be packaged and *actually dispensed*, allowing a nurse to simply walk to the dispensing cart, pick up the medication tote/bin, and then proceed to administer the medications to patients." (Dkt. #94 at p. 15). Defendants reiterate that "the claimed system requires that specified dispensing times be selected in advance, and that the carts automatically dispense medication at . . . those preselected times (as opposed to dispensing that is done on demand)" (Dkt. #94 at p. 16).

Plaintiff replies by reiterating its opening arguments (Dkt. #99 at pp. 6–7).

### 2. Analysis

Claim 1 of the '019 Patent, for example, recites in relevant part:

[L]ong-term care facility pharmacy management software stored in the first memory of the long-term care facility pharmacy group management server to manage pharmaceutical operations in a plurality of long-term care facilities, to process distribution of pharmaceuticals stored in the dispensing carts during

*preselected dispensing time periods*, and to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions so that each respective dispensing cart includes new approved prescriptions prior to the *next preselected time periods . . . .*

'019 Patent at 21:14–24 (emphasis added). The parties do not present any substantive dispute as to the constituent terms "periods" and "intervals," so no construction is required for those terms.

As to "preselected," Defendants urge that the selection must be done remotely or must be performed by software. In particular, Defendants argue that the selection cannot be performed by an on-site user at the time of dispensing, which Defendants refer to as "on demand."

The specification discloses that "[o]nce time blocks are established, these time blocks are programmed (blocks **113** and **115**) into the pharmaceutical storage and dispensing machines or carts **30**." '019 Patent at 16:24–26; *see id.* at 6:22–25 ("[A] medication dispensing time is then remotely programmed into each pharmaceutical storage and dispensing apparatus . . . ."). Further,

> once preselected block times are established, the pharmaceutical storage and electronic dispensing machines or carts **30** can automatically, i.e. responsive to predetermined commands in memory, package all scheduled medications and perform a regularly scheduled catch-up run to process new or changed medication orders.

*Id.* at 8:62–67.

Although Defendants argue that the patentee distinguished between "time blocks" and "on demand" in the prosecution history, a better reading of the inventor declaration cited by Defendants is that the named inventors used time blocks to avoid the problem of an excessive number of medication packages being dispensed if "prescriptions were entered with varying administration times" (Dkt. #94, Exhibit 16 at ¶ 31); *see id.* ("The result was that the Envoy machine created two entries – one at 9:00 and one at 9:30 – and created two envelopes to be

administered to the same patient.  Indeed, some patients received four envelopes for their 'morning' medication.").

To whatever extent Defendants are arguing that the claim scope excludes any device that has "on demand" capabilities (even if all recited limitations are satisfied), Defendants have not adequately justified imposing a negative limitation in this regard.  Defendants acknowledged this at the claim construction hearing, noting that its proposal of "on demand" does not mean that the addition of such a capability would necessarily preclude infringement.  Also of note, the specification discloses an embodiment in which "[t]he PyxisEnvoy is capable of packaging medications in individual patient-specific envelopes, both on-demand or at a predetermined time interval."  '019 Patent at 8:38–41.

The Court expressly rejects Defendants' proposed construction.  In particular, Plaintiff has persuasively argued, at least as to the "preselected" terms here in dispute, that what is "preselected" is the time period, not the dispensing.  No further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Summit 6*, 802 F.3d at 1291.

Accordingly, the Court construes **"preselected dispensing time periods," "next preselected time periods,"** and **"preselected time intervals for dispensing"** to have their **plain meaning**.

**H. "to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions" / "performing a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | This is a term of art, which should be given its plain and ordinary meaning of "to examine an individual patient's drug usage at a long term care facility to determine physician prescribing habits and patient usage patterns to manage costs and improve patient safety in response to an added prescription for the individual patient" |

(Dkt. #66, Exhibit A at p. 5; Dkt. #66, Exhibit B at pp. 5–6).  The parties submit that these terms appear in Claims 1, 7, and 12 of the '019 Patent, Claims 1, 7, and 12 of the '761 Patent, and Claims 1, 5, and 9 of the '193 Patent (Dkt. #66, Exhibit A at p. 5; Dkt. #66, Exhibit B at pp. 5–6).

## 1.  The Parties' Positions

Plaintiff argues that "at the time of the invention, one of ordinary skill in the art readily understood what a pharmaceutical utilization review is and what steps are required for such review" (Dkt. #86 at p. 17).  Plaintiff also argues that "Defendants' proposed construction is incorrect because it improperly limits the claims to a particular embodiment—one that is based solely on extrinsic evidence" (Dkt. #86 at p. 18).

Defendants respond that they "base their construction on a contemporaneous technical dictionary that reflects the plain meaning of the term to persons of ordinary skill in the art at the time" (Dkt. #94 at p. 17 (citing Dkt. #94, Exhibit 10 at pp. 112–13 (DEFS-00011675–76))).  Defendants argue that this extrinsic evidence is consistent with the specification and urge that construction is necessary because "it is a technical term of art that would likely be unfamiliar to lay jurors" (Dkt. #94 at pp. 17–18).

## 2. Analysis

Figure 8C of the '019 Patent illustrates utilization review including "dose check," "drug allergy," "therapy," and "drug interaction." '019 Patent at Fig. 8C (indicating elements 396, 397, 398, 399); *see also id.* at 13:35–46 (describing utilization review). Defendants submit an extrinsic definition of "drug utilization review (DUR)":

> The process of examining drug usage to determine physician prescribing habits and patient usage patterns to manage costs and improve patient safety. DUR may be done before a prescription is written (prospective DUR), at the time a prescription is dispensed (concurrent DUR), or later (retrospective DUR). DUR programs look for duplications of therapy, potential drug interactions, and for optimal drug usage for specific disease states. DUR programs may provide physicians with reports comparing their prescribing practices with those of other physicians who treat the same conditions.

(Dkt. #94, Exhibit 10 at pp. 112–13 (DEFS-00011675–76)).

Accordingly, "some construction of the disputed claim language will assist the jury to understand the claims." *TQP Dev., LLC v. Merrill Lynch & Co.*, No. 2:08-CV-471, 2012 WL 1940849, at *2 (E.D. Tex. May 29, 2012). In proposing that the disputed terms be given their plain meaning, Plaintiff has relied upon the term "utilization review" having a well-known meaning in the art (Dkt. #86 at p. 17). However, Plaintiff has not submitted any evidence, intrinsic or extrinsic, that contradicts the extrinsic technical definition submitted by Defendants.

The Court therefore construes **"to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions"** and **"performing a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions"** to mean **"to examine an individual patient's drug usage at a long term care facility to determine physician prescribing habits and patient usage patterns to manage costs and improve patient safety in response to an added prescription for the individual patient."**

## I. "a plurality of disposable individual patient dosing packages" / "one or more disposable patient dosing packages" / "one or more disposable individual patient dosing package"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a plurality of patient specific medication envelopes sorted in a preselected order" |

(Dkt. #66, Exhibit A at p. 6; Dkt. #66, Exhibit B at p. 6). The parties submit that these terms appear in Claims 1, 7, 12, and 17 of the '019 Patent, Claim 1 of the '338 Patent, Claims 1, 7, 12, and 17 of the '761 Patent, Claims 1 and 4 of the '256 Patent, Claims 1 and 4 of the '574 Patent, Claims 1, 2, 8, 12, 15, and 22 of the '127 Patent, Claims 1 and 2 of the '425 Patent, and Claims 1, 5, 9, and 13 of the '193 Patent (Dkt. #66, Exhibit A at p. 6; Dkt. #66, Exhibit B at p. 6).

At the claim construction hearing, Defendants agreed to Plaintiff's proposal of plain meaning.

The Court therefore construes **"a plurality of disposable individual patient dosing packages," "one or more disposable patient dosing packages"** and **"one or more disposable individual patient dosing package"** to have their **plain meaning**.

## J. "a separate and removable container associated with the cart" / "a separate and removable container associated with the pharmaceutical storage and dispensing apparatus" / "a container separable from the cart" / "a container"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "container" means "holder" | "a device, into which the dosing packages are placed, attached to the dispensing [cart / apparatus] and capable of being removed from the dispensing [cart / apparatus]" |

(Dkt. #66, Exhibit A at p. 6; Dkt. #66, Exhibit B at pp. 6–7).  The parties submit that these terms appear in Claims 1, 7, 12, and 17 of the '019 Patent and Claims 2, 12, and 16 of the '127 Patent (Dkt. #66, Exhibit A at p. 6; Dkt. #66, Exhibit B at pp. 6–7).

### 1.  The Parties' Positions

Plaintiff argues, "Defendants improperly attempt to restrict 'container' to require 'a device[] into which the dosing packages are placed' by importing features of an embodiment described in the specification."  (Dkt. #86 at p. 20 (citing '019 Patent at 8:33–46, 16:24–33)).

Defendants respond that the dispute is "whether a 'removable' container 'associated with' the cart can be any generic container, as Plaintiff proposes, or is a container that, by design, is actually an accompanying component part of the cart (albeit one that can be removed from the cart), as Defendants propose and as is uniformly taught throughout the specification" (Dkt. #94 at p. 20).

Plaintiff replies that "Defendants can point to no embodiments in which the container is actually 'attached' or 'connected' to the machine" (Dkt. #99 at p. 7).

### 2.  Analysis

The specification discloses:

> Once time blocks are established, these time blocks are programmed (blocks **113** and **115**) into the pharmaceutical storage and dispensing machines or carts **30** so that pharmaceuticals or medications (FIG. **4**B) are packaged by physical location within the long-term care facility 12 and by time block and *loaded into caddies or trays 35* (FIG. **4**A) associated with the dispensing carts **30**.

'019 Patent at 16:24–30 (emphasis added).

As a threshold matter, Plaintiff does not dispute that medication is loaded into the recited containers.  Thus, in that regard, no construction is necessary.

23

Next, although the specification refers to medication being "loaded" into caddies or trays, the specification is silent as to whether the caddies or trays are necessarily "attached" to the dispensing machine. The constituent term "removable" implies that there is some degree of attachment prior to removal. Nonetheless, this implication is counterbalanced by the constituent term "separate," which at least partially implies an absence of attachment. Further, some of the disputed terms expressly recite merely "associated," not necessarily attached.

Accordingly, Defendants have failed to adequately support their proposal of "attached" (regardless of whether also "capable of being removed"). Defendants have cited Figure 4a as illustrating a special-purpose container that attaches to the dispensing machine, but "patent coverage is not necessarily limited to inventions that look like the ones in the figures." *MBO Labs. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007). Likewise, Defendants submit evidence that the Pyxis Envoy dispensing machine uses special-purpose "MedTote carriers," but this is a specific feature of a particular embodiment that should not be imported into the claims. *See Constant*, 848 F.2d at 1571; *see also Phillips*, 415 F.3d at 1323.

The Court rejects Defendants' proposed construction and finds no further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Summit 6*, 802 F.3d at 1291.

The Court therefore construes **"a separate and removable container associated with the cart," "a separate and removable container associated with the pharmaceutical storage and dispensing apparatus," "a container separable from the cart," and "a container"** to have their **plain meaning**.

### K. "automated inventory replenishment of dispensing carts"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; or in the alternative, "computer program to receive medication inventory level and responsively notify of a replenishment requirement for at least one of the machines" | "the process of refilling the inventory of pharmaceuticals within a pharmaceutical storage and dispensing [cart / apparatus / machine] without human labor" |

(Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 7).  The parties submit that this term appears in Claims 6 and 11 of the '019 Patent, Claims 6 and 11 of the '761 Patent, and Claim 3 of the '193 Patent (Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 7).

#### 1. The Parties' Positions

Plaintiff argues that its alternative proposal is "consistent with the specification, which shows that pharmacy personnel are notified of the replenishment requirement" (Dkt. #86 at p. 21 (citing '019 Patent at 11:48–55)).  Plaintiff also argues that Defendants' proposal improperly changes a program to a "process" and imports a definition of "automatic" from extrinsic evidence (Dkt. #86 at p. 21).

Defendants respond that "Plaintiff's alternate construction . . . rewrites the claim in terms far broader than what the words of the claim actually mean" (Dkt. #94 at p. 21).  Also, Defendants argue that Plaintiff's proposal of "at least one of the machines" improperly expands the scope of claims that recite a "plurality" of machines (Dkt. #94 at pp. 21–22).

Plaintiff replies, "Defendants improperly seek to add a disfavored negative limitation— 'without human interaction'—not found in the specification or file history."  (Dkt. #99 at p. 7).

#### 2. Analysis

Defendants submit a general-purpose dictionary definition of "automation" as meaning "automatically controlled operation of an apparatus, process, or system by mechanical or

electronic devices that take the place of human labor" (Dkt. #94, Exhibit 11 at p. 84 (DEFS-00011689)).

As to whether the disputed term refers to actual refilling or to merely notification of a need to refill, the specification discloses:

> An inventory tracker **67** can maintain the medication inventory for each of the pharmaceutical storage and electronic dispensing carts **30**. An inventory replenisher **69** is positioned to receive the medication inventory from the inventory tracker **67**, and responsive to the medication inventory decreasing below a minimum threshold level, to notify pharmacy personnel associated with the remote pharmaceutical dispensing and storage facility **40** of a replenishment requirement for at least one of the pharmaceutical storage and electronic dispensing carts **30**.

'019 Patent at 11:46–55. This disclosure demonstrates that the patentee used the term "replenishment" to encompass notification of a need to replenish.

This finding is also consistent with the context of surrounding claim language. For example, Claim 6 of the '019 Patent (which depends from Claim 5 and, in turn, Claim 1) recites the disputed term as part of software and in the context of various analytical functions:

> **6.** A system as defined in claim 5, wherein the long-term care facility pharmacy management software includes *automated inventory replenishment of the dispensing carts*, dispensing cart dispensing control, claim processing, prescribed drug conflict analysis based on patient medication profile, allergies, and diagnosis, prescribed drug conflict analysis based on prescribed drug interaction, and prescribed drug analysis based on patient insurance coverage.

'019 Patent at 22:42–49 (emphasis added).

The Court therefore hereby construes **"automated inventory replenishment of dispensing carts"** to mean **"software to receive medication inventory level and responsively notify of a replenishment requirement for dispensing carts."**

### L. "establishing an automated therapeutic exchange protocol"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | This is a term of art, which should be given its plain and ordinary meaning of "establishing a process of substituting one chemically different drug for another, the substitution occurring without human labor" |

(Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at pp. 8–9).   The parties submit that this term

appears in Claim 1 of the '425 Patent (Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at pp. 8–

9).

### 1. The Parties' Positions

Plaintiff argues that "the specification is clear that the protocol, rather than the

substitution, is automated" (Dkt. #86 at p. 22).   Plaintiff also argues that Defendants' proposal

improperly imports limitations from an extrinsic dictionary (Dkt. #86 at p. 22).

Defendants respond that "Plaintiff cites no contradictory intrinsic evidence, and

Defendants appropriately rely on both technical and general dictionaries to support their

proposed construction" (Dkt. #94 at p. 22).

Plaintiff replies that Defendants' proposal of "without human interaction" is "not found

either in the specification or file history" (Dkt. #99 at p. 7).   Plaintiff also argues that

"Defendants' extrinsic evidence defines the term 'therapeutic substitution,' rather than the claim

term" (Dkt. #99 at p. 8).

### 2. Analysis

Claim 1 of the '425 Patent recites, in relevant part:

**1.**   A method of restructuring long-term care facility staff procedures for
communication between one or more long-term care facility staff members, each
located at one of a plurality of long-term care facilities, and a long-term care

facility remote pharmacy positioned remote from the plurality of long-term care facilities, the method comprising the steps of:

. . . .

enhancing reduction of wasted medication by *establishing an automated therapeutic exchange protocol* that facilitates management of the medication procurement and resident medication distribution procedures by the one or more long-term care facility staff members and one or more long-term care facility remote pharmacy personnel via the communications network.

'425 Patent at 21:5–11, 21: 58–22:1–2 (emphasis added).

The specification discloses:

[T]he transition team can meet with facility physicians to establish a type of *automated therapeutic exchange protocol* (block **119**). This protocol can be managed by the remote pharmacy management software **20** and allows the long-term care facility and remote pharmacy to manage formulary management programs through the VPN **18** in a real time or near real time manner. The therapeutic exchange protocol streamlines the inventory of each of the plurality of pharmaceutical storage and electronic dispensing carts **30**, reduces wasted medication, and reduces costs for payors.

'425 Patent at 16:42–48 (emphasis added).

Defendants' proposal of "without human labor" could preclude any human involvement whatsoever, so the Court hereby expressly rejects Defendants' proposal of "without human labor." Also, the word "automated" does not require construction because Plaintiff has not presented any substantive disagreement as to "automated" in the disputed claim term.

Defendants also submit a definition of "therapeutic substitution":

The practice of dispensing one chemically different drug for another. Therapeutic substitution requires the prescriber's authorization before the substitution can be made. Managed care organizations frequently initiate therapeutic substitution programs as a cost saving measure.

(Dkt. #94, Exhibit 10 at p. 396 (DEFS-00011678)).

"[S]ome construction of the disputed claim language will assist the jury to understand the claims." *See TQP*, 2012 WL 1940849, at *2. In proposing that "therapeutic exchange" has its plain meaning, Plaintiff has not cited any evidence as to what Plaintiff believes that meaning is.

*See* Dkt. #86 at p. 22.   Plaintiff has not submitted any evidence, intrinsic or extrinsic, that contradicts the extrinsic technical definition submitted by Defendants.   Instead, Plaintiff cites only disclosure in support of its argument that "the specification is clear that the protocol, rather than the substitution, is automated" (Dkt. #86 at p. 22).

Defendants' proposal of requiring "chemically different" drugs would tend to confuse rather than clarify the scope of the claims, and Defendants have not shown that the proposed language is necessary to resolve any relevant dispute between the parties.   *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."). Also of note, Plaintiff persuasively argued at the claim construction hearing that Defendants' proposal might improperly exclude dosing substitutions, for example, substituting three 100mg tablets for one 300mg tablet.

The Court therefore construes **"establishing an automated therapeutic exchange protocol"** to mean **"establishing an automated protocol for substituting one drug for another."**

M.  **"medication dispensing apparatus administrator"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "pharmaceutical storing, packaging and dispensing machine management computer program" | This term cannot be construed because it is indefinite under 35 U.S.C. §112. |

(Dkt. #66, Exhibit A at p. 3; Dkt. #66, Exhibit B at p. 4).   The parties submit that this term appears in Claim 1 of the '425 Patent, Claim 1 of the '574 Patent, Claims 1 and 4 of the '256 Patent, and Claim 1 of the '338 Patent (Dkt. #66, Exhibit A at p. 3; Dkt. #66, Exhibit B at p. 4).

### 1. The Parties' Positions

Plaintiff argues that because its proposal "is consistent with and defined by the language of the claims," Defendants' indefiniteness argument should be rejected (Dkt. #86 at p. 23).

Defendants respond, "There is no dispute that the term 'medication dispensing apparatus administrator' has no commonly understood definition to a person of skill in the art."  (Dkt. #94 at p. 23).  As to Plaintiff's reliance upon the claim itself, Defendants argue, "The claim, however, does not provide any guidance as to what 'pharmaceutical storage and electronic dispensing cart functions' are controlled by the 'medication dispensing apparatus administrator.'  The claim certainly does not state the functions are 'storing, packaging and dispensing,' as Plaintiff[] apparently believes."  (Dkt. #94 at p. 23).

Plaintiff replies that Defendants have not provided any evidence showing that this disputed term could not be readily understood by a person of ordinary skill in the art (Dkt. #99 at p. 8).

### 2. Analysis

The specification discloses:

> A *medication dispensing apparatus administrator* **71**, responsive to an input from pharmacy personnel, can selectively remotely control functions available to facility medical personnel from the terminal of the pharmaceutical storage and electronic dispensing cart **30**, over the communications network, to thereby remotely provide training to the facility medical personnel.

'425 Patent at 11:56–62 (emphasis added).  Figure 10 illustrates the medication dispensing apparatus administrator 71 as part of pharmacy management software 20.  In this context, the recited "medication dispensing apparatus administrator" is readily understandable as software for managing the pharmaceutical storage and electronic dispensing machines, which are disclosed as

machines that store, package, and dispense pharmaceuticals. *See, e.g.*, '425 Patent at 8:25–32. Plaintiff's proposed construction is consistent with this context.

The Court therefore construes **"medication dispensing apparatus administrator"** to mean **"pharmaceutical storing, packaging, and dispensing machine management computer program."**

### N. "near-real time"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; in the alternative, "without significant delay" | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at p 8). The parties submit that this term appears in Claim 1 of the '425 Patent (Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at p. 8).

#### 1. The Parties' Positions

Plaintiff argues that no construction is necessary because "the intrinsic evidence does not attribute a special definition or lexicography that changes the plain and ordinary meaning of the phrase" (Dkt. #86 at p. 24). Alternatively, Plaintiff argues that "without significant delay" is consistent with related prosecution history (Dkt. #86 at p. 24). Plaintiff also cites a dictionary definition as further support (Dkt. #86 at p. 25). Plaintiff concludes that Defendants' indefiniteness argument should be rejected (Dkt. #86 at p. 25).

Defendants respond that "near-real time" is a "subjective term of degree, and "[t]he specification . . . provides no objective criteria for what is or is not 'near-real time'" (Dkt. #94 at p. 24).

Plaintiff replies that Defendants have not provided any evidence showing that this disputed term could not be readily understood by a person of ordinary skill in the art (Dkt. #99 at pp. 8–9).

## 2. Analysis

"A term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one person's opinion." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

Claim 1 of the '425 Patent recites, in relevant part:

> **1.** A method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members, each located at one of a plurality of long-term care facilities, and a long-term care facility remote pharmacy positioned remote from the plurality of long-term care facilities, the method comprising the steps of:
>
> . . . .
>
> verifying, in *near-real time* at the long-term care facility remote pharmacy, the digital images of patient medication prescription orders transmitted to the long-term care facility pharmacy management server via the communications network to thereby reduce drug conflicts;
>
> initiating, by the long-term care facility pharmacy management server via the communications network, *near-real-time*[2] patient medication dispensing at the one pharmaceutical storage and electronic dispensing carts responsive to the *near-real time* verification of the digital images of patient medication prescription orders at the long-term care facility remote pharmacy . . . .

'425 Patent at 21:5–11, 39–50 (emphasis added).

During prosecution of the '425 Patent, a Notice of Allowability referred to the allowed independent claim as: "A method of . . . ii) verifying, in *near-real time / without significant delay*, at the long-term care facility remote pharmacy, digital images of patient medication prescription orders transmitted to a long-term care facility pharmacy management server via a communications network to thereby reduce drug conflict . . . ." (Dkt. #86, Exhibit O at TP-GLC0013933 (emphasis added and omitted)).

The Examiner's apparent understanding of the disputed term can be taken into consideration. *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed.

---

[2] The parties have not attributed any significance to whether the disputed term is hyphenated as "near-real time" or as "near-real-time."

Cir. 1984) (indicating patent examiners are "assumed . . . to be familiar from their work with the level of skill in the art"), *abrogated on other grounds*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011); *see also Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Statements about a claim term made by an Examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed.").  Further, the specification discloses:

> The financial, social, and medical impact of long-term care facility providers communicating in *real-time or near real time* with *near real-time* medication delivery provides significant cost reduction for healthcare payors.
>     . . . .
> The software **20** and methods, thus, allow the remote pharmacy and the long-term care facility **12** to communicate in *real time or near real time* and provide *near real time* medication fulfillment for the long-term care facility residents.
>     . . . .
>     A medication dispensing apparatus imager **73**, responsive to video signals from the video input device **31**, can display a video image of facility medical personnel and functional components of the pharmaceutical storage and electronic dispensing cart **30** over the communications network **18**, to also remotely provide training to the facility medical personnel and for remote, *real-time*, troubleshooting [of] the pharmaceutical storage and electronic dispensing cart **30**.
>     . . . .
>     Additionally, the transition team can meet with facility physicians to establish a type of automated therapeutic exchange protocol (block **119**).  This protocol can be managed by the remote pharmacy management software **20** and allows the long-term care facility and remote pharmacy to manage formulary management programs through the VPN **18** in a *real time or near real time* manner.

'425 Patent at 10:40–43, 11:62–12:3, 16:3–7, 16:42–48 (emphasis added); *see id.* at 15:39–45 (emphasis added) (describing "face-to-face" videoconference "whereby pharmacy personnel can monitor *instantaneously* the actions of the facility medical personnel to provide *real-time* feedback and to verify results of actions taken by the facility medical personnel or functions performed by the dispensing cart **30**").  At the claim construction hearing, Plaintiff emphasized

videoconferencing as providing an easily understandable context for what is "real time" and what is "near" real time.

The concepts of "real time" and "near real time" are sufficiently clear in these contexts. For example, although the specification does not define specific boundaries for "near" real-time, the specification demonstrates the patentee used "near-real time" in relation to dispensing medication faster than was typically achievable using a vehicle to transport medication from a traditional pharmacy to the patient. As to Defendants' concerns regarding how much delay might be permissible, claim construction proceedings "need not always purge every shred of ambiguity." *Acumed*, 483 F.3d at 806 ("The resolution of some line-drawing problems . . . is properly left to the trier of fact.").

The Court therefore expressly rejects Defendants' indefiniteness argument. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Summit 6*, 802 F.3d at 1291.

The Court accordingly construes **"near-real time"** to have its **plain meaning**.

## O. "substantially stationary"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 7). The parties submit that this term appears in Claim 4 of the '019 Patent and Claim 4 of the '761 Patent (Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 7).

### 1. The Parties' Positions

Plaintiff argues that "[n]o construction of this term is needed because, at the time of the invention, one of ordinary skill in the art would understand the machine to be 'largely but not

wholly' stationary" (Dkt. #86 at p. 25). Further, Plaintiff argues, "Defendants' assertion that the phrase is indefinite is inconsistent with the specification and prosecution history." (Dkt. #86 at p. 25).

Defendants respond that "the term 'substantially stationary' never appears in the specification and . . . the discussion in the prosecution history provides no objective guidance as to what is, or is not, within the scope of 'substantially stationary'" (Dkt. #94 at p. 26).

Plaintiff replies that the word "substantially" is commonly used in patent claims and is not indefinite (Dkt. #99 at p. 9).

### 2. Analysis

Claim 4 of the '019 Patent, for example, recites:

> **4.** A system as defined in claim **1**, wherein each of the plurality of pharmaceutical storage and electronic dispensing carts remain *substantially stationary*, wherein the plurality of pharmaceuticals comprises a plurality of different pharmaceuticals, and wherein each of the plurality of pharmaceutical storage and electronic dispensing carts package a plurality of individual doses of pharmaceuticals and dispense the plurality of individual doses of pharmaceuticals during preselected dispensing time periods to authorized healthcare personnel at the plurality of long-term care facilities.

'019 Patent at 22:19–28 (emphasis added).

The term "substantially stationary" can be readily understood in the context of this claim. For example, the word "substantially" accommodates situations in which the carts remain stationary during normal use but also allows them to be moved for installation, maintenance, or removal. *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *see, e.g., Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1377 (Fed. Cir. 2013) (construing "substantially" to mean "largely but not

wholly").[3]  Along these lines, Plaintiff has also noted Figures 2 and 3 of the patents-in-suit, which illustrate a large device that presumably could be moved into a room and then left there to operate.

The Court therefore expressly rejects Defendants' indefiniteness argument.  No further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Summit 6*, 802 F.3d at 1291.

The Court accordingly construes **"substantially stationary"** to have its **plain meaning**.

**P. "to thereby enhance reduction of medication order errors and reduce miscommunication"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at p. 8).  The parties submit that this term appears in Claims 1 and 4 of the '256 Patent and Claims 1 and 4 of the '574 Patent (Dkt. #66, Exhibit A at p. 8; Dkt. #66, Exhibit B at p. 8).

**1.  The Parties' Positions**

Plaintiff argues that the plain meaning of this disputed term is clear in the context of the asserted claims (Dkt. #86 at p. 26).  Plaintiff also argues that "the phase is a 'thereby' clause, which characterizes the result of practicing the claimed method steps," and "no patentable weight is provided by the phrase" (Dkt. #86 at p. 26–27).

---

[3] Although *Aventis* was decided prior to *Nautilus*, Defendants have not demonstrated how *Nautilus* commands a different result here.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (requiring that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty").

Defendants respond that "[n]othing in the intrinsic record provides any objective boundaries for this term" (Dkt. #94 at p. 28).

Plaintiff replies by reiterating that "this phrase is a 'thereby' clause, which is given no weight because it merely states the intended result of a method step or steps" (Dkt. #99 at p. 9).

### 2. Analysis

Claim 1 of the '574 Patent recites, in relevant part (emphasis added):

> **1.** A method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members, each located at a long-term care facility, and a long-term care facility remote pharmacy positioned remote from the long-term care facility, the method comprising the steps of:
>> . . . .
>> verifying, at the long-term care facility remote pharmacy, one or more digital images of one or more patient medication prescription orders received from one or more pharmaceutical prescription document processors adapted to be in communication with one of the at least one pharmaceutical storage and electronic dispensing carts *to thereby enhance reduction of medication order errors and reduce miscommunication* between one or more long-term care facility staff members and the long-term care remote pharmacy . . . .

'574 Patent at 21:8–13, 31–40 (emphasis added).

This "thereby" clause is analogous to a "whereby" clause. On one hand, "when [a] 'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005). At the claim construction hearing, Defendants urged that the term at issue relates to the manner in which the claimed method must be performed.

On the other hand, "[a] 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim." *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) ("The 'whereby/to preclude' clauses of [the] claims [at issue] merely describe the result of arranging the components of the

claims in the manner recited in the claims . . . ."); *accord Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) (citing *Texas Instruments*); *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) (alterations in original) (finding a "whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited").

Hence, the phrase "to thereby enhance reduction of medication order errors and reduce miscommunication" merely sets forth a desired result rather than a limitation. *See Minton*, 336 F.3d at 1381. Because the disputed term at issue is not limiting, the Court hereby rejects Defendants' indefiniteness argument.

Alternatively, even if the disputed term was found to be limiting, Defendants have failed to demonstrate that "enhance" and "reduce" are terms of degree or otherwise subjective. Instead, reduction of medication order errors and reduction of relevant miscommunication are readily ascertainable in the context of the specification, which pertains to handling prescriptions and delivering medication. Thus, Defendants' indefiniteness arguments fail.

The Court accordingly finds that **"to thereby enhance reduction of medication order errors and reduce miscommunication"** is **not limiting** and should be given its **plain meaning**.

### Q. "selectively remote control" / "selectively remotely controlling one or more functions"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 8). The parties submit that these terms appear in Claims 1 and 2 of the '338 Patent, Claims 1, 2, 4, and 5 of the '256 Patent, Claims 1, 2,

and 4 of the '574 Patent, and Claim 1 of the '425 Patent (Dkt. #66, Exhibit A at p. 7; Dkt. #66, Exhibit B at p. 8).

### 1. The Parties' Positions

Plaintiff argues, "No construction of this term is needed because its plain and ordinary meaning is clear to, and understood by, one of ordinary skill in the art to mean both selectively and remotely controlling." (Dkt. #86 at p. 27). Plaintiff also submits that "[t]his understanding is supported by the specification" (Dkt. #86 at p. 27 (citing '019 Patent at 11:56–62)). Finally, Plaintiff cites prosecution history (Dkt. #86 at pp. 27–28).

Defendants respond that "[n]othing in the intrinsic evidence provides sufficient explanation to one of skill in the art of the scope of the terms 'selectively remote control' or 'selectively remotely controlling'" (Dkt. #94 at p. 29).

Plaintiff replies that Defendants have not provided any evidence showing that these disputed terms could not be readily understood by a person of ordinary skill in the art (Dkt. #99 at p. 10).

At the claim construction hearing, Defendants argued that it is unclear whether, for example, "selectively" refers to a temporal limitation or refers to selecting a particular machine from among multiple machines.

### 2. Analysis

The specification discloses:

> A medication dispensing apparatus administrator **71**, responsive to an input from pharmacy personnel, can *selectively remotely control* functions available to facility medical personnel from the terminal of the pharmaceutical storage and electronic dispensing cart **30**, over the communications network, to thereby remotely provide training to the facility medical personnel.

'019 Patent at 11:56–62 (emphasis added).

Defendants have not adequately demonstrated a lack of clarity with regard to the ability to select a function that is controlled remotely. The concept of "remote control" is not itself subjective or otherwise confusing, and addition of the word "selectively" does not introduce any significant uncertainty.

The Court therefore expressly rejects Defendants' indefiniteness argument and finds no further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Summit 6*, 802 F.3d at 1291.

The Court accordingly construes **"selectively remote control"** and **"selectively remotely controlling one or more functions"** to have their **plain meaning**.

**R. "[a] method of increasing sales to and generating revenue from a plurality of long-term care facilities devoid of an on-location pharmacy" / "[a] method of generating revenue"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| These are separate phrases.  Plain and ordinary meaning for each phrase | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 9; Dkt. #66, Exhibit B at p. 9–10). These terms appear in Claim 17 of the '019 Patent, Claim 17 of the '761 Patent, and Claim 13 of the '193 Patent.

"Defendants agree to stipulate that [these terms] should be construed to have [their] plain and ordinary meaning." (Dkt. #94 at p. 6).

The Court therefore construes **"[a] method of increasing sales to and generating revenue from a plurality of long-term care facilities devoid of an on-location pharmacy"** and **"[a] method of generating revenue"** to have their **plain meaning**.

## S. "[a] method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | This term cannot be construed because it is indefinite under 35 U.S.C. § 112. |

(Dkt. #66, Exhibit A at p. 9; Dkt. #66, Exhibit B at p. 9–10). This term appears in Claims 1 and 4 of the '574 Patent and Claim 1 of the '425 Patent.

### 1. The Parties' Positions

Plaintiff argues that this disputed term appears in non-limiting preambles (Dkt. #86 at pp. 28–30).

Defendants respond that this preamble term is limiting because "limitations in the body of [C]laim 1 of the '425 patent, including the limitations 'long-term care facility staff members' and 'plurality of long-term care facilities,' rely upon the preamble for antecedent basis" (Dkt. #94 at p. 29–30). Defendants argue that the disputed term "is indefinite because there is insufficient description in the intrinsic record as to what constitutes a 'restructuring'" (Dkt. #94 at p. 30).

Plaintiff replies by reiterating that this preamble term is not limiting (Dkt. #99 at p. 10). Alternatively, Plaintiff argues that even if a portion of the preamble is found limiting, it does not necessarily follow that the entire preamble is limiting (Dkt. #99 at p. 10). Finally, Plaintiff submits that Defendants have failed to provide any evidence showing that this disputed term could not be readily understood by a person of ordinary skill in the art (Dkt. #99 at p. 10).

### 2. Analysis

Claim 1 of the '425 Patent recites, in relevant part:

**1.** A method of restructuring long-term care facility staff procedures for communication between *one or more long-term care facility staff members*, each located at one of *a plurality of long-term care facilities*, and a long-term care facility remote pharmacy positioned remote from the plurality of long-term care facilities, the method comprising the steps of:

installing one or more pharmaceutical storage and electronic dispensing carts at each of *the plurality of long-term care facilities* operable by the *one or more long-term care facility staff members*, each of the at least one pharmaceutical storage and electronic dispensing carts being positioned remote from, and adapted to be in communication with, a long-term care facility pharmacy management server via a communications network, the long-term care facility pharmacy management server including non-transitory, tangible memory medium to store long-term care facility management computer programs including a patient prescription receiver to receive a digital image of a patient medication prescription order, a medication dispensing apparatus administrator to selectively remote control one or more pharmaceutical storage and electronic dispensing cart functions, and a drug conflict analyzer to determine whether drug conflict exists . . . .

'425 Patent at 21:5–29 (emphasis added).

On one hand, the phrases "one or more long-term care facility staff members" and "a plurality of long-term care facilities" provide antecedent basis for limitations recited in the body of the above-quoted claim. *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[W]hen the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one patent protects."); *see also Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.").

On the other hand, even where a preamble provides antecedent basis for a limitation recited in the body of the claim, an accompanying statement of purpose or use is not necessarily limiting. *See TomTom Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) ("That [a] phrase in the preamble . . . provides a necessary structure for [the] claim . . . does not necessarily convert

the entire preamble into a limitation, particularly one that only states the intended use of the invention."); *see also Marrin v. Griffin*, 599 F.3d 1290, 1294–95 (Fed. Cir. 2010) ("[T]he mere fact that a structural term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim.").

"Restructuring" is merely a statement of purpose. In particular, that statement of purpose does not set forth any additional limitations as to the "one or more long-term care facility staff members" and "a plurality of long-term care facilities" that provide antecedent basis. *See Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) (emphasis added) ("The phrase 'the image data' clearly derives antecedent basis from the 'image data' that is *defined in greater detail in the preamble* as being 'representative of at least one sequential set of images of a spray plume.'").

Because the disputed term at issue is not limiting, the Court hereby rejects Defendants' indefiniteness argument.

Alternatively, even if the disputed term was found to be limiting, Defendants have failed to demonstrate that "restructuring" is subjective or otherwise lacks clarity. Instead, the presence or absence of restructuring appears to be readily ascertainable in the context of the specification and the claim language. Thus, Defendants' indefiniteness arguments fail.

The Court accordingly finds that **"[a] method of restructuring long-term care facility staff procedures for communication between one or more long-term care facility staff members"** is **not limiting** and it should have its **plain meaning**.

## CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered

to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**IT IS SO ORDERED**.

**SIGNED this 28th day of October, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE