# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TECH PHARMACY SERVICES, LLC § <br> § <br> v. § <br> § <br> ALIXA RX LLC, GOLDEN GATE § <br> NATIONAL SENIOR CARE LLC d/b/a § <br> GOLDEN LIVINGCENTERS, FILLMORE § <br> CAPITAL PARTNERS LLC, FILLMORE § <br> STRATEGIC MANAGEMENT LLC, and § <br> FILLMORE STRATEGIC INVESTORS § <br> LLC § | Civil Action No. 4:15-CV-00766 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Amended Motion for Partial Summary Judgment That the Patents in Suit are Invalid Under 35 U.S.C. § 101 (Dkt. #197). After reviewing the relevant pleadings, the Court denies Defendants' motion.

## BACKGROUND

Tech Pharmacy Services, LLC ("Tech Pharmacy") asserts Defendants infringed twelve claims from five patents that share a common specification. Specifically, Tech Pharmacy asserts Claims 7, 9, and 10 from U.S. Patent No. 7,698,019 (the "'019 Patent"); Claims 5, 7, and 8 from U.S. Patent No. 8,209,193; Claims 1, 2, and 6 from U.S. Reissue Patent No. RE44,127; Claims 1 and 4 from U.S. Patent No. 8,612,256; and Claim 1 from U.S. Patent No. 8,954,338 (collectively, the "patents-in-suit"). The patents-in-suit articulate a system and method for enhanced distribution of pharmaceuticals in long-term care facilities.

On March 20, 2017, Defendants filed the present motion for summary judgment (Dkt. #197). On April 3, 2017, Tech Pharmacy filed a response (Dkt. #225). On April 7, 2017,

Defendants filed a reply (Dkt. #235). On April 12, 2017, Tech Pharmacy filed a sur-reply (Dkt. #240).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers*

2

*v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants move for summary judgment, arguing the patents-in-suit are invalid because they are directed to an abstract idea and lack an inventive concept.

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). Monopolization of these "basic tools of scientific and technological work" through the grant of a patent "might tend to impede innovation more than it

3

would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (first quoting *Myriad*, 133 S. Ct. at 2116; and then quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1298, 1923 (2012)).

The Supreme Court has set forth a framework for determining patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards one of the three patent-ineligible concepts. *Id.* If so, then the court then asks "[w]hat else is there in the claims before us?" *Id.* (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1296–97). In answering the second question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* The second step can be characterized as a search for an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294).

Defendants argue the asserted claims are directed to the abstract idea of automating well-established manual pharmacy activities using already known technologies. According to Defendants, the asserted claims are factually analogous to *Becton, Dickson v. Baxter International, Inc.*, 127 F. Supp. 3d 687 (W.D. Tex. 2015), *aff'd*, 639 F. App'x 652 (Fed. Cir. 2016). In *Becton*, the Federal Circuit analyzed a claim directed to a "method for remote supervision and verification of pharmacy functions that are performed by a non-pharmacist person." The Federal Circuit noted that "[a]fter stripping away the technicalisms and superfluous verbiage from the claims' language, it is evident that the gist of the claims, and indeed the entire aim of the patent, involves a pharmacist supervising and verifying the work of a nonpharmacist to ensure the work's accuracy." *Id.* at 692. To this end, Defendants contend that

4

when the "technicalisms and superfluous verbiage" is stripped away from the asserted claims, there is nothing more than the abstract idea of ordering, storing, and distributing pharmaceuticals—tasks that were previously performed by humans.

Tech Pharmacy responds that Defendants' proposed alleged abstract idea ignores the role of remote pharmaceutical storage and electronic dispensing machines and the specific operations recited in the asserted claims, such as individually retrieving, loading, packaging, and dispensing pharmaceuticals into a separate and removable container. Tech Pharmacy further responds that Defendants' ignore the software components developed to control remotely multiple packaging and dispensing machines from a central hub pharmacy. Taking these elements together, Tech Pharmacy recognizes the asserted claims are not an abstract idea. Instead, the asserted claims are directed to a system of remote pharmaceutical storage, packaging, and electronic dispensing machines positioned in a plurality of remote long-term care facilities to individually retrieve, load, package, and dispense specified pharmaceuticals based on patient-specific instructions.

The Court agrees with Defendants and finds the asserted claims are directed to the abstract idea of ordering, storing, and distributing pharmaceuticals. Much like the claimed idea in *Becton*, the asserted claims here represent a system and method that could be performed by a human, without the assistance of a communication network, software, or a server. Claim 7 of '019 Patent serves an example:

> A system of enhanced pharmaceutical operation services for a long-term facility, the system comprising:
> a pharmacy group management *computer* including memory to store data therein, the pharmacy group management computer being positioned to manage and control a plurality of pharmaceutical storage and electronic dispensing carts each positioned remote therefrom to thereby define a long-term care facility pharmacy group management server;
> long-term care facility pharmacy management *software* associated with the long-term care facility pharmacy group management server to manage pharmaceutical operations in a plurality of long-term care facilities, to process

5

>   distribution of pharmaceuticals stored in the dispensing carts during preselected dispending time periods, and to perform a pharmaceutical utilization review for individual patients at a long-term care facility responsive to added prescriptions so that each respective dispensing cart includes new approved prescriptions prior to the next preselected time periods;
>
>   a plurality of pharmaceutical storage and electronic *dispensing carts* each positioned in a separate long-term care facility remote from the long-term care facility pharmacy group management server and in communication with the long-term care facility pharmacy group management server to store a plurality of pharmaceuticals therein and to individually retrieve at least one pharmaceutical of the plurality of pharmaceuticals stored in the pharmaceutical storage and dispensing cart, load the at least one pharmaceutical of the plurality of pharmaceuticals into one of a plurality of disposable individual patient dosing packages, package the at least one pharmaceutical, and dispense the loaded and packaged one of the plurality of individual patient dosing packages into a separate and removable container associated with the cart for use by authorized health care personnel located at the long-term care facility; and
>
>   a plurality of pharmaceutical prescription *document processors* each positioned in a separate long-term care facility remote from and in communication with the long-term pharmacy group management server to process a pharmaceutical prescription order from the long-term care facility to be delivered to the long-term care facility.

'019 Patent at 22:50–23:26 (emphasis added). In other words, Claim 7 recites components, such as a computer, software, dispensing carts, and document processors, to order, store, and distribute pharmaceuticals. A human can perform these actions without the recited components. The Federal Circuit and the Supreme Court have found certain methods of organizing human activity to be abstract. *See Bilski v. Kappos*, 561 U.S. 593, 612 (2010) (determining a method for hedging against the financial risk of price fluctuations was abstract); *Alice*, 134 S. Ct. at 2356 (determining claims directed to settlement risk mitigation were abstract); *Planet Bingo LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (determining a system for managing a game of Bingo was abstract); *see also DietGoal Innovations v. Bravo Media LLC*, 599 F. App'x 956, 956 (Fed. Cir. 2015) (affirming the district court's determination that meal planning was an abstract idea).

Although Plaintiff argues that Defendants overgeneralize the asserted claims and fail to take into account specific components and operations, the Federal Circuit has stated that "the addition of merely novel or non-routine components to the claimed idea [does not] necessarily turn[] an abstraction into something concrete" as opposed to an abstract idea. *Ultramerical, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). "In any event, any novelty in the implementation of the idea is a factor to be considered only at the second step of the *Alice* analysis," to which the Court now turns. *Id.*

The second step of the *Alice* analysis requires the Court to consider whether the asserted claims, both individually and as an ordered combination, include an inventive concept "that amounts to more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citation omitted). "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 2354. Rather, application of such concepts "to a new and useful end . . . remain eligible for patent protection." *Id.* (citation omitted). The Court concludes the asserted claims set forth elements that transform the claimed subject matter into an inventive concept, particularly when viewed in light of what was considered conventional at the time of the invention. The common specification of the patents-in-suit indicates little has been done to improve storage and distribution of medication in long-term care facilities. '019 Patent at 2:1–5. It is increasingly important to reduce the risk of error in dispensing medication in such facilities. *Id.* at 2:16-19. Thus, the asserted claims aim to "streamline the medication distributing procedures for medical personnel working with the long-term care facilities to help make the procedures more efficient and easier." *Id.* at 2:28–30. To accomplish this, the specification describes system, software, and methods to "reduce[] medication shortages, reduce[] medication preparation time, reduce[] medication waste,

7

enhance[] documentation, and enhance[] regulatory acceptance." *Id.* at 2:26–33. As an ordered combination, the asserted claims disclose a system and method that are improvements for pharmaceutical operations in long-term care facilities, "which are significantly different in operation, personnel structure, and physical structure than hospitals, physician offices, and home care." *Id.* at 1:56–57.

There is a presumption that a patent is valid. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). Defendants bear the burden of proving invalidity by clear and convincing evidence, and the burden never shifts to Tech Pharmacy to prove validity. The Court is unconvinced Defendants have met their burden of showing the patents-in-suit are invalid by clear and convincing evidence.

## CONCLUSION

Accordingly, it is therefore **ORDERED** that Defendants' Amended Motion for Partial Summary Judgment That the Patents in Suit are Invalid Under 35 U.S.C. § 101 (Dkt. #197) is **DENIED**.

**SIGNED this 24th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE