# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TECH PHARMACY SERVICES, LLC § | |
| § | |
| v. § | |
| § | Civil Action No. 4:15-CV-766 |
| ALIXA RX LLC, GOLDEN GATE § | Judge Mazzant |
| NATIONAL SENIOR CARE LLC d/b/a § | |
| GOLDEN LIVINGCENTERS, FILLMORE § | |
| CAPITAL PARTNERS, LLC, FILLMORE § | |
| STRATEGIC INVESTORS, LLC, and § | |
| FILLMORE STRATEGIC § | |
| MANAGEMENT, LLC § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Partial Summary Judgment Regarding Patent Invalidity Under 35 U.S.C. § 102(b) (On-Sale Bar Affirmative Defense) (Dkt. #220). After reviewing the relevant pleadings, the Court denies Defendants' motion.

## BACKGROUND

On November 2, 2015, Tech Pharmacy filed suit against Golden Gate National Senior Care LLC d/b/a Golden LivingCenters ("GLC") and Alixa Rx LLC ("Alixa"), alleging patent infringement. Specifically, Tech Pharmacy asserts Claims 7, 9, and 10 from U.S. Patent No. 7,698,019; Claims 5, 7, and 8 from U.S. Patent No. 8,209,193; Claims 1, 2, and 6 from U.S. Reissue Patent No. RE44,127; Claims 1 and 4 from U.S. Patent No. 8,612,256; and Claim 1 from U.S. Patent No. 8,954,338 (collectively, the "patents-in-suit"). The patents-in-suit articulate a system and method for enhanced distribution of pharmaceuticals in long-term care facilities.

On January 22, 2016, Tech Pharmacy amended its complaint to add state law claims of fraud, breach of contract, trade secret misappropriation, and equitable estoppel to the original patent infringement claims. On September 1, 2016, Plaintiff further amended its complaint to

add Fillmore Capital Partners LLC, Fillmore Strategic Management LLC, and Fillmore Strategic Investors LLC (collectively with Alixa and GLC, "Defendants") to the state causes of action (Dkt. #83).

On March 31, 2017, Defendants' filed their motion for partial summary judgment (Dkt. #220). On April 21, 2017, Tech Pharmacy filed it response (Dkt. #245). On April 28, 2017, Defendants' filed a reply (Dkt. #249). On May 4, 2017, Tech Pharmacy filed a sur-reply (Dkt. #255).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the

burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants move for summary judgment based on the patents-in-suit being invalid under the on-sale bar doctrine articulated in 35 U.S.C. § 102(b).

Under 35 U.S.C. § 102(b), a patent is invalid if "the invention was . . . in public use or on sale in this country[] more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). In *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), the

Supreme Court established a two-part test for determining when the on-sale bar invalidates a patent. The *Pfaff* test requires that more than one year before the date of the patent application, the invention (1) be the subject of a commercial sale or offer for sale; and (2) be ready for patenting. *Id.* at 66–67. The "critical date" for assessing the validity of a patent is the date that falls one year before the date the patent application was filed or the date a patent application claims priority. Here, the parties agree the critical date is November 3, 2002 because each of the patents-in-suit claim priority to November 3, 2003 patent application. Determining whether an invention is "on-sale" within the meaning of Section 102(b) is a question of law based on underlying facts. *Dana Corp. V. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002) (citing *Intel Corp. v. Int'l Trade Comm'm*, 946 F.2d 821, 829 (Fed. Cir. 1991)). Issued patents generally enjoy a presumption of validity. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662 (Fed. Cir. 2000). Defendants bear the burden of proving invalidity by clear and convincing evidence, and the burden never shifts to Tech Pharmacy to prove validity.

  Defendants assert Tech Pharmacy sold and offered to sell pharmacy services to long-term care facilities using its KVM Envoy machine ("Envoy"). Defendants refer to alleged sales to Country Village Care, Gulf Health Care Center, Pine Tree Lodge, and the Rosemont facilities that all took place between January 2002 and September 2002 (Dkt. #220 at p. 6). Each sale included a fee provision directed specifically to use of the Envoy (Dkt. #220 at p. 3). By September 2002, Defendants contend the Envoy machine was fully optimized, and Tech Pharmacy used a September 9, 2002 letter from one of its customers to sell services to other long-term care facilities (Dkt. #220, Exhibit F at 170:16–19; Dkt. #220, Exhibit H at ¶ 17).

  Tech Pharmacy maintains the on-sale bar does not apply since the patents-in-suit were neither sold nor offered for sale before November 3, 2002 critical date. Tech Pharmacy argues

the inventors of the patents-in-suit conceived and reduced the claimed inventions to practice in 2003. As part of the inventors' development, Tech Pharmacy entered into agreements between January and September 2002 with five long-term health facilities that used the Envoy machine. Tech Pharmacy contends the purpose of the 2002 agreements was experimental testing rather than selling or offering to sell the Envoy machine.

The record reveals there are genuine issues of material fact with regard to whether the Envoy machine was the subject of a commercial sale or offer for sale before the November 3, 2002 critical date. Tech Pharmacy presents evidence that establishes a fact issue as to whether the fees charged under the 2002 agreements were for the Envoy machine alone or the entire claimed system as Defendants suggest (Dkt. #220, Exhibit G at 4 ("[T]he remote automated dispensing machine was to be provided free of charge for the first six months, whereby, thereafter the parties would negotiate an appropriate fee . . . ."). Further, the summary judgment evidence indicates a fact issue as to whether the fees charged under the 2002 agreements were actually sales (Dkt. #245, Exhibit 1 at 132:5–15 ("Q. Did Tech Pharmacy bill the facilities as part of these agreements? A. Early on I think all we billed them for was just for the meds being dispensed. Then I think we added on – later on we added – a fee for the machine but there was no – no fee for the services. It was just we billed you for the drugs and there was a fee for the machines. . . . We were licensing or leasing the machines.")). Although Defendants' evidence may support an inference that Tech Pharmacy offered the Envoy machine for sale before the critical date, it does not establish that fact conclusively, particularly when the evidence is viewed in the light most favorable to Tech Pharmacy.

Even if the Envoy machine was offered for sale before the critical date, the Court finds a genuine issue of material fact as to whether the Envoy machine was ready for patenting. The

requirement that an invention be ready for patenting can be satisfied in at least two ways: "[1] by proof of reduction to practice before the critical date; or [2] by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Pfaff*, 525 U.S. at 67–68. Tech Pharmacy presents evidence that the claimed inventions were not reduced to practice or complete when it entered into the 2002 agreements. Specifically, Tech Pharmacy points to Defendants' own summary judgment evidence that shows the claimed inventions may not have been complete before April 2003 (Dkt. #220, Exhibit G at 11 ("In April 2003, the initial version of the long-term care facility pharmacy management software designed by Mr. Martin and Mr. Moncrief was preliminarily complete and the above-referenced 'bits and pieces' were accumulated to form a preliminary system and methods of the above-referenced patent application.")). In addition, the inventors state in their joint declaration, "At no time before this April 2003 experimental implementation were the systems, software, and methods of the above-referenced patent application ever tested in their entirety." (Dkt. #220, Exhibit G at 12).

Because there are genuine disputes of material fact regarding the applicability of the on-sale bar under 35 U.S.C. § 102(b), the Court is unconvinced Defendants have met their burden of showing invalidity by clear and convincing evidence.

## CONCLUSION

Accordingly, it is therefore **ORDERED** Defendants' Motion for Partial Summary Judgment Regarding Patent Invalidity Under 35 U.S.C. § 102(b) (Dkt. #220) is **DENIED**.

**SIGNED this 24th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE