# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TECH PHARMACY SERVICES, LLC § | |
| § | |
| v. § | |
| § | Civil Action No. 4:15-CV-766 |
| ALIXA RX LLC, GOLDEN GATE § | Judge Mazzant |
| NATIONAL SENIOR CARE LLC d/b/a § | |
| GOLDEN LIVINGCENTERS, FILLMORE § | |
| CAPITAL PARTNERS, LLC, FILLMORE § | |
| STRATEGIC INVESTORS, LLC, and § | |
| FILLMORE STRATEGIC § | |
| MANAGEMENT, LLC § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Partial Summary Judgment as to Plaintiff's Fraud Claims, Equitable Estoppel Claims, and All Remaining Claims Against the Fillmore Entities (Dkt. #221). After reviewing the relevant pleadings, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Beginning in 2008, Tech Pharmacy Services, LLC ("Tech Pharmacy") engaged in discussions with Golden Gate National Senior Care LLC d/b/a Golden LivingCenters ("GLC") about providing its remote packaging and dispensing system to GLC facilities. During negotiations, Tech Pharmacy and GLC entered into two non-disclosure agreements ("NDAs"), one in 2008 and another in 2009, to facilitate discussions between the parties and allow GLC to access Tech Pharmacy's virtual data room. On March 11, 2010, GLC sent a letter of intent to Tech Pharmacy, expressing interest in purchasing 85% of the company for $15 million. Two weeks later, Tech Pharmacy sent a counter-proposal, offering the sale of 45% of the company for $25 million. The next day, GLC contacted Tech Pharmacy and stated that it was ceasing

discussions and terminating any pilot programs. In October 2012, GLC publicly launched its own pharmacy named Alixa Rx LLC ("Alixa").

On November 2, 2015, Tech Pharmacy filed suit against Alixa and GLC, alleging patent infringement. On January 22, 2016, Tech Pharmacy amended its complaint to add state law claims of fraud, breach of contract, trade secret misappropriation, and equitable estoppel to the original patent infringement claims. On September, 1, 2016, Plaintiff further amended its complaint to add Fillmore Capital Partners LLC, Fillmore Strategic Management LLC, and Fillmore Strategic Investors LLC (collectively, the "Fillmore Defendants," with Alixa and GLC, "Defendants") to the state causes of action (Dkt. #83).

On March 31, 2017, Defendants filed their motion for partial summary judgment (Dkt. #221). On April 21, 2017, Tech Pharmacy filed its response (Dkt. #246). On April 28, 2017, Defendants filed their reply (Dkt. #252). On May 4, 2017, Tech Pharmacy filed its sur-reply (Dkt. #256).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party

opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain

from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants move for summary judgment, arguing a lack of genuine issues of material fact concerning: (1) whether Defendants as a whole committed fraud by acquiring Tech Pharmacy's confidential information in violation of an NDA; (2) whether the Fillmore Defendants are liable for fraud, misappropriation of trade secrets, and breach of contract; (3) whether Tech Pharmacy can rely on equitable estoppel as an affirmative defense. The Court will address each of these arguments separately.

### *Fraud Against Defendants*

Defendants contend Tech Pharmacy cannot sustain a fraud claim since the undisputed evidence shows it was not actually deceived. Defendants assert that Tech Pharmacy knew GLC was considering forming its own pharmacy and exploring other business ventures besides its relationship with Tech Pharmacy. Because Tech Pharmacy was aware of these facts, Defendants assert that they did not make any false misrepresentations that Tech Pharmacy acted upon, relied upon, and was subsequently injured by.

Tech Pharmacy's fraud claim involves whether Defendants fraudulently induced Tech Pharmacy to enter into the 2009 NDA. Tech Pharmacy contends Defendants misrepresented that they would not use Tech Pharmacy's confidential information accessed under the 2009 NDA to start their own pharmacy. To succeed in its fraud claim, Tech Pharmacy must show (1) Defendants made material misrepresentation; (2) such misrepresentation was made falsely or recklessly without any knowledge of its truth; (3) Defendants intended Tech Pharmacy to act upon the misrepresentation; (4) Tech Pharmacy acted in reliance on the misrepresentation; and

4

(5) suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (citation omitted). A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Id.* (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.). Fraudulent inducement arises in the context of a contract and the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).

The Court finds Tech Pharmacy has come forth with sufficient evidence to create genuine dispute of material fact. Tech Pharmacy and GLC executed the 2009 NDA on November 9, 2009 (Dkt. #246, Exhibit 5 at p. 1). Tech Pharmacy presents evidence suggesting that on September 3, 2009, Defendants gathered Tech Pharmacy's information intending to use it without Tech Pharmacy. *See, e.g.*, Dkt. #246, Exhibit 13 at 124:23, 125:15–21 ("Q. So even if GLC ultimately decided to go forward in its buildings with a provider other than Tech Pharmacy, GLC still thought that it would be able to use elements of the pilots that it learned from its pilot with Tech Pharmacy in that situation, even if it went forward with another provider? A. That's correct. "). As such, material fact disputes remain regarding whether Defendants made representations to induce Tech Pharmacy to enter into the 2009 NDA and whether those representations were false. Because disputed issues of fact remain, Defendants are not entitled to summary judgment on Tech Pharmacy's fraud claim against them.

*Fraud Against Fillmore Defendants*

Defendants express that Tech Pharmacy cannot maintain fraud, misappropriation of trade secrets, and breach of contract claims against the Fillmore Defendants. Defendants argue Tech Pharmacy has offered no evidence that any of the Fillmore Defendants (or anyone operating on

5

their behalf) made a misrepresentation or omission upon which Tech Pharmacy relied. Defendants state Tech Pharmacy negotiated only with GLC when entering into the 2009 NDA, and GLC was the entity that executed the agreement with Tech Pharmacy. The Fillmore Defendants were merely investors. Defendants point out that GLC and Drumm Corp. ("Drumm") were entities that first became interested in remote packing and dispensing technology. Ron Silva represented Drumm at the very beginning of the relationship between GLC and Tech Pharmacy, and he worked on behalf of GLC in his capacity as Board Director of Drumm.

Tech Pharmacy responds that through Ron Silva, the Fillmore Defendants were intimately involved in negotiations with Tech Pharmacy and in the formation of Alixa. Specifically, Tech Pharmacy states Mr. Silva directed Defendants to pursue remote packaging technology and approved the pilot program with Tech Pharmacy. Thus, Tech Pharmacy contends the Fillmore Defendants are liable for fraud.

Based on the evidence put forth by Tech Pharmacy, the Court cannot determine what entity Ron Silva represented when he engaged with Tech Pharmacy. It is undisputed that Tech Pharmacy negotiated and entered into the 2009 NDA with GLC. GLC is organized under Drumm. Fillmore Strategic Investors, LLC ("FSI") owns one hundred percent of Drumm's stock. Fillmore Strategic Management, LLC ("FSM") is the managing member of FSI and a wholly-owned subsidiary of Fillmore Capital Partners, LLC ("FCP") (Dkt. #246, Exhibit 2 at 30:24–25). All of the Fillmore Defendants (FSI, FSM, and FCP) are operated as one entity named FCP or Fillmore, and Ron Silva is FCP's sole owner and CEO (Dkt. #246, Exhibit 2 at 24:22–25:3; Dkt. #246, Exhibit 3 at 27:21–28:7). Ron Silva was both Board Director for Drumm and CEO of FCP leading up to the 2009 NDA (Dkt. #246, Exhibit 2 at 24:22–25:4, 39:13–17).

Defendants argue Ron Silva represented only Drumm and worked on behalf of GLC. However, the disputed evidence implies otherwise. Tech Pharmacy maintains it understood Ron Silva represented FCP because he handed out FCP business cards, he communicated with Tech Pharmacy using an FCP email address, and he was introduced to Tech Pharmacy as the CEO of FCP (Dkt. #246 at p. 8 (citing Dkt. #246, Exhibit 25 at 21:9–17; Dkt. #246, Exhibit 2 at 52:2–6; Dkt. #246, Exhibit 28 at GLC-0020707)). In addition, Ron Silva acknowledged the difficulty in separating his role with FCP and his role with Drumm as Board Director (Dkt. #246, Exhibit 2 at 39:11–17). Tech Pharmacy has presented evidence that shows Ron Silva attended meetings with Tech Pharmacy's executive team, observed demonstrations of Tech Pharmacy's remote packaging and dispensing technology, and spoke with Tech Pharmacy's then CEO, Dave Barr (Dkt. #246, Exhibit 8 at 24:6–25:21). Thus, the Court finds genuine issues of material fact regarding which entity Ron Silva represented in discussions with Tech Pharmacy leading up to the 2009 NDA: either he represented GLC/Drumm as Board Director for Drumm or he represented FCP as CEO. The Court further finds that if Ron Silva represented FCP, then there is a genuine issue of material fact regarding whether he made representations to Tech Pharmacy to induce it to enter into the 2009 NDA. Accordingly, Defendants are not entitled to summary judgment with regard to Tech Pharmacy's fraud claim against FCP.

With regard to the other Fillmore Defendants, Tech Pharmacy argues FSI and FSM are liable as alter egos of FCP. Tech Pharmacy points to summary judgment evidence that shows little distinction between FSI, FSM, and FCP. Ron Silva admitted:

> [W]e run everybody as Fillmore. We don't make those distinctions [between FSI and FSM] that you're making . . . . Everyone wears an FCP jacket. FCP is what we're known as  . . . . I don't make those distinctions, and I urge people not make those distinctions. It just causes confusion. We're ultimately responsible for everything that everyone does.

(Dkt. #246, Exhibit 3 at 27:21–28:7).  Summary judgment evidence also indicates the following: (1) FSM is a legal formality rather than a functional entity; (2) FSI has not employees of its own; and (3) Ron Silva sits on the FSI committee with one other person (Dkt. #246, Exhibit 2 at 30:12–13; Dkt. #246, Exhibit 33 at 21:6–12; Dkt. #246, Exhibit 2 at 40:2–19 ("FSM doesn't operate other than a legal box.  So there is no board.  There is a committee that is made up of FCP people that review the investments.  And the FSI board is really the staff at [Washington State Investment Board, an entity that partly owns FSI,] in which we, as fiduciaries, recommend, and they approve, new investment, or material changes to investments such as a sale.").

FCP, FSI, and FSM are Delaware limited liability companies, and Delaware law governs liability under an alter ego theory.  *Alberto v. Diversified Grp., Inc.*, 55 F.3d 201, 203 (5th Cir. 1995).  "[T]o succeed on an alter ego theory of liability, plaintiff[] must essentially demonstrate that, in all aspects of the business, the [] corporations actually functioned as a single entity and should be treated as such."  *Blair v. Infineon Tech. AG*, 720 F. Supp. 2d 462, 469 (D. Del. 2010) alteration in original) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  Some factors a court may consider when being asked to disregard the corporate form include: "'(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.'"  *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008).

The Court does not consider FSI and FSM to be alter egos of FCP.  Tech Pharmacy has not shown a lack of corporate formalities or other equitable factors that might support disregarding FSI and FSM as separate entities from FCP.  The fact that FCP, FSI, and FSM

8

operate as a single entity is insufficient to show liability under an alter ego theory. As a result, Tech Pharmacy's alter ego argument fails.

To survive summary judgment, Tech Pharmacy must present evidence that FSI and FSM engaged in specific conduct that meets the elements of fraud. The Court does not find that Tech Pharmacy has met its burden. Without offering evidence of direct participation by FSI and FSM, Tech Pharmacy relies on the acts and representations of Ron Silva to support its fraud claim. Ron Silva's relationship with FSI and FSM alone does not establish that he acted on behalf of these entities leading up to the 2009 NDA. Thus, the Court grants summary judgment with regard to Tech Pharmacy's fraud claims against FSI and FSM.

*Misappropriation of Trade Secrets & Breach of Contract Against Fillmore Defendants*

Defendants argue the Fillmore Defendants did not acquire or disclose Tech Pharmacy's trade secrets or other confidential information and breach the 2009 NDA.

The elements of a claim for misappropriation of trade secrets under Texas law are "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).

As established above, there is a fact issue regarding whether Ron Silva represented FCP or whether he represented GLC/Drumm. Assuming Ron Silva was a representative for FCP, the evidence put forth by Tech Pharmacy indicates that Ron Silva had access to Tech Pharmacy's

9

confidential information (Dkt. #246, Exhibit 8 at 24:13–15, 107:3–21, 172:9–19). The 2009 NDA binds GLC and its affiliates, which the NDA defines as follows:

> As used herein, "Affiliate" shall mean, as to any individual, partnership, joint venture, corporation, limited liability company, trust, estate or other entity or organization (a "Person"), any Person controlled by, controlling, or under common control with such Person . . . . For the purpose of this definition, "control" (including the terms "controlling", "controlled by" and "under common control with") of a Person means the possession, directly or indirectly, alone or in concert with others, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of securities, by contract, or otherwise.

(Dkt. #246, Exhibit 5 at p. 1). The Court determines that Ron Silva's position with Drumm and FCP makes him an "Affiliate" under the NDA. Accordingly, the Court finds genuine issues of material fact concerning whether Ron Silva used Tech Pharmacy's trade secrets to start Alixa and benefit FCP, which would breach the 2009 NDA. Thus, the Court denies Defendants' motion for summary judgment on these arguments against FCP.

For FSI and FSM, Tech Pharmacy has not shown any evidence that these entities acquired Tech Pharmacy's confidential information or used such information in breach of the 2009 NDA. Tech Pharmacy relies the actions of Ron Silva to support its claims against FSI and FSM. Again, Ron Silva's relationship with FSI and FSM alone does not establish that he acted on behalf of these entities. Thus, the Court grants summary judgment in with regard to Tech Pharmacy's misappropriation of trade secrets and breach of contract claims against FSI and FSM.

*Equitable Estoppel*

Lastly, Defendants argue equitable estoppel claims are not cognizable under Texas law. The Court disagrees. Equitable estoppel in the limitations setting is sometimes called fraudulent concealment. Texas recognizes the doctrine of equitable estoppel as a way to prevent a

defendant from asserting statute of limitations as a defense. Equitable estoppel generally consists of five elements: (1) a false representation or concealment of material fact (2) made with knowledge or the means of knowledge of the true facts (3) to a party without knowledge or the means of knowledge of the true facts (4) the representation was made with the intention that it would be acted on; and (5) the party to whom the representation was made relied on it to his or her prejudice. *Hill v. Bartlette*, 181 S.W.3d 541, 545 (Tex. App.—Texarkana 2005, no pet.). Further, the Court addressed this issue in its August 15, 2016 Memorandum Opinion and Order. The Court stated: "To the extent that Plaintiff's equitable estoppel claim should be considered an independent cause of action, the Court determines it may be considered an affirmative defense to limitations and need not be dismissed or re-pleaded." (Dkt. #70 at p. 4). Therefore, the Court denies Defendants' motion for summary judgment on this argument.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Partial Summary Judgment as to Plaintiff's Fraud Claims, Equitable Estoppel Claims, and All Remaining Claims Against the Fillmore Entities (Dkt. #221) is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Tech Pharmacy Services, LLC's fraud, misappropriation of trade secrets, and breach of contract claims against Defendants Fillmore Strategic Investors, LLC and Fillmore Strategic Management, LLC are **DISMISSED**.

It is further **ORDERED** that Defendants' motion is **DENIED** in all other respects.
**SIGNED this 25th day of July, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

11