**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **Tech Pharmacy Services, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:15-cv-00766-ALM** |
| | § | |
| **Alixa Rx LLC and Golden Gate National** | § | **JURY TRIAL** |
| **Senior Care LLC d/b/a Golden** | § | |
| **LivingCenters, Fillmore Capital Partners,** | § | **FILED UNDER SEAL** |
| **LLC, Fillmore Strategic Investors, LLC,** | § | |
| **and Fillmore Strategic Management,** | § | |
| | § | |
| **Defendants.** | § | |

---

## JOINT FINAL PRE-TRIAL ORDER

---

This cause came before the court at a pre-trial management conference held on April 22, 2016, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## A.   COUNSEL FOR THE PARTIES

### Counsel for Plaintiff:

Maria Wyckoff Boyce, Lead Attorney
Texas SBN 22095050
maria.boyce@hoganlovells.com
Jeffrey S. Whittle
Texas SBN 24037813
jeffrey.whittle@hoganlovells.com
Cristina Espinosa Rodriguez
Texas SBN 00793701
cristina.rodriguez@hoganlovells.com
John A. Yates
Texas SBN 24056569
jay.yates@hoganlovells.com
Mark D. Shelley, II
Texas SBN 24051328
mark.shelley@hoganlovells.com
**HOGAN LOVELLS US LLP**
609 Main Street, Suite 4200

Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

Michael E. Jones
Texas SBN 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 North College, Ste. 500
Tyler, Texas 75702
T (903) 597-8311
F (903) 593-0846

**Counsel for Defendant(s):**

Thomas M. Melsheimer, Lead Attorney
Texas SBN 13922550
tmelsheimer@winston.com
Michael Brett Johnson
Texas SBN 00790975
mbjohnson@winston.com
Chad Brian Walker
Texas SBN 24056484
cbwalker@winston.com
Michael A. Bittner
Texas SBN 24064905
mbittner@winston.com
Rex A. Mann
Texas SBN 24075509
rmann@winston.com
Grant K. Schmidt
Texas SBN 24084579
gschmidt@winston.com
**WINSTON & STRAWN LLP**
2501 N. Harwood Street, 17th Floor
Dallas, TX 75201
(214) 453-6500 – Telephone
(214) 453-6400 – Facsimile

Elizabeth Danielle Thompson Williams
NC SBN 23283
dwilliams@winston.com
**WINSTON & STRAWN LLP**
100 North Tryon Street
Charlotte, NC 28202
(704) 350-7700 – Telephone

(704) 350-7800 – Facsimile

Samantha M. Lerner (*pro hac vice*)
slerner@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 558-5600 – Telephone
(312) 558-5700 – Facsimile

Jack Wesley Hill
Texas SBN 24032294
wh@wsfirm.com
Andrea L. Fair
Texas SBN 24078488
andrea@wsfirm.com
**WARD, SMITH, & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 – Telephone
(903) 757-2323 – Facsimile

Stephen J. Akerley (*pro hac vice*)
sakerley@mintz.com
Adrian Kwan (*pro hac vice*)
akwan@mintz.com
**MINTZ LEVIN PC**
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
(415) 432-6000 - Telephone
(415) 432-6001 – Facsimile

Robert Rhoad (*pro hac vice*)
robert.rhoad@dechert.com
**DECHERT LLP**
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(609) 955-3200 – Telephone
(609) 955-3259 – Facsimile

Nisha N. Patel (*pro hac vice*)
nisha.patel@dechert.com
Albert J. Rugo (*pro hac vice*)
Albert.rugo@dechert.com
**DECHERT LLP**
2440 W. El Camino Real, Suite 700

Mountain View, CA 94040-1499
(650) 813-4800 – Telephone
(650) 813-4848 – Facsimile

H. Joseph Escher, III (*pro hac vice*)
h.joseph.escher@dechert.com
**DECHERT LLP**
One Bush Street, Suite 1600
San Francisco, CA 94104
(415) 262-4500 – Telephone
(415) 262-4555 – Facsimile

B.   **STATEMENT OF JURISDICTION**

Because this case includes an action for patent infringement arising under the laws of the United States, including 35 U.S.C. §§ 271 and 281-85, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the breach of contract, fraud, equitable estoppel, and misappropriation of trade secrets causes of action pursuant to 28 U.S.C. § 1367. This Court also has diversity jurisdiction over all causes of action pursuant to 28 U.S.C. § 1332 because (i) there is complete diversity of citizenship among the parties, and (ii) the amount in controversy exceeds $75,000.

Jurisdiction is not disputed.

C.   **NATURE OF ACTION**

This is an action for patent infringement, breach of contract, fraud, equitable estoppel, and misappropriation of trade secrets. The technology at issue is a remote packaging and dispensing system that long-term care facilities can use to provide prescription medications to their residents on-site via a connection to a remote pharmacy.

Plaintiff Tech Pharmacy Services, LLC ("Tech Pharmacy") alleges that Defendants Golden Gate Nation Senior Care LLC /d/b/a Golden Living Centers ("GLC") and Alixa Rx LLC ("Alixa") infringe U.S. Pat. Nos. 7,698,019; 8,209,193; RE44,127; 8,612,256; and 8,954,338 (collectively, the "Patents in Suit"). Tech Pharmacy further alleges that GLC and Alixa's infringement is and has been willful.

Additionally, Tech Pharmacy alleges that GLC, Alixa, Fillmore Capital Partners, LLC ("Fillmore"), Fillmore Strategic Investors, LLC ("FSI"), and Fillmore Strategic Management, LLC ("FSM") (collectively "Defendants") have breached a contract with Tech Pharmacy, committed fraud, and misappropriated certain trade secrets. Tech Pharmacy further alleges that due to Defendants' misconduct, Defendants are equitably estopped from asserting a statute of limitations defense. Tech Pharmacy seeks damages adequate to compensate for the alleged infringement as well as injunctive relief against future acts of infringement by Defendants. For the breach of contract, fraud, and

misappropriation of trade secret claims, Tech Pharmacy further seeks appropriate injunctive relief and damages.

Defendants GLC and Alixa deny Tech Pharmacy's allegations.  In particular, Defendants deny that they have infringed the Patents in Suit.  Defendants further allege that the Patents in Suit are invalid because they are not directed to patentable subject matter as required by the Patent Act.  Defendants allege that the Patents in Suit are invalid because they are anticipated by and/or obvious over the asserted prior art and what was known at the time Plaintiff filed its patents.  Defendants further allege that the Patents in Suit are invalid due to Tech Pharmacy's public use and sale of their alleged invention more than a year before Tech Pharmacy filed its patent applications.   Defendants deny Tech Pharmacy's allegations of willful infringement. Defendants further deny that they breached any contract with Tech Pharmacy, committed fraud, or misappropriated any of Tech Pharmacy's alleged trade secrets, which have been specifically identified by Tech Pharmacy in this case.   Defendants further deny that Tech Pharmacy's pieces of information alleged to be trade secrets by Tech Pharmacy are in fact proprietary confidential information of Tech Pharmacy rather than publicly available information. Defendants allege that Tech Pharmacy's claims of breach of contract, fraud, and misappropriation of trade secrets are barred by the applicable statutes of limitations because Tech Pharmacy waited too long to file suit. Defendants deny that they should be equitably estopped from alleging a statute of limitations defense.  Defendants also deny that Tech Pharmacy is entitled to recover any damages, and otherwise disputes the nature and extent of Tech Pharmacy's claim for damages.  Defendants also deny that Tech Pharmacy is entitled to any injunctive relief, or to any relief whatsoever.

## D.     CONTENTIONS OF THE PARTIES

By providing these contentions, no party is conceding that all of these issues are appropriate for trial.  In addition, no party is waiving any of its motions *in limine* or its other motions, such as its motions for summary judgment.   The parties have met, conferred, and agreed that so long as the claim or defense that will be presented at trial is disclosed in these contentions (without need for reference to specific argument, evidence, or testimony), no party will challenge the sufficiency of these contentions or argue prior to trial that such claims or defenses have been waived.  The parties reserve the right to file motions for judgment as a matter of law during and/or after trial.

*Plaintiff's contentions:*

a) **Factual Contentions**

1.     Tech Pharmacy is a limited liability company that develops and uses advanced systems and methods for automated pharmaceutical dispensing in long-term care facilities.   Tech Pharmacy provides these services through its AP Passport machine, an automated, remotely monitored medication dispensing center located in the long-term care facilities that Tech Pharmacy services.

2.      GLC operates a number of long-term care facilities across the United States.

3.      Alixa is a pharmacy provider created by Defendants that utilizes Tech Pharmacy's remote packaging and dispensing technology to provide pharmacy services primarily to long-term care facilities.

4.      Fillmore Capital Partners, through its owner and CEO Ron Silva, directs GLC's governing board.

5.      The Fillmore Defendants are all run as one company.

6.      Fillmore Capital Partners owns 100% of Fillmore Strategic Management. Ron Silva is the owner and CEO of Fillmore Capital Partners.

7.      Fillmore Strategic Management has no employees or assets, and it acts only through Fillmore Capital Partners employees.  Ron Silva leads the governing board of Fillmore Strategic Management.

8.      Fillmore Strategic Investors is owned by Fillmore Strategic Management and the Washington State Investment Board.  Fillmore Strategic Investors owns 100% of GLC and Alixa.  Ron Silva leads the governing board of Fillmore Strategic Investors.

9.      On May 5, 2008, GLC "and its Affiliates" entered into a Mutual Confidentiality Agreement (the "2008 NDA") with Tech Pharmacy.  This was a valid and enforceable contract, and Tech Pharmacy performed its obligations under the 2008 NDA.

10.     As of June 2008, GLC wanted to move towards a remote dispensing pharmacy system and find one solution that would work for all of its long-term care facilities.

11.     Between 2008 and 2010, Defendants conducted extensive due diligence on Tech Pharmacy's technology, processes, financials, and business model as part of a potential deal to utilize Tech Pharmacy's remote packaging and dispensing technology in GLC's skilled nursing facilities nationwide.

12.     As part of their due diligence, Defendants' top executives met with Tech Pharmacy multiple times, witnessed demonstrations of Tech Pharmacy's machines, and received Tech Pharmacy's confidential documents and information.

13.     In July 2009, the parties began discussions with national pharmacy Walgreen Company ("Walgreens") regarding Walgreens' potential role in the Tech Pharmacy–GLC strategic partnership. After entering into a non-disclosure agreement with Walgreens, Tech Pharmacy demonstrated its remote packaging and dispensing technology for Walgreens.

14.     Walgreens commissioned product-development firm Design Integrity to conduct a design audit of the AP Passport system. Design Integrity reported its findings to Walgreens in a 141-page report on April 8, 2010.

15.     On November 9, 2009, GLC "and its Affiliates" entered into a second non-disclosure agreement with Tech Pharmacy (the "2009 NDA"). This was a valid and enforceable contract, and Tech Pharmacy performed its obligations under the 2009 NDA.

16.     Defendants intended for Tech Pharmacy to rely upon Defendants' material representations that Tech Pharmacy's confidential information would be used solely for the purpose of evaluating a business venture between the parties. Tech Pharmacy relied upon these representations in entering the 2009 NDA and in disclosing confidential information to Defendants.

17.     After Defendants signed the 2009 NDA, Tech Pharmacy placed confidential documents related to, among other things, its remote packaging and dispensing technology, processes, financials, and business model into a secure data room maintained by Houlihan Lokey. Defendants were given access to these documents while under the terms of the 2009 NDA.

18.     On March 10, 2009, Tech Pharmacy and GLC entered into a Pharmacy Services Provider Agreement allowing GLC to use Tech Pharmacy's remote packaging and dispensing technology at GLC's long-term care facility in Frederick, Maryland. Tech Pharmacy subsequently entered into two additional Pharmacy Services Provider Agreements for GLC's Westminster, Maryland facility on November 18, 2009 and for the GLC's Hagerstown, Maryland facility on April 21, 2010. Each Pharmacy Services Provider Agreement contained express confidentiality provisions.

19.     In October 2010, GLC executives Paul Walters and Bob Warnock met at the home of Tech Pharmacy Chief Operating Officer David Barr. At this meeting, Mr. Walters and Mr. Warnock obtained feedback from Mr. Barr on a model for a GLC pharmacy operation utilizing Tech Pharmacy's remote packaging and dispensing machines.

20.     Alixa was originally formed within GLC as "Golden Living Pharmacy."  GLC provided the initial funding, personnel, and facilities used in the creation of Alixa.

21.     As part of its financial model for the pharmacy that became Alixa, GLC allocated $1 million to either license Tech Pharmacy's technology or to defend a patent infringement lawsuit from Tech Pharmacy.

22.     Defendants first announced the formation of Alixa in an October 8, 2012 press release (the "2012 Press Release").

23.     Alixa first began testing remote packaging and dispensing technology in December 2012.

24.     Tech Pharmacy was one of the sources that Defendants relied on in considering how to build the Alixa model.

25.     Defendants hired Cretem, a Korean manufacturer, to develop and manufacture Alixa's remote packaging and dispensing machines.

26.     In August 2011, GLC brought Cretem to one of the pilot facilities to examine Tech Pharmacy's technology without Tech Pharmacy's knowledge or permission.

27.     In 2011, Defendants hired Design Integrity to evaluate and develop Cretem's remote packaging and dispensing machines for Alixa.

28.     Defendant Fillmore Capital Partners issued a press release in July 2013 (the "2013 Press Release") announcing its $100 million capitalization of Alixa.

29.     GLC informed Tech Pharmacy in December 2013 that it was terminating its pilot agreements with Tech Pharmacy related to the three Maryland facilities that Tech Pharmacy serviced for GLC. Those terminations became effective in 2014.

30.     During all of the parties' discussions prior to October 2012, Defendants did not disclose to Tech Pharmacy that Defendants were developing a competing remote packaging and dispensing pharmacy.  Defendants knew that Tech Pharmacy was unaware of this fact—and did not have an equal opportunity to discover this fact—which would have been material to Tech Pharmacy in determining whether to enter the 2009 NDA and whether to disclose its

confidential information to Defendants.  Tech Pharmacy relied on this nondisclosure in entering into the 2009 NDA and sharing confidential information with Defendants.

31.     Tech Pharmacy did not authorize any of the Defendants to use or disclose Tech Pharmacy's trade secrets for any purpose other than evaluating a potential business venture between the parties.

32.     No court or other body has ever held any claim of the Patents in Suit to be invalid or unenforceable.

33.     Tech Pharmacy continues to receive patent protection on its technology.  Tech Pharmacy received Notices of Allowance for U.S. Patent Application Nos. 15/077,403 and 15/001,498 on June 9, 2017 and June 21, 2017 respectively.

34.     GLC has known about the '019 Patent since at least June 6, 2010.

35.     Alixa has known about the '019 Patent for Alixa's entire existence.

36.     From 2012 to November 2016, Alixa's revenues totaled $512.4 million from its Dispensing Segments and $524.3 million overall.

37.     Since the filing of this lawsuit, GLC has begun transferring operations of all of its skilled nursing facilities to third-parties.  Once this process is complete, GLC will have no remaining assets.

**b)  Legal Contentions**

**1.  Patent infringement.**  Tech Pharmacy asserts 12 claims ("Asserted Claims") from five patents ("Patents in Suit") regarding its remote packaging and dispensing system.  The Patents in Suit are U.S. Pat. Nos. 7,698,019 ('019 Patent); 8,209,193 ('193 Patent); RE44,127 ('127 Patent); 8,612,256 ('256 Patent); and 8,954,338 ('338 Patent).  The Asserted Claims are claims 7, 9, and 10 of the '019 Patent; claims 5, 7, and 8 of the '193 Patent; claims 1, 2, and 6 of the '127 Patent; claims 1 and 4 of the '256 Patent; and claim 1 of the '338 Patent. Tech Pharmacy alleges that Alixa and GLC each directly infringe every one of the Asserted Claims.  Tech Pharmacy further alleges that GLC indirectly infringes claims 7, 9, and 10 of the '019 Patent by inducing Alixa to directly infringe these claims. Tech Pharmacy alleges that Alixa and GLC's patent infringement has been willful.

**2.  Breach of contract.**  In November 2009, the parties entered into the second of two non-disclosure agreements (the "2009 NDA").  Like a prior agreement between the parties entered into in 2008, the 2009 NDA stipulated that

information provided by Tech Pharmacy to Defendants was to be used only for the purpose of evaluating a potential transaction between the parties.   Tech Pharmacy contends that, instead, Defendants used this information to create Alixa, a competing pharmacy providing the same remote packaging and dispensing technology utilized by Tech Pharmacy.

3. **Fraud in the inducement of the 2009 NDA and in procuring Tech Pharmacy's confidential information.**   (1) <u>Affirmative Misrepresentation</u>: Defendants repeatedly represented to Tech Pharmacy that they were procuring Tech Pharmacy's confidential information solely for the purpose of evaluating a potential business venture between the parties.   Tech Pharmacy contends that, contrary to their representations, Defendants intended to use the information gathered from Tech Pharmacy for their future pharmacy needs, even if Defendants did not go into business with Tech Pharmacy.   (2) <u>Failure to Disclose</u>: Defendants continued to collect this information from Tech Pharmacy even after they had begun creating their own competing pharmacy, a fact they failed to disclose to Tech Pharmacy.   Tech Pharmacy relied on these false representations and omissions in entering the 2009 NDA and providing to Defendants its confidential information and trade secrets.   Tech Pharmacy contends that Defendants used this information to create Alixa, a competing pharmacy providing remote packaging and dispensing technology.

4. **Misappropriation of trade secrets:**   The trade secrets owned by Tech Pharmacy and improperly acquired by Defendants include information related to the implementation and maintenance of remote packaging and dispensing systems in long-term care facilities.   GLC and the Fillmore Defendants improperly acquired these trade secrets in violation of the parties' confidentiality agreements.   These defendants then improperly disclosed these trade secrets to Alixa and other third parties, such as Cretem.   Alixa—with knowledge of this misappropriation—then used these trade secrets in its technical and business models in competition with Tech Pharmacy.   Tech Pharmacy disputes Defendants' characterization below about the nature and number of trade secrets misappropriated by Defendants.

5. **Equitable estoppel:** Tech Pharmacy contends that, due to Defendants' fraudulent concealment of their development of Alixa using Tech Pharmacy's confidential information, Defendants should be equitably estopped from asserting a statute of limitations defense.

6. **Relief sought:** For the claims of patent infringement, Tech Pharmacy seeks a permanent injunction enjoining Defendants from infringing, inducing others to infringe, or contributing to the infringement of the Patents in Suit.   Tech Pharmacy also seek damages, including lost profits or no less than a reasonable royalty, trebled for the willful, deliberate, and intentional infringement of claims of at least the '019 Patent.

For the remaining claims, Tech Pharmacy seeks appropriate injunctive relief and damages, including, but not limited to, loss of profit, disgorgement of unjust gains, expenses, a reasonable royalty, the development costs that Defendants

avoided by their misappropriation, and punitive damages.  Tech Pharmacy also seeks its court costs, expenses, and attorneys' fees. Tech Pharmacy further asks that it be awarded such other and further relief as this Court may deem just and equitable.

7.  **Other:** Tech Pharmacy contends that the statements in paragraphs 9 and 10 of Defendants' contentions below have no effect on any of the pending Motions or on Tech Pharmacy's right to present evidence at trial regarding the opinion letter from David Walker dated April 10, 2012 or regarding Defendants' spoliation during the inspection on February 14, 2017.  Tech Pharmacy intends to present evidence on both of these issues.

*Defendants' contentions:*

a)  **The Patents in Suit**

1.  GLC and Alixa contend that they do not infringe any claims of the Patents in Suit, either directly or indirectly.

2.  GLC and Alixa contend that Tech Pharmacy cannot meet its burden of proving, by a preponderance of the evidence, that GLC and Alixa directly infringe the Asserted Claims of the Patents in Suit, under any theory of infringement.

3.  GLC contends that Tech Pharmacy cannot meet its burden of proving, by a preponderance of the evidence, that GLC indirectly infringes claims 7, 9, and 10 of the '019 Patent by inducing Alixa to directly infringe those claims, under any theory of infringement.

4.  GLC and Alixa contend that Tech Pharmacy cannot meet its burden of proving, by clear and convincing evidence, that GLC and Alixa willfully infringed any Asserted Claim of the Patents in Suit, and thus Plaintiffs are not entitled to enhanced damages under 35 U.S.C. § 284.

5.  Defendants[1] contend that the Patents in Suit are invalid because they fail to meet one or more of the patent eligibility requirements under 35 U.S.C. § 101.

6.  Defendants contend that the Asserted Claims of the Patents in Suit are invalid under 35 U.S.C. § 102 as anticipated by prior art.

7.  Defendants contend that the Asserted Claims of the Patents in Suit are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.

8.  Defendants contend that the Patents in Suit are invalid under 35 U.S.C. § 102(b) due to Tech Pharmacy's violation of the on-sale bar by selling or offering for sale

---

[1] The term Defendants, when used alone, refers to all named Defendants.  If fewer than all named Defendants are being referenced, specific Defendants will be listed.

its invention more than one year before the effective filing date of the Patents in Suit.

9. Subject to the Court's rulings on pending Motions (*see* Section I below), Defendants do not intend to argue to the jury that the accused products do not infringe based on the absence of a "separate, removable container" for those asserted claims containing such a limitation.

10. Subject to the Court's rulings on pending Motions (*see* Section I below), Defendants do not intend to produce at trial an opinion of counsel letter or to rely on an opinion of counsel defense.

**b) Tech Pharmacy's Non-Patent Claims**

11. Defendants contend that GLC, Fillmore, FSI, and FSM did not breach the 2009 NDA entered into with Tech Pharmacy.

12. Defendants contend that GLC, Fillmore, FSI, and FSM made no affirmative misrepresentations to Tech Pharmacy concerning the use of confidential information obtained pursuant to the 2009 NDA.

13. Defendants contend that GLC, Fillmore, FSI, and FSM did not fraudulently induce Tech Pharmacy to enter into the 2009 NDA.

14. Defendants contend that no confidential information belonging to Tech Pharmacy was used in the formation of Alixa or for any purpose other than for the purpose of evaluating a potential transaction between the parties as set forth in the 2009 NDA.

15. Defendants contend that GLC, Fillmore, FSI, and FSM did not conceal the fact that GLC was developing its own pharmacy services.

16. Defendants contend that Tech Pharmacy knew that GLC was considering all options available to it for obtaining pharmacy services, including the possibility of developing its own pharmacy.

17. Defendants contend that Alixa, Fillmore, FSM, and FSI had no involvement in the discussions and negotiations leading up to the 2009 NDA and were not signatories to the 2009 NDA.

18. Defendants contend that Tech Pharmacy should only be allowed to present evidence on six alleged trade secrets: (i) humidity control, (ii) PRN interrupt, (iii) medication return, (iv) costs of goods sold, (v) gross margin, and (vi) average costs, and that no evidence of any other trade secrets may properly be presented to the jury.

19. Defendants contend that the six alleged trade secrets owned by Tech Pharmacy, including (i) humidity control, (ii) PRN interrupt, (iii) medication return, (iv) costs of goods sold, (v) gross margin, and (vi) average costs savings are not trade secrets under any applicable law.

20. Defendants contend that the six alleged trade secrets were not in fact secret, confidential, or proprietary to Tech Pharmacy, but were readily available from non-confidential and public sources including KVM, Cardinal Health, and others.

21. Defendants contend that Tech Pharmacy took no reasonable steps to protect or treat as confidential, proprietary, or trade secret the six alleged trade secrets.

22. Defendants contend that the six alleged trade secrets lack an independent economic value.

23. Defendants contend that even if the six alleged trade secrets are found to be trade secrets under the law, Defendants did not misappropriate any of the six alleged trade secrets.

24. Defendants contend that Fillmore, FSM, and FSI themselves never acquired, disclosed, or used any of Tech Pharmacy's six alleged trade secrets.

25. Defendants contend that Tech Pharmacy's non-patent claims are barred by the applicable statutes of limitations, including but not limited to, the following: Del. Code §§ 2006, 8106; Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004, 16.010.

26. Defendants contend that GLC, Fillmore, FSI, and FSM are not equitably estopped from asserting a statute of limitations defense because there was no fraudulent concealment of their development of Alixa.

27. Defendants contend that Tech Pharmacy's claims of breach of contract, fraud, and equitable estoppel against Alixa are unsupported by the pleadings and/or expert discovery.

**c)   Tech Pharmacy's Requested Relief For Patent Infringement Claims**

28. Defendants contend that Tech Pharmacy is not entitled to money damages for its patent infringement claims.

29. Defendants contend that Tech Pharmacy is not entitled to any supplemental damages, any accounting for damages or attorneys' fees, expenses, or costs with regard to its patent infringement claims.

30. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy's proposed damages award is excessive and unsupportable.

31. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy is not entitled to lost profits.

32. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy is not entitled to lost profits damages because apportionment principles were not properly incorporated into the lost profits analysis.

33. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy is not entitled to reasonable royalty damages because apportionment principles were not properly incorporated into the reasonable royalty analysis.

34. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy is not entitled to treble damages because Tech Pharmacy cannot show that any alleged infringement was willful, deliberate, or intentional.

35. Defendants contend that, even if infringement of the Asserted Claims of the Patents in Suit is found, Tech Pharmacy is not entitled to injunctive relief.

36. Defendants contend that Tech Pharmacy cannot show that it would be irreparably harmed by Defendants' alleged infringement.

37. Defendants contend that Tech Pharmacy cannot show that there is no adequate remedy at law to compensate Tech Pharmacy for Defendants' alleged infringement.

38. Defendants contend that Tech Pharmacy cannot show that the balance of the equities indicates that an equitable remedy is warranted.

39. Defendants contend that Tech Pharmacy cannot show that the public interest would be served by a permanent injunction.

40. Defendants contend that, in the event a jury awards Tech Pharmacy a lump-sum royalty covering the life of the Patents in Suit, Tech Pharmacy would be precluded from obtaining a permanent injunction.

41. Defendants contend that Tech Pharmacy has not been damaged by Defendants' alleged infringement and are not entitled to any pre-verdict or post-verdict damages (including pre-judgment and post-judgment interest and costs).

Defendants contend that Tech Pharmacy's claim for damages is limited by 35 U.S.C. §§ 286 and/or 288.

42. Defendants contend that Tech Pharmacy's allegations of infringement are barred under the doctrine of prosecution history estoppel.

43. Defendants contend that Tech Pharmacy's claims are barred or limited due to Tech Pharmacy's failure to comply with the requirements of 35 U.S.C. § 287.

44. Defendants contend that Tech Pharmacy's claims are barred or limited due by the doctrine of intervening rights arising under 35 U.S.C. § 252.

45. Defendants contend that Tech Pharmacy cannot prove that this is an exceptional case justifying an award of attorneys' fees against Defendants pursuant to 35 U.S.C. § 285.

**d)  Tech Pharmacy's Requested Relief For Its Non-Patent Claims**

46. Defendants contend that Tech Pharmacy is not entitled to money damages for its non-patent claims, including but not limited to lost profits, disgorgement of unjust gains, expenses, a reasonable royalty, and punitive damages.

47. Defendants contend that, even if Tech Pharmacy prevails on any of its non-patent claims, Tech Pharmacy's proposed damages award is excessive and unsupportable.

48. Defendants contend that, even if Tech Pharmacy prevails on any of its non-patent claims, Tech Pharmacy is not entitled to lost profits damages because apportionment principles were not properly incorporated into the lost profits analysis.

49. Defendants contend that, even if Tech Pharmacy prevails on any of its non-patent claims, Tech Pharmacy is not entitled to disgorgement of profits by Defendants because either no profits have been realized or because Tech Pharmacy has not performed the proper analysis for such an award.

50. Defendants contend that, even if Tech Pharmacy prevails on any of its non-patent claims, Tech Pharmacy is not entitled to disgorgement of any alleged gain or unjust enrichment of Alixa because this alleged gain is not a proper measure of damages under any cause of action in the case.

51. Defendants contend that, even if Tech Pharmacy prevails on any of its non-patent claims, Tech Pharmacy is not entitled to reasonable royalty damages because apportionment principles were not properly incorporated into the reasonable royalty analysis.

52. Defendants contend that to the extent Tech Pharmacy prevails on any non-patent claim, Tech Pharmacy is not entitled to lost profits damages because apportionment principles were not properly incorporated into the lost profits analysis.

53. Defendants contend that to the extent Tech Pharmacy prevails on any non-patent claim allowing for exemplary damages, Tech Pharmacy cannot meet the burden of proof and limitations/requirements of Tex. Civ. Prac. & Rem. Code §§ 41.001-.012.

54. Defendants contend that any award of exemplary damages to Tech Pharmacy in this matter is limited by Tex. Civ. Prac. & Rem. Code §§ 41.001-.012.

55. Defendants contend that Tech Pharmacy is not entitled to any supplemental damages, any accounting for damages or attorneys' fees, expenses, or costs with regard to its non-patent claims.

56. Defendants contend that Tech Pharmacy not entitled to injunctive relief on any of its non-patent claims.

57. Defendants contend that Tech Pharmacy cannot show that it would be irreparably harmed by Defendants' alleged breach of contract, fraud, or misappropriation of trade secrets.

58. Defendants contend that Tech Pharmacy cannot show that there is no adequate remedy at law to compensate Tech Pharmacy for Defendants' Defendants' alleged breach of contract, fraud, or misappropriation of trade secrets.

59. Defendants contend that Tech Pharmacy cannot show that the balance of the equities indicates that an equitable remedy is warranted.

60. Defendants contend that Tech Pharmacy cannot show that the public interest would be served by a permanent injunction.

61. Defendants contend that Tech Pharmacy should not be allowed to pursue any damages theory related to the development costs that Defendants allegedly avoided by their misappropriation as unsupported by evidence and pleadings in this matter.  However, to the extent such a theory is allowed to be pursed, Defendants likewise contend Tech Pharmacy is not entitled to damages on this theory.

**e)  Additional Contentions**

62. Defendants contend that Tech Pharmacy is not entitled to any relief because any and all harm to Tech Pharmacy was a result of Tech Pharmacy's own intentional,

knowing, reckless, and/or negligent acts and/or omissions, or those of third parties, and not a result of any act or omission of Defendants.

63. Defendants contend that Tech Pharmacy has either failed to mitigate or failed to take appropriate measures to mitigate any alleged damages Tech Pharmacy claims to have suffered.

64. Defendants contend that Tech Pharmacy's claims are barred or limited by the doctrine of unclean hands and/or the doctrine of patent misuse.

65. Defendants contend that Tech Pharmacy's claims are barred under the doctrine of waiver.

66. Defendants contend that Tech Pharmacy's claims are barred or limited under the doctrine of estoppel.

67. Defendants contend that Tech Pharmacy's claims are barred or limited under the doctrine of laches.

68. Defendants contend that Tech Pharmacy is not entitled to any relief because Tech Pharmacy's claims for relief would unjustly enrich Tech Pharmacy at the expense of Defendants.

69. Defendants contend that Tech Pharmacy is not entitled to any relief because Defendants' conduct was excused as a result of the conduct of Tech Pharmacy and/or third parties.

70. Defendants contend that Tech Pharmacy is not entitled to any relief because Defendants acted at all times in good faith with an honest and reasonable belief that their actions were justified and appropriate under the facts and circumstances known and available at the time.

71. Defendants contend that Tech Pharmacy's claims are barred or limited because Tech Pharmacy has not sustained any damages or injury caused by Defendants.

72. Defendants contend that Tech Pharmacy's claims are barred in whole or in part by license or exhaustion, express or implied, and/or restrictions on double recovery.

73. Defendants contend that Tech Pharmacy's non-patent claims are barred in whole or in party by reason of the doctrine of election of remedies.

74. Defendants contend that Tech Pharmacy's claims for relief are barred in whole or in part because Defendants fully performed any and all contractual and other duties, if any, owed to Tech Pharmacy.

**E.    STIPULATIONS AND UNCONTESTED FACTS**

1.    Plaintiff Tech Pharmacy Services, LLC ("Tech Pharmacy") is a limited liability company with a principal place of business at 2040 West Sam Houston Parkway North, Houston, Texas 77043.

2.    Defendant Alixa Rx LLC ("Alixa") is a Delaware limited liability company with its principal place of business at 6400 Pinecrest, Suite 200, Plano, Texas 75024.

3.    Defendant Golden Gate National Senior Care ("GLC") is a limited liability company doing business as "Golden Living" and "Golden LivingCenters" with its principal place of business at 7160 Dallas Parkway, Suite 400, Plano, Texas 75024.

4.    Defendant Fillmore Capital Partners ("Fillmore") is a Delaware limited liability company.

5.    Defendant Fillmore Strategic Investors ("FSI") is a Delaware limited liability company.

6.    Defendant Fillmore Strategic Management ("FSM") is a Delaware limited liability company that is a managing member of Fillmore Strategic Investors, LLC.

7.    The '019 Patent is titled "System and software of enhanced pharmaceutical operations in long-term care facilities and related methods."

8.    The '019 Patent was filed with the USPTO on September 20, 2004 as U.S. Application No. 10/944,993 and it issued on April 13, 2010.

9.    The '019 Patent lists the inventors as James W. Moncrief and James J. Martin.

10.    The '193 Patent is titled "System and software of enhanced pharmaceutical operations in long-term care facilities and related methods."

11.    The '193 Patent was filed with the USPTO on June 29, 2010 as U.S. Application No. 12/825,595 and it issued on June 26, 2012.

12.    The '193 Patent lists the inventors as James W. Moncrief and James J. Martin.

13. The '127 Patent is titled "System and software of enhanced pharmaceutical operations in long-term care facilities and related methods."

14. The '127 Patent was filed with the USPTO on March 23, 2012 as U.S. Application No. 13/429,269 and it issued on April 2, 2013.

15. The '127 Patent lists the inventors as James W. Moncrief and James J. Martin.

16. The '256 Patent is titled "System and software of enhanced pharmaceutical operations in long-term care facilities and related methods."

17. The '256 Patent was filed with the USPTO on August 30, 2013 as U.S. Application No. 14/014,796 and it issued on December 17, 2013.

18. The '256 Patent lists the inventors as James W. Moncrief and James J. Martin.

19. The '338 Patent is titled "System and method of enhanced distribution of pharmaceuticals in long-term care facilities."

20. The '338 Patent was filed with the USPTO on November 8, 2013 as U.S. Application No. 14/075,461 and it issued on February 10, 2015.

21. The '338 Patent lists the inventors as James W. Moncrief and James J. Martin.

22. The Patents in Suit claim priority to U.S. Provisional Application No. 60/516,678 filed November 3, 2003, which Tech Pharmacy has stipulated for purposes of this litigation is the priority date for the Asserted Claims.

## F. CONTESTED ISSUES OF FACT AND LAW

### _Plaintiff's Statement of Contested Issues_

Patent Infringement

1. Whether Alixa directly infringes claims 7 and 10 of the '019 Patent.

2. Whether GLC directly infringes claims 7 and 10 of the '019 Patent.

3. Whether GLC indirectly infringes claims 7 and 10 of the '019 Patent by inducing Alixa to directly infringe these claims.

4. Whether Alixa directly infringes claims 5 and 8 of the '193 Patent.

5. Whether GLC directly infringes claims 5 and 8 of the '193 Patent.

6.      Whether Alixa directly infringes claims 1 and 2 of the '127 Patent.

7.      Whether GLC directly infringes claims 1 and 2 of the '127 Patent.

8.      Whether Alixa directly infringes claim 4 of the '256 Patent.

9.      Whether GLC directly infringes claim 4 of the '256 Patent.

10.     Whether Alixa directly infringes claim 1 of the '338 Patent.

11.     Whether Alixa and GLC willfully infringed any of the asserted claims.

12.     Whether claims 7 and 10 of the '019 Patent are invalid as anticipated by or obvious over prior art.

13.     Whether claims 5 and 8 of the '193 Patent are invalid as anticipated by or obvious over prior art.

14.     Whether claims 1 and 2 of the '127 Patent are invalid as anticipated by or obvious over prior art.

15.     Whether claim 4 of the '256 Patent are invalid as anticipated by or obvious over prior art.

16.     The extent to which Tech Pharmacy was damaged by Defendants' patent infringement.


Breach of Contract

1.      Whether Defendants breached the 2009 NDA by, among other things, using and/or sharing Tech Pharmacy's confidential information with Alixa for purposes other than those authorized under the 2009 NDA.

2.      The extent to which Tech Pharmacy was damaged by Defendants' alleged breach of the 2009 NDA.

Fraud in the Inducement of the 2009 NDA

A.      Affirmative Fraud

    1.      Whether Defendants used Tech Pharmacy's confidential information for purposes other than those authorized by the 2009 NDA.

    2.      Whether, at the time they entered into the 2009 NDA, Defendants intended to use Tech Pharmacy's confidential information solely for the purpose of evaluating a business venture between the parties.

    3.      The extent to which Tech Pharmacy was damaged by providing its confidential information to Defendants under the 2009 NDA.

B.      Fraud by Nondisclosure

    1.      Whether Defendants had a duty to disclose to Tech Pharmacy that Defendants were developing a competing remote packaging and dispensing pharmacy.

    2.      Whether Defendants were deliberately silent when they had a duty to speak regarding their development of a competing remote packaging and dispensing pharmacy.

    3.      Whether, by failing to disclose to Tech Pharmacy that Defendants were developing a competing remote packaging and dispensing pharmacy, Defendants intended to induce Tech Pharmacy to agree to the terms of the 2009 NDA.

    4.      The extent to which Tech Pharmacy was damaged by providing its confidential information to Defendants under the 2009 NDA.

Fraud in Procuring Tech Pharmacy's Confidential Information

A.      Affirmative Fraud

    1.      Whether Defendants used Tech Pharmacy's confidential information for purposes other than evaluating a business venture between the parties.

    2.      Whether Defendants intended to use Tech Pharmacy's confidential information solely for the purpose of evaluating a business venture between the parties.

    3.      The extent to which Tech Pharmacy was damaged by disclosing its confidential information to Defendants.

B.      Fraud by Nondisclosure

1.      Whether Defendants had a duty to disclose to Tech Pharmacy that Defendants were developing a competing remote packaging and dispensing pharmacy.

2.      Whether Defendants were deliberately silent when they had a duty to speak regarding their development of a competing remote packaging and dispensing pharmacy.

3.      Whether, by failing to disclose to Tech Pharmacy that Defendants were developing a competing remote packaging and dispensing pharmacy, Defendants intended to induce Tech Pharmacy to disclose confidential information.

4.      The extent to which Tech Pharmacy was damaged by providing its confidential information to Defendants.

Misappropriation of Trade Secrets

1.      Whether the information Defendants gathered from Tech Pharmacy and used in the formation of Alixa constituted a trade secret.

2.      Whether Defendants acquired Tech Pharmacy's trade secrets through breach of a confidential relationship or by improper means.

3.      Whether Defendants used or disclosed Tech Pharmacy's trade secrets without authorization.

4.      The extent to which Tech Pharmacy was damaged by Defendant's misappropriation of Tech Pharmacy's trade secrets.

***Defendants' Statement of Contested Issues***

Defendants reserve the right to supplement these contested issues of fact and law based on forthcoming rulings on the pending motions listed in section I, infra.

1.      Whether Tech Pharmacy has proved by a preponderance of the evidence that Alixa directly infringes the Asserted Claims of the Patents in Suit.

2.      Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC directly infringes the Asserted Claims of the Patents in Suit.

3.      Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC indirectly infringes claims 7, 9, and 10 of the '019 Patent.

4.      Whether Tech Pharmacy has proved by clear and convincing evidence that GLC's alleged infringement of the Patents in Suit was willful.

5.      Whether Tech Pharmacy has proved by clear and convincing evidence that Alixa's alleged infringement of the Patents in Suit was willful.

6.      Whether Tech Pharmacy is entitled to damages to compensate for GLC's and/or Alixa's alleged infringement, if any, and if so, the dollar amount thereof.

7.      Whether Tech Pharmacy is entitled to a permanent injunction against GLC and/or Alixa requiring GLC and/or Alixa to refrain from infringing the Patents in Suit.

8.      Whether Tech Pharmacy has met its burden of proving that the six identified items of alleged proprietary information are trade secrets under Texas common law, the Texas Uniform Trade Secret Act (Tex. Civ. Prac. & Rem. Code. Ann. 134A.002(6)), or the Delaware Uniform Trade Secret Act (Del. Code. § 2001(4)), in that said information was in fact secret, confidential, or proprietary to Tech Pharmacy; Tech Pharmacy took reasonable steps to protect or treat such information as confidential, proprietary, or trade secret; and the alleged proprietary information has independent economic value.

9.      Whether Tech Pharmacy has proved that Alixa, Fillmore, FSI, and/or FSM acquired Tech Pharmacy's alleged trade secrets.

10.     Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC and/or Alixa misappropriated any of Tech Pharmacy's alleged trade secrets.

11.     Whether Tech Pharmacy has proved by a preponderance of the evidence that Fillmore, FSI, and/or FSM misappropriated any of Tech Pharmacy's alleged trade secrets.

12.     Whether Tech Pharmacy has proved that it is entitled to damages to compensate for any Defendant's alleged misappropriation of Tech Pharmacy's alleged trade secrets, if any, and if so, the dollar amount thereof.

13.     Whether Tech Pharmacy has proved that it is entitled to injunctive relief for any Defendant's alleged misappropriation of Tech Pharmacy's trade secrets.

14.     Whether Tech Pharmacy has proved that Fillmore, FSI, and/or FSM had any involvement in the discussions and negotiations leading up to the 2009 non-disclosure agreement Tech Pharmacy claims it was fraudulently induced into signing.

15.     Whether Tech Pharmacy has proved that Fillmore, FSI, and/or FSM are a party to the 2009 NDA.

16.     Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC breached the 2009 NDA.

17.     Whether Tech Pharmacy has proved by a preponderance of the evidence that Fillmore, FSI, and/or FSM breached the 2009 NDA.

18.     Whether Tech Pharmacy has proved that it is entitled to damages to compensate for GLC's alleged breach of the 2009 NDA, if any, and if so, the dollar amount thereof.

19.     Whether Tech Pharmacy has proved that it is entitled to damages to compensate for  Fillmore, FSI, and/or FSM's alleged breach of the 2009 NDA, if any, and if so, the dollar amount thereof.

20.     Whether Tech Pharmacy has proved that it is entitled to injunctive relief for GLC's alleged breach of the 2009 NDA.

21.     Whether Tech Pharmacy has proved that it is entitled to injunctive relief for Fillmore, FSI, and/or FSM's alleged breach of the 2009 NDA.

22.     Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC   fraudulently induced Tech Pharmacy to enter into the 2009 NDA.

23.     Whether Tech Pharmacy has proved by a preponderance of the evidence that Fillmore, FSI, and/or FSM fraudulently induced Tech Pharmacy to enter into the 2009 NDA.

24.     Whether Tech Pharmacy has proved that GLC falsely represented that the 2009 NDA was to be executed solely for the purpose of evaluating a business venture between the parties.

25. Whether Tech Pharmacy has proved that Fillmore, FSI, and/or FSM falsely represented that the 2009 NDA was to be executed solely for the purpose of evaluating a business venture between the parties.

26. Whether Tech Pharmacy has proved that GLC made any material misrepresentations to Tech Pharmacy.

27. Whether Tech Pharmacy has proved that Fillmore, FSI, and/or FSM made any material misrepresentations to Tech Pharmacy.

28. Whether Tech Pharmacy has proved that GLC did not disclose that it was considering all options available to it for obtaining pharmacy services, which included the possibility of developing its own pharmacy.

29. Whether Tech Pharmacy has provided that Fillmore, FSI, and/or FSM did not disclose that they were considering all options available to them for obtaining pharmacy services, which included the possibility of developing their own pharmacy.

30. Whether Tech Pharmacy has established liability of Fillmore, FSI, and/or FSM based on an alter ego theory.

31. Whether Tech Pharmacy has proved that it is entitled to damages to compensate for  GLC's alleged fraudulent inducement, if any, and if so, the dollar amount thereof.

32. Whether Tech Pharmacy has proved that it is entitled to damages to compensate for Fillmore, FSI, and/or FSM's alleged fraudulent inducement, if any, and if so, the dollar amount thereof.

33. Whether Tech Pharmacy has proved by a preponderance of the evidence that GLC committed fraud in procuring Tech Pharmacy's confidential information.

34. Whether Tech Pharmacy has proved by a preponderance of the evidence that Fillmore, FSI, and FSM committed fraud in procuring Tech Pharmacy's confidential information.

35. Whether Tech Pharmacy has proved that it is entitled to damages to compensate for Fillmore, FSI, and/or FSM's alleged fraud in procuring Tech Pharmacy's confidential information, if any, and if so, the dollar amount thereof.

36.     Whether Tech Pharmacy has proved that it is entitled to damages to compensate for GLC's alleged fraud in procuring Tech Pharmacy's confidential information, if any, and if so, the dollar amount thereof.

37.     Whether Tech Pharmacy has proved that its equitable estoppel claim is cognizable under Texas law.

38.     Whether Tech Pharmacy has proved that GLC, Fillmore, FSI, or FSM are equitably estopped from arguing a statute of limitations defense.

39.     Whether Defendants have proved by clear and convincing evidence that the Patents in Suit are invalid for failing to meet one or more of the patent eligibility requirements under 35 U.S.C. § 101.

40.     Whether Defendants have proved by clear and convincing evidence that prior art anticipates the Asserted Claims of the Patents in Suit under 35 U.S.C. § 102.

41.     Whether Defendants have proved by clear and convincing evidence that prior art renders obvious the Asserted Claims of the Patents in Suit under 35 U.S.C. § 103.

42.     Whether Defendants have proved by clear and convincing evidence that the Patents in Suit are invalid due to the on-sale bar provision of 35 U.S.C. § 102(b).

43.     Whether Defendants have proved by a preponderance of the evidence that Tech Pharmacy's non-patent claims are barred by the applicable statutes of limitations, including but not limited to, the following: Del. Code §§ 2006, 8106; Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004, 16.010.

44.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's allegations of infringement are barred by under the doctrine of prosecution history estoppel.

45.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy is not entitled to any relief because any and all harm to Tech Pharmacy was a result of Tech Pharmacy's own intentional, knowing, reckless, and/or negligent acts and/or omissions, or those of third parties, and not a result of any act or omission of Defendants.

46.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy has either failed to mitigate or failed to take appropriate measures to mitigate any alleged damages Tech Pharmacy claims to have suffered.

47.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's claims are barred or limited by the doctrine of unclean hands and/or the doctrine of patent misuse.

48.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's claims are barred under the doctrine of waiver.

49.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's claims are barred or limited under the doctrine of estoppel.

50.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's claims are barred or limited under the doctrine of laches.

51.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy is not entitled to any relief because Tech Pharmacy's claims for relief would unjustly enrich Tech Pharmacy at the expense of Defendants.

52.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy is not entitled to any relief because Defendants' conduct was excused as a result of the conduct of Tech Pharmacy and/or third parties.

53.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy is not entitled to any relief because Defendants acted at all times in good faith with an honest and reasonable belief that their actions were justified and appropriate under the facts and circumstances known and available at the time.

54.     Whether Defendants have met their burden of proof in support of their contention that Tech Pharmacy's claims are barred or limited because Tech Pharmacy has not sustained any damages or injury caused by Defendants.

55.     Whether Defendants have met their burden of proving that Tech Pharmacy's claims are barred in whole or in part by license or exhaustion, express or implied, and/or restrictions on double recovery.

56.     Whether Defendants have met their burden of proving that Tech Pharmacy's non-patent claims are barred in whole or in party by reason of the doctrine of election of remedies.

57.     Whether Defendants have met their burden of proving that Tech Pharmacy's claims for relief are barred in whole or in part because Defendants fully performed any and all contractual and other duties, if any, owed to Tech Pharmacy.

58.     Whether Defendants have met their burden of proving that Tech Pharmacy's claims are barred or limited due to Tech Pharmacy's failure to comply with the requirements of 35 U.S.C. § 287.

59.     Whether Defendants have met their burden of proving that Tech Pharmacy's claims are barred or limited due by the doctrine of intervening rights arising under 35 U.S.C. § 252.

60.     Even if infringement of the Asserted Claims of the Patents in Suit is found, whether Tech Pharmacy is entitled to lost profits damages because apportionment principles were not properly incorporated into the lost profits analysis.

61.     Even if infringement of the Asserted Claims of the Patents in Suit is found, whether Tech Pharmacy is entitled to reasonable royalty damages because apportionment principles were not properly incorporated into the reasonable royalty analysis.

62.     Even if Tech Pharmacy prevails on its non-patent claims, whether Tech Pharmacy is entitled to lost profits damages because apportionment principles were not properly incorporated into the lost profits analysis.

63.     Even if Tech Pharmacy prevails on any of its non-patent claims, whether Tech Pharmacy is entitled to disgorgement of profits by Defendants because either no profits have been realized or because Tech Pharmacy has not performed the proper analysis for such an award.

64.     Even if Tech Pharmacy prevails on any of its non-patent claims, whether Tech Pharmacy is entitled to disgorgement of any alleged gain or unjust enrichment of Alixa because this alleged gain is not a proper measure of damages under any cause of action in the case.

65.  Whether to the extent Tech Pharmacy prevails on any non-patent claim allowing for exemplary damages, can it meet the burden of proof and limitations/requirements of Tex. Civ. Prac. & Rem. Code §§ 41.001-.012.

66.  Whether any award of exemplary damages to Tech Pharmacy in this matter is limited by Tex. Civ. Prac. & Rem. Code §§ 41.001-.012.

## G.   LIST OF WITNESSES

~~Plaintiff's Witness List is attached hereto as Exhibit 1.~~

~~Defendants' Witness List is attached hereto as Exhibit 2.~~

## H.   LIST OF EXHIBITS

~~Plaintiff's Witness List is attached hereto as Exhibit 3.~~

~~Defendants' Witness List is attached hereto as Exhibit 4.~~

## I.   LIST OF ANY PENDING MOTIONS

- Motion to Exclude and/or Strike Testimony of Defendants' Designated Expert Dr. Tim A. Williams by Tech Pharmacy (Dkt. 177)

- Motion to Exclude and/or Strike Testimony of Defendants' Designated Expert Witness David Kvancz by Tech Pharmacy (Dkt. 178)

- Motion to Exclude and/or Strike Testimony of Defendants' Designated Witness Christopher J. Thomsen by Tech Pharmacy (Dkt. 179)

- *Daubert* Motion to Exclude Testimony of Plaintiff's Expert Keith R. Ugone on Disgorgement Damages by Defendants (Dkt. 184)

- Motion for Sanctions for Spoliation by Tech Pharmacy (Dkt. 190)

- Motion for Relief Arising from Discovery Abuses During the Deposition of Defendants' Opinion Counsel David B. Walker by Tech Pharmacy (Dkt. 191)

- Motion to Compel Defendants to Produce Improperly Clawed-Back Documents Previously Produced by a Non-Party by Tech Pharmacy (Dkt. 192)

- Amended Motion for Partial Summary Judgment that the Patents in Suit are Invalid Under 35 U.S.C. § 101 by Defendants (Dkt. 197)

- Motion for Partial Summary Judgment Regarding Plaintiff's Non-Patent Claims Based on Running of the Applicable Statues of Limitations by Defendants (Dkt. 218)

- Motion for Partial Summary Judgment regarding Patent Invalidity Under 35 U.S.C. 102(b) (On-Sale Bar Affirmative Defense) by Defendants (Dkt. 220)

- Motion for Partial Summary Judgment as to Plaintiff's Fraud Claims, Equitable Estoppel Claims, and all Remaining Claims Against the Fillmore Entities by Defendants (Dkt. 221)

- Motion to Exclude Testimony of Tech Pharmacy's Expert Samuel H. Russ by Defendants (Dkt. 234)

- Motion for Leave to Supplement their Invalidity Contentions with Additional Information Concerning the Original Disclosed Envoy Prior Art by Defendants (Dkt. 244)

## J.   PROBABLE LENGTH OF TRIAL

The probable length of trial is ten days.

As contained in Exhibit 5 (titled Stipulated Trial Agreement), the parties propose a limitation of 30 trial hours per side, exclusive of jury selection, opening statements, and closing arguments, with either party able to add to this time upon a showing of good cause.  If the Court is so inclined, the parties have discussed that it may make sense to adjourn for the intervening holiday weekend at a time before the end of the day Friday, September 1, 2017 in consideration of jurors who may have holiday plans.  In that event, the parties would suggest an adjournment at 3:00 pm on Friday, September 1, 2017 or at another time that is convenient to the Court.

## K.   MANAGEMENT CONFERENCE LIMITATIONS

At the Rule 16 conference, the Court ruled that the time limit on the length of trial is ten days.  (Mgmt. Conf. Tr., 50, Apr. 16, 2016.)

In addition to the limitations from the Court, the parties propose that in order to facilitate a trial that is more orderly and efficiently utilizes the time and resources of the Court,

jury and parties, the Court should adopt the proposals contained herein at Exhibit 5 (titled Stipulated Trial Agreement) as applying to the trial of this case.

## L.   CERTIFICATIONS

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)   Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)   Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3)   The foregoing document should be filed under seal because it contains material designated as confidential under the Order Governing Proceedings (Dkt. 21) and the Second Amended Protective Order (Dkt. 144);

(4)   Each exhibit in the List of Exhibits herein:

a)   is in existence;

b)   is numbered; and

c)   has been disclosed and shown to opposing counsel.

With respect to exhibits, the parties stipulate and agree among themselves that the deadline for which the parties are to comply with the following provision of the Court's Amended Docket Control Order [Dkt. #263]:

"Exchange Exhibits and deliver copies to the court. At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies."

be extended from July 19, 2017 to July 25, 2017.  The parties have jointly filed an agreed motion for extension of this deadline (Dkt. 273).

Approved as to form and substance:

Attorneys for Plaintiff(s):   ___/s/ Maria Wyckoff Boyce_____

Attorneys for Defendant(s):   ___/s/ Thomas M. Melsheimer _____

**SIGNED this 24th day of August, 2017.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE