# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TECH PHARMACY SERVICES, LLC | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:15-CV-766 |
| ALIXA RX LLC, GOLDEN GATE | § | JUDGE MAZZANT |
| NATIONAL SENIOR CARE LLC d/b/a | § | |
| GOLDEN LIVINGCENTERS, and | § | |
| FILLMORE CAPITAL PARTNERS, LLC | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Tech Pharmacy Services, LLC's ("Tech Pharmacy") Motion for Attorneys' Fees (Dkt. #386).  The Court, having considered the motion and relevant pleadings, finds that the motion should be granted.

## BACKGROUND

Tech Pharmacy filed suit against Defendants Alixa Rx LLC, Golden Gate National Senior Care LLC d/b/a Golden LivingCenters, Fillmore Capital Partners, LLC, Fillmore Strategic Investors, LLC, and Fillmore Strategic Management, LLC (collectively, "Defendants") asserting claims for patent infringement, breach of contract, fraud, equitable estoppel, and misappropriation of trade secrets (Dkt. #83).  Throughout the litigation, Tech Pharmacy was represented by Hogan Lovells and Potter Minton.  In September 2017, the parties proceeded to trial on these issues and the jury found that Defendants breached the 2009 Confidentiality Agreement ("2009 Agreement") and awarded Tech Pharmacy fifteen million dollars in damages.

Because Tech Pharmacy prevailed on its breach of contract claim, the issue of attorneys' fees was submitted to the jury.[1] The jury found that Tech Pharmacy's reasonable attorneys' fees and expenses for their necessary services was two million dollars (Dkt. #378). Subsequently, on October 31, 2017, Tech Pharmacy submitted this motion for attorneys' fees arguing that the request for attorneys' fees needs to be made through a motion rather than submitted to the jury (Dkt. #386). Defendants filed a response to the motion on November 14, 2017 (Dkt. #389). Tech Pharmacy filed its reply on November 21, 2017 (Dkt. #390), and Defendants filed their sur-reply on November 30, 2017 (Dkt. #393).

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they are owed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (applying substantive federal law because it is a federal cause of action but also discussing Texas's adoption of the lodestar method in other cases). The movant may calculate their reasonable and necessary attorneys' fees using either the lodestar method or the market value method. *Id.*; *AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 515 (Tex. App.—Fort Worth 2009, no pet.). There are certain causes of action, which require the use of the lodestar calculation. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). However, even if it is not required, if the movant produces evidence of the lodestar calculation, courts typically apply the lodestar calculation. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).

---

[1] Based on representations and agreements by the parties, the Court bifurcated the trial to determine liability first and subsequently determine attorneys' fees and exemplary damages, if necessary.

Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process.[2] *El Apple*, 370 S.W.3d at 760 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)). First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiplies the two together to get the base fee or lodestar. *Id.* (citing *Gonzales*, 72 S.W.3d at 412). Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[3]

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Gonzales*, 72 S.W.3d at 412 (citing *Johnson*, 488 F.2d at 717–19). "If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments." *Id.* (citing *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The lodestar is presumptively reasonable, and should be modified only in exceptional cases. *El Apple*, 370 S.W.3d at 765.

## ANALYSIS

Tech Pharmacy argues that a request for attorneys' fees in this case needs to be made by a Rule 54 motion. Accordingly, Tech Pharmacy asks the Court to award $7,304,454.15[4] in

---

[2] Although state law applies, Texas courts occasionally "draw on the far greater body of federal court experience with lodestar." *El Apple*, 370 S.W.3d at 764–65.

[3] Texas courts also use a similar set of factors, the *Arthur Andersen* factors, to determine reasonableness. However, when courts use the lodestar calculation they tend to use the *Johnson* factors.

[4] In Tech Pharmacy's motion, Tech Pharmacy consistently claimed the award is $7,304,454.15; however, it once claimed the award was $7,307,697.39. The Court will use $7,304,454.15 as the amount that Tech Pharmacy is seeking. This is the number that is consistent with the evidence Tech Pharmacy supplied.

attorneys' fees, although their total lodestar calculation comes out to $9,137,151.30. Defendants argue that the attorneys' fees were properly in front of the jury, but even if not, Tech Pharmacy is not entitled to more than the $2,000,000.00 that the jury awarded. The Court will address whether Tech Pharmacy is entitled to attorneys' fees, if attorneys' fees were appropriately before the jury or if it is appropriate for the Court, and then will address the amount of fees sought.

## I.     Entitlement to Attorneys' Fees

Tech Pharmacy argues that the terms of the contract and additionally the Texas Civil Practice and Remedies Code Section 38.001 entitle it to attorneys' fees. Defendants contend that Tech Pharmacy is not entitled to attorneys' fees under Texas Civil Practice and Remedies Code Section 38.001 because Tech Pharmacy did not plead it and did not present the claim to Defendants. However, Defendants admit that Tech Pharmacy is entitled to attorneys' fees under the terms of the contract (Dkt. # 389 at p. 18 ("Finally, although *Tech Pharmacy may recover attorneys' fees under the 2009 [Agreement]*, Tech Pharmacy has failed to satisfy multiple procedural requirements to recover attorneys' fees under Section 38.001 of the Texas Civil Practice and Remedies Code.") (emphasis added)).

"Under Texas law, attorney's fees are recoverable as a cost of collection only if authorized by statute or contract." *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037 (5th Cir. 2014) (citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)). Here, both a statute and the contract entitle Tech Pharmacy to attorneys' fees; however, Tech Pharmacy does not need to use both. The terms of the 2009 Agreement, on their own, are enough to recover attorneys' fees. *See Mundy v. Knutson Const. Co.*, 294 S.W.2d 371, 373 (Tex. 1956) ("Since the wording of our bond provides for payment of 'all costs and expenses' incurred in the prosecution of a suit or suits on a breach of the construction contract, or on that very bond, we feel attorneys'

fees so incurred was a proper measure of recovery."). As such, because Tech Pharmacy is entitled to attorneys' fees under the terms of the contract, the Court need not address whether Tech Pharmacy waived its ability to recover attorneys' fees under Texas Civil Practice and Remedies Code Section 38.001.

## II.     Application of Rule 54

Tech Pharmacy argues that under Federal Rule of Civil Procedure 54, its claim for attorneys' fees under the terms of the 2009 Agreement must be made by a motion. Defendants claim that the terms of the contract contemplate a jury deciding attorneys' fees. Under Federal Rule of Civil Procedure 54(d), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."[5] Accordingly, it is crucial to determine whether attorneys' fees are an element of damages under the 2009 Agreement.

The Court will first look to Tech Pharmacy's claim for damages according to the terms of the contract. As an example of types of claims that are typically proved at trial as an element of damages, the Advisory Committee Notes lists fees that are "sought under the terms of a contract." FED. R. CIV. P. 54(d), Advisory Committee Notes. However, the Advisory Committee Notes do not state that when a party is seeking damages under the terms of a contract, the party must always prove the attorneys' fees at trial as an element of damages.[6] *Id.* As such, when a party is seeking attorneys' fees under a contract, it is "[t]he language of the contract and the nature of the claim

---

[5] While the Court uses Texas state law to determine the award of fees and the reasonableness of the fees, it still uses federal law for procedure. Federal Rule of Civil Procedure 54 falls into this procedural category.

[6] The Texas Supreme Court provided an example of when the damages under the terms of the contract will include attorneys' fees: "[Plaintiff's] underlying breach of contract suit against [Defendant] involved allegations of a failure to pay attorney's fees for prior representation. . . . the fees comprising the breach-of-contract damages are [compensatory damages.]" *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 175.

[that] are the dispositive factors concerning whether the fees are an element of damages or collateral litigation costs." *Richardson*, 740 F.3d at 1039.

The Court looks to the language of the contract to determine whether the attorneys' fees in this case are an element of damages or if they are collateral litigation costs. *See id.* The contract states:

> If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover costs of court and reasonable attorneys' fees from the other party, which fees shall be in addition to any other relief that may be awarded, and which fees may be set by the court in the trial of such action or may be enforced in a separate action for that purpose.

(Dkt. #386 at p. 3; Dkt. #389 at p. 3 (citing PX115 at § 10)).  Tech Pharmacy argues that the language of the 2009 Agreement makes clear that the parties contemplated the Court would determine attorneys' fees and were collateral to damages for breach of the contract.  On the other hand, Defendants contend that the language shows the parties considered the possibility that the jury would determine attorneys' fees because of the permissive language in the contract.

The contractual language is important to determine whether the claim is an element of damages, not whether the parties contemplated the possibility of a jury determining fees.[7]  *See* FED. R. CIV. P. 54(d); *Richardson*, 740 F.3d at 1039.  In the 2009 Agreement, the parties identified that attorneys' fees "shall be in addition to any other relief that may be awarded," and additionally contemplated that the award may be sought "in a separate action."  (Dkt. #386 at p. 3; Dkt. #389 at p. 3 (citing PX115 at § 10)).  This language indicates that the attorneys' fees under this contract

---

[7] The parties engage in argument regarding the fact that the 2009 Agreement contemplates the jury determining attorneys' fees.  While this is not why the language of the 2009 Agreement is important, the Court will briefly address the issue.  The Court agrees that the contract leaves open the possibility that the jury may determine fees; however, Defendants have not provided the Court with a case to suggest that this fact changes the effect of Federal Rule of Civil Procedure 54, and the Court has found none.

are "expressly distinguished from the damages that [Tech Pharmacy] incur[red]" from enforcing or interpreting the provisions of the contract.[8] *Richardson*, 740 F.3d at 1038. As such, "[t]he fees are not an 'independent ground of recovery.' [Instead, t]hey are costs of collection or costs incurred to" enforce or interpret the contract. *Id.* Because the attorneys' fees are not compensation for the underlying harm, but are fees awarded for counsels' services according to the terms of the 2009 Agreement, the attorneys' fees are not an element of damages. Therefore, the language of the 2009 Agreement supports Tech Pharmacy's contention that the request for attorneys' fees must be made by motion according to the terms of Rule 54.

Further, the nature of the claim supports the proposition that attorneys' fees in this case are collateral litigation costs as opposed to an element of damages. Tech Pharmacy was successful on its claim for breach of contract and the damages it was awarded were based on the harm proximately caused by Defendants' breach. Tech Pharmacy's attorneys' fees are not part of the harm it incurred. *See Richardson*, 740 F.3d at 1037 (quoting *In re Nalle*, 406 S.W.3d at 172). Attorneys' fees, in this case, are a separate right owed based on the terms of the contract. Because the attorneys' fees are not an element of the claim, based on the language of the 2009 Agreement and the nature of the claim, the request for attorneys' fees must be made by a motion pursuant to Rule 54, and is an issue that is proper for the Court to decide.

## III.    Amount of Attorneys' Fees

Tech Pharmacy claims that "the total fees for professional services that Tech Pharmacy incurred is $14,608,908.29." (Dkt. #386 at p. 11 (citing Dkt. #387, Exhibit 1 at p. 34)). However, Tech Pharmacy "requests an award of [fifty percent] of this amount, or a total of

---

[8] This is different than the example provided by the Texas Supreme Court in *In re Nalle*. *See* 406 S.W.3d at 175. The breach of contract damages are not based on failure to pay attorneys' fees, the damages are based on violating the confidentiality agreement.

$7,304,454.15. . . . This discount reflects Tech Pharmacy's reasonable segregation of its state-law claims from its federal patent infringement cause of action." (Dkt. #386 at p. 11). Defendants claim the amount of attorneys' fees should not exceed $2,000.000.00. The Court will analyze Tech Pharmacy's request using the lodestar analysis because this is the calculation Tech Pharmacy chose to prove its fees. *See City of Laredo*, 414 S.W.3d at 736.

### A. Hours Reasonably Expended.

Tech Pharmacy asserts that "[t]he total attorney hours expended on this case over a period of almost 2 years is 29,103.7." (Dkt. #386 at pp. 11–12). Because Tech Pharmacy only prevailed on its breach of contract claim, Tech Pharmacy represents that this total should be reduced by half, leaving "14,551.85 of these hours . . . [that] are compensable." (Dkt. #386 at p. 12). Tech Pharmacy presents that the hours expended are divided as follows:

| Hogan Lovells | | Potter Minton | |
|---|---|---|---|
| Partners: | 3,937.35 | Partners: | 320.45 |
| Associates: | 7,673.8 | Associates: | 188.6 |
| Staff: | 2,135.8 | Staff: | 295.85 |
| **Total:** | **13,746.95** | **Total:** | **804.9** |

(Dkt. #386 at p. 14). Defendants assert that the evidence does not support the amount of hours Tech Pharmacy presented because: (1) a fifty percent apportionment is inappropriate; (2) counsel engaged in improper block billing; and (3) Tech Pharmacy did not provide evidence of billing judgment. The Court will address each argument in turn.

### 1. Apportionment

Defendants argue that Tech Pharmacy did not meet its burden in (a) establishing that fifty percent of the work would have still been done if the patent infringement claims were not asserted and (b) establishing that all of the state law claims are intertwined. Tech Pharmacy maintains that it met its burden and the evidence supports its apportionment.

It is the party that is seeking attorneys' fees burden to show that the opposing party is only being charged with fees on a claim that allows for recovery of such fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (citing *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)). "Sufficient evidence includes, at a minimum, evidence 'of the services performed, who performed them and at what hourly rate, when they were performed and how much time the work required.'" *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (quoting *El Apple*, 370 S.W.3d at 763). The Court will address each of Defendants apportionment arguments separately.

### a. Apportionment of Patent Claims and State Law Claims

Defendants first argue that Tech Pharmacy did not meet its burden because the evidence does not support attributing fifty percent of the work to the state law claims and fifty percent to the patent claims. As evidence to support Tech Pharmacy's apportionment, Tech Pharmacy submitted: (i) bills; (ii) an affidavit from J. David Cabello, Tech Pharmacy's attorneys' fees expert, with attached exhibits; (iii) and an affidavit from Maria Boyce, lead counsel on the case. The Court will look to each piece of evidence that Tech Pharmacy submitted.

### i. Bills

Defendants assert that the bills are too heavily redacted to support Tech Pharmacy's claim that fifty percent of the work would have been done even if Tech Pharmacy had not pursued its patent claims. In fact, Defendants maintain that the bills are too heavily redacted to support the reasonableness of any hours Tech Pharmacy's counsel worked. Tech Pharmacy responds that the bills in connection with the remainder of the evidence supports the suggested allocation.

The submission of bills is an appropriate form of evidence to support a fee award, although they are not always necessary. *Playboy Enters., Inc. v. Sanchez-Campuzano*, No. M-01-226, 2012

WL 12877432, at *4 (S.D. Tex. Apr. 19, 2012) (quoting *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *El Apple*, 370 S.W.3d at 763; *City of Laredo*, 414 S.W.3d at 736. If bills are submitted, redaction is acceptable as long as the Court can meaningfully review the fee request. *See Long*, 442 S.W.3d at 255 (citing *El Apple*, 370 S.W.3d at 764); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009). Accordingly, the bills should provide proof of "the nature of the work, who performed the services and his rate, approximately when the services were performed, and the number of hours worked." *Brant Oilfield Mgmt. & Sales, Inc. v. Mountwest, Inc.*, 2016 WL 3574669, at *5 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.); *accord Randolph*, 634 F. Supp. 2d at 800. Further, bills should be excluded as evidence if the redacted entry does "not provide sufficient information to classify and evaluate the activities and hours expended." *Randolph*, 634 F. Supp. 2d at 800.

Here, while the bills presented to the Court are redacted, the bills still demonstrate, at the very least, the activities that the attorneys engaged in and the hours expended on such activities. Accordingly, the bills do not need to be excluded. However, the Court recognizes that the bills, on their own, do not provide sufficient information to support the contention that fifty percent of Tech Pharmacy's counsel's work would have been performed even if it did not assert its patent claims. *See Brant Oilfield.*, 2016 WL 3574669, at *5. While the bills demonstrate the activities performed, every entry does not, on its own, demonstrate which claim the activity furthered.

### ii. Cabello Affidavit [9]

Defendants argue that Cabello's affidavit is conclusory. Defendants also contend that the affidavit should be stricken from the record for not meeting the requirements of Federal Rule of

---

[9] Cabello also testified during the trial the Court held on attorneys' fees, and the Court takes judicial notice of that testimony.

Evidence 702 because it is not based on sufficient facts or data and is not the product of reliable principles or methods.

Cabello reviewed Tech Pharmacy's redacted bills, the same bills submitted to this Court (Dkt. #387, Exhibit 1 at p. 32). Cabello also used his experience, judgment, analyzed other cases that involved patent infringement claims and breach of contract claims, and reviewed the task estimate (Dkt. #387, Exhibit 1 at pp. 33–34 (citing Dkt. #387, Exhibit 1 at p. 21)). Finally, Cabello reviewed the Court's docket in this case. Trial Tr., at 46:24–47:4. Based on these facts and data, Cabello determined that a fifty percent apportionment was consistent with the work done in this case and that is supported by the tasks generally performed in these types of cases (Dkt. #387, Exhibit 1 at p. 35 ("I have also considered the tasks that are typically performed in connection with a patent infringement case and tasks that are typically performed in connection with a breach of contract claims [sic]. . . . As such, I have apportioned [fifty percent] of the professional fees to the breach of contract claims and [fifty percent] to the patent infringement claims. This generally comports with the task estimate provided by Tech Pharmacy's lead trail [sic] counsel."));[10] Trial Tr., at 46:24–47:4 ("I feel that there's enough information in the redacted bills, when you view them -- not just in a vacuum, but when you view them together with the Court's docket, and you review them with what is being filed with the Court, you come to understand what the parties are working on."). As such, the Court finds that Cabello's opinions are based on sufficient facts and data and that he used reliable principles and methods to reach his conclusions in this case. Therefore, the Court does not strike his affidavit from the record.

_____

[10] Defendants argue that a fifty percent allocation is contrary to the task estimate for a variety of reasons, including that the breach of contract claim is allocated only two percent and there are several items that are solely relevant to the patent claims. However, Defendants fail to acknowledge that several of the tasks on the list are attributable to both the state law claims and the patent infringement claims. Further, the two percent allocated to the breach of contract claim does not equate to all the work completed on the breach of contract claims, but instead work that can be attributed only to breach of contract.

### iii. Boyce Affidavit

Defendants again argue that Boyce's self-serving and conclusory affidavit should be stricken because it fails to meet the requirements of Federal Rule of Evidence 702.

Tech Pharmacy submitted Boyce's affidavit, which states:

> There was also significant overlap between the patent infringement and validity issues on the one hand and the state-law claims on the other. Based on my experience as a trial attorney and my role as lead counsel in this case, it is my judgment that at least half of the work performed in this case would have been necessary without the patent issues.

(Dkt. #387, Exhibit 2 at p. 3). "[I]t is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable." *RM Crowe Prop. Co. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.) (citing *Tony Gullo Motors*, 212 S.W.3d at 314 ("an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim.")); *accord Rialto Capital Advisors, LLC v. Lewis*, 2013 WL 1701590, at *5 (E.D. Tex. Apr. 18, 2013) (citing *Tex. Commerce Bank v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999)). While the Court notes that Boyce's affidavit could have provided more reasoning on her fifty percent allocation, the Court does not strike the affidavit from the record.

### iv. Totality of the Evidence

The Court is also an expert on reasonableness of fees and may use its own experience in deciding a fee award. *Kondos v. Allstate Lloyds*, 2005 WL 1004720, at *18 (E.D. Tex. Apr. 25, 2005) (citing *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Aquila Sw. Pipeline, Inc. v. Harmony Expl., Inc.*, 48 S.W.3d 225, 241 (Tex. App.—San Antonio 2001, pet. denied); *Matthiessen v. Schaeffer*, 897 S.W.2d 825, 827 (Tex. App.—San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995)); *see also Mesa*

*Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted); *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 4:15-cv-828, 2017 WL 1030313, at *7 (E.D. Tex. Mar. 17, 2017) (citations omitted). The Court agrees, based on its review of the evidence, on its experience, and on the Court's knowledge of this case, that Tech Pharmacy's assertion that fifty percent of the work would have been necessary even if Tech Pharmacy had not asserted its patent infringement claims is correct. As such, the Court finds a fifty percent apportionment is reasonable and a proper allocation in this case.

### b. State Law Claims

Defendants additionally argue that the amount of hours expended is not reasonable because Tech Pharmacy did not prevail on all of its state law claims as the jury only found that Defendant breached the 2009 Agreement. Tech Pharmacy asserts that it can recover for the hours spent on all of the state law claims because they are inextricably intertwined with the breach of contract claim. Defendants argue that the jury verdicts suggest that the claims are separate because they only found that Defendants were liable for breach of contract and only awarded Tech Pharmacy 1/3 of the attorneys' fees it requested.

A party seeking attorneys' fees is "required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors*, 212 S.W.3d at 311. However, there is an exception to the duty to segregate when the fees are inextricably intertwined. *Id.* at 313–14. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.*

Here, the state law claims are mostly inextricably intertwined. There was significant overlap between the elements and facts of all the state law claims. The state law claims shared the

same issue, "whether Defendants used Tech Pharmacy's information for any unauthorized purpose—*i.e.*, any purpose not expressly allowed by the 2009 [Confidentiality Agreement]." (Dkt. #386 at p. 13). Further, Tech Pharmacy represented that "[m]ost of the discovery on the state law claims would have been necessary even if this had been exclusively a breach of contract action." (Dkt. #386 at p. 13). However, in the task estimate, Tech Pharmacy was able to allocate five percent of the hours expended to the trade secret misappropriation claim and two percent to the fraud claim (Dkt. #387, Exhibit 1 at p. 21). Accordingly, the Court will reduce the total number of hours worked by seven percent, but the Court finds the remaining hours are inextricably intertwined.

### 2. Block Billing

Defendants also challenge the billing statements because the statements include block billing, which Defendants assert is insufficient to support Tech Pharmacy's claim for attorneys' fees. Tech Pharmacy responds that block billing does not automatically result in a reduction.

Block billing is the practice of including "the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (quoting *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004)). The underlying concern with block billing is that the information provided will be so general that it will not be sufficient documentation to determine if the number of hours billed by counsel is reasonable. *See Permian Power Tong, Inc. v. Diamondback E&P, LLC*, No. 12-16-92-CV, 2017 WL 2588158, at *14 (Tex. App.—Tyler May 31, 2017) *judgment set aside on other grounds, opinion not vacated sub nom.*, 2017 WL 2824311 (Tex. App.—Tyler June 30, 2017); *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 (S.D. Tex. 2011). "If the applicant's documentation of the hours

claimed is vague or incomplete, the district court may reduce or eliminate those hours." *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (quotations and citations omitted).

Upon review of the bills submitted to the Court, the Court finds that Hogan Lovells[11] engaged in block billing. Although, Hogan Lovells itemized tasks, Hogan Lovells did not always itemize time on a per-task basis. Here, "too many entries lump together tasks in such a way that it is impossible to tell whether, for any particular task, the number of hours spent and claimed were reasonable." *Fralick*, 2011 WL 487754, at *5. Because of the block billing, the billing statements do not provide the degree of specificity needed, which makes it difficult to determine whether the time spent by Hogan Lovells on each specific task was reasonable. Accordingly, the Court reduces the number of hours billed by Hogan Lovells by six percent.

### 3. Billing Judgment

Defendants argue Tech Pharmacy did not submit any evidence that its counsel used billing judgment. Tech Pharmacy responds that Boyce's affidavit demonstrated the use of billing judgment.

The party seeking fees has "the burden of showing . . . that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006)); s*ee also El Apple*, 370 S.W.3d at 762–63. Billing judgment is defined as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F. 3d at 799; s*ee also El Apple*, 370 S.W.3d at 762–63. Any "'excessive, duplicative, or inadequately documented time should be

---

[11] After a review of the bills submitted by Potter Minton, Potter Minton generally did not engage in block billing and properly itemized their tasks and time spent on a per-task basis, which allowed the Court to assess the reasonableness of the hours spent.

eliminated from an attorney's fee award.'" *Montano v. Orange Cty., Tex.*, No. 1:13-cv-611, 2015 WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (quoting *Leonard v. Louisiana*, No. 07-813, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013)); *see also El Apple*, 370 S.W.3d at 762–63. "'The hours surviving this vetting process are those reasonably expended on the litigation.'" *Id.* (quoting *Leonard*, 2013 WL 3558291, at *3); *see also El Apple*, 370 S.W.3d at 762–63.

Upon review of Boyce's affidavit, she does not refer to "a single minute that was written off as unproductive, excessive, or redundant." *Champion v. ADT Sec. Servs., Inc.*, No. 2:08-cv-417-TJW, 2010 WL 4736908, at *6 (E.D. Tex. Nov. 16, 2010)*; see also El Apple*, 370 S.W.3d at 762–63. The Court acknowledges that Boyce assigned work to the lowest paying individual who could handle the assignment in the most efficient manner, but this fails to account for writing off any time that was unproductive, excessive, or redundant. Further, Hogan Lovells's bills themselves do not show that any reduction was made. The bills submitted by Potter Minton indicate reductions made to each bill for "payments/adjustments;" however, Tech Pharmacy did not produce any evidence to suggest that these were adjustments made based on work that was unproductive, excessive, or redundant. As such the adjustments, on their own, do not show that Potter Minton exercised billing judgment. Accordingly, the Court reduces the number of hours billed by Hogan Lovells and Potter Minton by twelve percent (six percent from Potter Minton's hours and six percent from Hogan Lovells's hours) to account for the failure to provide evidence of billing judgment. *El Apple*, 370 S.W.3d at 762 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (explaining "a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees. Charges for duplicative excessive, or inadequately documented work should be excluded.")).

## B. Hourly Rate

Tech Pharmacy asserts that the reasonable hourly rate for its counsel is as follows:

| Hogan Lovells | | Potter Minton | |
|---|---|---|---|
| Partners: | $860.00 | Partners: | $600.00 |
| Associates: | $631.00 | Associates: | $450.00 |
| Staff: | $275.00 | Staff: | $150.00 |

(Dkt. #386 at p. 10 (citing Dkt. #387, Exhibit 1 at pp. 29–30)). Tech Pharmacy maintains that these rates are consistent with the rates of similarly situated attorneys. Tech Pharmacy acknowledges that while the rates are on the higher end of reasonable rates, this case warranted the higher rates because of the complex nature of the suit and the amount of time required in this case. Defendants argue that these rates are too high for a simple breach of contract claim, and the fact that these rates are consistent with similarly situated attorneys in intellectual property cases bears no weight on the current case.

While Defendants contend that the Court should use the reasonable rate in the community for breach of contract cases, because that is what Tech Pharmacy prevailed on at trial, it did not provide any case law, nor did the Court find any, to suggest that this is the proper inquiry. The case law suggests that "[t]he reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "Similar services" is not limited to the prevailing claim. This case was never a simple contract case. This is a case with close to 400 docket entries, several dispositive and discovery motions, and a three-week jury trial. Tech Pharmacy sued Defendants not only for breach of contract, but also for patent infringement, misappropriation of trade secrets, fraud, and equitable estoppel. The services that Tech Pharmacy's attorneys provided

were for all of these claims, not just for the breach of contract claim. As such, the Court will look to evidence regarding fees in similar cases offering similar services.

Cabello, Tech Pharmacy's expert, compared the rates Tech Pharmacy's counsel charged with the 2015 AIPLA *Report of the Economic Survey* and determined that the hourly rates, while on the higher end, were reasonable for cases of this nature (Dkt. #387, Exhibit 1 at p. 35). Further, he determined larger, national firms typically run on the higher end[12] of what was reasonable and that due to the complexity of the case that a large, national firm was necessary for adequate representation (Dkt. #387, Exhibit 1 at p. 35). The Court finds that due to nature of this case, the hourly rate charged by Tech Pharmacy's counsel is reasonable and necessary.

### C. Johnson Factors

Tech Pharmacy maintains that several *Johnson* factors are already subsumed into the lodestar analysis in this case to validate the higher hourly rates. Tech Pharmacy does not argue that any of the other factors support an increase in the fee award. The Court agrees. As such, none of the *Johnson* factors support increasing the attorneys' fees in this case.

Defendants argue that the amount Tech Pharmacy recovers for its attorney's fees should be reduced, essentially based on the first and eighth *Johnson* factors,[13] because Tech Pharmacy failed to provide evidence of billing judgment, engaged in block billing, and recovered less than five percent of the amount that it sought.

"After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant Johnson factors not already included in the lodestar." *Shipes*, 987 F.2d at 320. The Court must be careful when applying the *Johnson* factors to make sure "not

---

[12] Cabello determined that while Hogan Lovells is on the high end of what is reasonable for firms of all sizes, Hogan Lovells charged less than national firms of comparable size (Dkt. #387, Exhibit 1 at p. 35).

[13] Defendants do not specify which factors they are arguing under; however, the Court determined that Defendants arguments fit best into the first and eighth factor.

to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id.* "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Id.* If a factor is presumably considered in the lodestar amount, the Court may still make an adjustment based on that factor; however, only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

Here, the Court has already accounted for the block billing and billing judgment as part of the lodestar amount; accordingly, Defendants only remaining argument is that Tech Pharmacy recovered less than five percent of the amount they sought. This is a *Johnson* factor that is presumably reflected in the lodestar amount, but if there are exceptional circumstances the Court may still adjust based on this factor.

The Fifth Circuit has instructed that "while the district court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce . . . [an] attorney's fee award solely on the basis of the amount of damages obtained." *Black*, 732 F.3d at 503; *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("While a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award."). Defendants ask for this reduction simply because Tech Pharmacy recovered less than they requested. As such, the Court will not reduce the fee award based solely on the amount of damages Tech Pharmacy obtained.

### D. Calculation

Tech Pharmacy asks the Court for attorneys' fees in the total amount of $7,304,454.15; however, the actual lodestar calculation is $9,137,151.30, prior to reductions. As such, the Court

will apply the reductions it deemed appropriate to determine if the reductions bring the lodestar amount below the requested amount. The Court will apply three reductions to the amounts owed to Hogan Lovells: (1) the seven percent attributable solely to the trade secret misappropriation and fraud claims as seen in the task report; (2) six percent reduction for block billing; and (3) six percent reduction for lack of billing judgment. The Court will apply the reductions evenly between the three types of employees.[14] The calculation is as follows:

|  | Initial | Percent Reduced | Reduced Hours | Hours X Rate |
|---|---|---|---|---|
| Partners: | 3,937.35 | 6% | 3,701.109 | $3,182,953.74 |
| Associates: | 7,673.8 | 5% | 7,290.11 | $4,600,059.41 |
| Staff: | 2,135.8 | 5% | 2,029.01 | $557,977.75 |

The Court will apply two reductions to Potter Minton for: (1) seven percent attributable solely to the trade secret misappropriation and fraud claims as seen in the task report; and (2) the six percent for lack of evidence of billing judgment. The Court will employ the same method and apply the reductions evenly between the three categories of employees. The calculation is as follows:

|  | Initial | Percent Reduced | Reduced Hours | Hours X Rate |
|---|---|---|---|---|
| Partners: | 320.45 | 3% | 310.8365 | $186,501.90 |
| Associates: | 188.6 | 3% | 182.942 | $82,323.90 |
| Staff: | 295.85 | 3% | 286.9745 | $43,046.18 |

After adding these together, the total amount of attorneys' fees is $8,652,862.88, which is still more than Tech Pharmacy is requesting. The fact that the amount Tech Pharmacy is asking is for less than the lodestar amount supports a finding that this amount is reasonable. *See, e.g.*, *Pereira*

---

[14] The Court splits the seven percent between the six different categories of employees (Partners, Associates, and Staff for Hogan Lovells and Potter Minton). The Court applies a two percent reduction to the partners of Hogan Lovells and one percent to the remaining categories, because it is not evident to the Court who performed work that is solely attributable to the state law claims.

*v. Phoenix Upholstering & Refinishing, Inc.*, No. 609-cv-839-ORL-31GJK, 2009 WL 4855523, at

*3 (M.D. Fla. Dec. 10, 2009); *In re Conseco Life Ins. Co.*, No. C 10-02124 SI, 2014 WL 186375,

at *2 (N.D. Cal. Jan. 16, 2014); *Harry M. v. Penn. Dep't of Pub. Welfare*, No. 1:10-CV-00922,

2013 WL 4500051, at *3 (M.D. Pa. Aug. 21, 2013).

## CONCLUSION

It is therefore **ORDERED** that Tech Pharmacy's Motion for Attorneys' Fees (Dkt. #386)

is hereby **GRANTED**.  Plaintiff is awarded $7,304,454.15 in attorneys' fees.

**SIGNED this 22nd day of December, 2017.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE